CARMEN A. TRUTANICH, City Attorney-SBN 86629x
GARY G. GEUSS, Chief Assistant City Attorney
CORY M. BRENTE, Assistant City Attorney
RENA M. SHAHANDEH, Deputy City Attorney
BRUCE MONROE, Deputy City Attorney-SBN 136654
200 North Main Street, 6th Floor, City Hall East
Los Angeles, California 90012-4119
Telephone: (213) 978-8397; Facsimile: (213) 978-8787
Electronic Mail: Bruce.Monroe@lacity.org

*Attorneys for Defendants* CITY OF LOS ANGELES, LOS ANGELES POLICE
DEPARTMENT, LOS ANGELES CITY ATTORNEY'S OFFICE, CARMEN TRUTANICH,
CHARLES BECK, ALLAN NADIR, AND ANGEL GOMEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN RODRIGUEZ *et al.*, | **CASE NO. CV 11-01135 DMG (JEMx)** *Assigned to Honorable Dolly M. Gee* |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; DECLARATIONS OF ANGEL GOMEZ AND ANNE C. TREMBLAY** |
| vs. | |
| CITY OF LOS ANGELES *et al.*, | DATE: August 24, 2012 TIME: 2:00 p.m. |
| Defendants. | PLACE: Courtroom 7 TRIAL: January 15, 2013 |

Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, LOS ANGELES CITY ATTORNEY'S OFFICE, CARMEN TRUTANICH, CHARLES BECK, ALLAN NADIR, AND ANGEL GOMEZ (collectively the City) submit the following Memorandum of Points and Authorities and evidence in opposition to Plaintiffs' Motion for a Preliminary Injunction (the Motion or the Injunction Motion).

///
///
///
///
///

i

# TABLE OF CONTENTS

Page

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . 1

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS AND STATEMENT OF THE CASE . . . . . . . . . . . . 1

III.  STANDARDS FOR RULING ON PRELIMINARY INJUNCTION MOTIONS . 2

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    The Injunction Motion should be denied because Plaintiffs lack standing for injunctive relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          *Plaintiffs were lawfully detained June 20, 2009* . . . . . . . . . . . . . . . . . . . 4

          *Plaintiffs were lawfully arrested June 20, 2009* . . . . . . . . . . . . . . . . . . . 5

          *Plaintiffs' rights were not violated by being served with the injunction* . . . 6

    B.    The Injunction Motion should be denied because Plaintiffs have failed to meet their burden of proving any of the four requirements for a preliminary injunction . . . . . . . . . . . . . . . . . . . . . . . 11

DECLARATION OF ANGEL GOMEZ

DECLARATION OF ANNE C. TREMBLAY

# TABLE OF AUTHORITIES

Page

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) . . . . . . . 3

*Atkins v. Parker*, 472 U.S. 115, 130, 86 L.Ed.2d 81, 105 S.Ct. 2520 (1985) . . . . . . . . . 8

*Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 354-55
   [149 L.Ed.2d 549, 121 S.Ct. 1536] . . . . . . . . . . . . . . . . . . . . . . 5

*Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) . . . . . . . . . . . 5

*California v. Trombetta*, 467 U.S. 479, 492 (conc. opn. of O'Connor, J.),
   81 L.Ed.2d 413, 104 S.Ct. 2528 (1984) . . . . . . . . . . . . . . . . . . 8

*Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th cir. 1988) . . . . . . 3, 11

*City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 75 L.Ed.2d 675,
   103 S.Ct. 1660 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11

*City of Chicago v. Morales*, 527 U.S. 41, 56, 144 L.Ed.2d 67,
   119 S. Ct. 1849 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*City of Angoon v. Marsh*, 749 F.2d 1413, 1415 (9th Cir. 1984) . . . . . . . . . . 2

*Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810,
   813 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Church v. City of Huntsville*, 30 F.3d 1332, 1342-47 (11th Cir. 1994) . . . . . . . . . . 11, 12

*Devepeck v. Alford*, 543 U.S. 146, 152-53, 160 L.Ed.2d 537, 125 S.Ct. 588 (2004) . . . 5

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) . . . . . . . . . . . . 4

*Griffith v. Kentucky*, 479 U.S. 314, 328, 93 L.Ed.2d 649,
   107 S.Ct. 708 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) . . . . . . . . . . . 3

*In re Berry,* 68 Cal.2d 137, 147, 65 Cal.Rptr. 273, 436 P.2d 273 (1968) . . . . . . . . . . . 9

*Jaegly v. Couch*, 439 U.S. 149, 154 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . 5

*Jerman v. Carlisle*, __ U.S. __, 176 L.Ed.2d 519, 527, 130 S.Ct. 1605 (2010) . . . . . . . 8

*Jones v. United States*, 121 F.3d 1327, 1329-30 (9th Cir. 1997) . . . . . . . . . . . . . . 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119
   L.Ed.2d 351, 112 S.Ct. 2130 (1991) . . . . . . . . . . . . . . . . . . . . 4

*Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997) . . . . . . . . . . . . 2

iii

*Midgett v. Tri-county Metro. Trans. Dist. of Oregon*, 254 F.3d 846,
850-51 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*New Jersey v. Delaware*, 552 U.S. 597, 170 L. Ed. 2d 315,
128 S. Ct. 1410 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 282-83, 69
L.Ed.2d 953, 45 S.Ct. 491 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Gonzalez*, 12 Cal.4th 804, 818, 50 Cal.Rptr.2d 74,
910 P.2d 1366 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Englebrecht*, 88 Cal.App.4th 1236, 1258, 106
Cal.Rptr.2d 738 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Shorts*, 32 Cal.2d 502, 508, 197 P.2d 330 (1948) . . . . . . . . . . . . . . . . . . . . . . . 6

*Pittsburgh and Lake Angeline Iron Co. v. Cleveland Iron Mining Co.*,
178 U.S. 270, 278, 44 L.Ed.2d 1065, 20 S.Ct. 931 (1900) . . . . . . . . . . . . . . . 7, 8

*Thomas v. Dept. of Motor Veh.*, 3 Cal.3d 335, 337, 90 Cal.Rptr. 586, 475
P.2d 858 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*U.S. v. United Mine Workers of America*, 330 U.S. 258, 293, 91
L.Ed. 884, 67 S.Ct. 677, (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 68 L.Ed.2d 175,
101 S.Ct. 1830 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Walker v. City of Birmingham*, 388 U.S. 307, 313-315, 320, 18
L.Ed.2d 1210, 87 S.Ct. 1824 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Whren v. U.S.*, 517 U.S. 806, 813-19, 135 L.Ed.2d 89, 116 S.Ct. 1769 (1996) . . . . . . . . 5

*Winter v. NRDC, Inc.*, 555 U.S. 7, 24, 172 L.Ed.2d 249, 129 S.Ct. 365 (2008) . . . . . . 2

*Zal v. Steppe*, 968 F.2d 924, 927 (9th Cir. 1992.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The court has not yet ruled on Plaintiffs' Motion for Class Certification (Certification Motion), yet Plaintiffs have asked the Court to issue a preliminary injunction for the benefit of the class that Plaintiffs do not represent. This is inappropriate. Unless and until the Court grants class certification, Plaintiffs represent only themselves.

Even if the Court had already certified the class, Plaintiffs' Injunction Motion would be meritless. Plaintiffs claim that at this very moment, the constitutional rights of thousands of disadvantaged youths are being violated by the City. (Motion 1:4-6.) Plaintiffs have yet to prove a single violation of the rights of even one person served with one of the 26 identified gang injunctions, including themselves. If, as they claim, they have never been gang members, Plaintiffs are not subject to the Culver City Boys Gang (CCBG) injunction with which they were served. In addition, they have actual notice that the curfew provisions of that injunction are invalid and unenforceable.

Further, as explained more fully below, Plaintiffs have no standing to seek injunctive relief because they have experienced no injury, nor have they shown any threat of imminent future injury. The one occasion on which they allegedly were unlawfully detained and arrested was over three years ago and was completely lawful.

Finally, the Motion must be denied because Plaintiffs have not met their burden of showing any of the four requirements for obtaining a preliminary injunction. They (1) are unlikely to succeed on the merits, (2) are unlikely to suffer irreparable harm, (3) the balance of equities tips decidedly against them, and (4) an injunction is *not* in the public interest.

### II.    STATEMENT OF FACTS AND STATEMENT OF THE CASE

On March 27, 2001, the Los Angeles County Superior Court (LASC) entered final judgment in Case Number SC 056980 granting a permanent injunction against members of the Culver City Boys Gang (CCBG). (Declaration of Anne Richardson in support of Plaintiffs' Motion for Class Certification (Cert.) Ex. 18, p. 246.) Rodriguez was initially served with a copy of the injunction sometime in 2005, and was again served February 25,

1

1  2006. (Rodriguez Decl. ¶¶ 3-4; Second Amd. Complaint (SAC) ¶ 16.) Cazarez was served

2  with a copy of the same injunction December 20, 2009. (Cazarez Decl. ¶¶ 5-6; SAC ¶ 17.)

3      Both plaintiffs were detained by LAPD Officer Gomez near midnight on June 19-20,

4  2009, not for suspicion of violating the CCBG injunction (see SAC ¶ 21), but rather for

5  suspicion of vandalism or narcotics activities near a handball court where other CCBG

6  members appeared to be congregated. (City's Req. for Jud. Notice (CRJN) attached to Cert.,

7  Ex. C, p. 3.) Cazarez was *not* arrested or charged with violation of the gang injunction, but

8  rather was arrested and issued a citation for violation of Los Angeles Municipal Code

9  (LAMC) Section 45.03, subsection (a) (juvenile curfew). (Attached Declaration of Angel

10  Gomez ¶ 3; City's Req. for Jud. Notice (CRJN) Ex. Q.) Rodriguez was arrested and on June

11  21, 2009 was charged with violation of paragraphs A (association with other gang members)

12  and E (curfew) of the injunction. (Gomez Cert. Decl. ¶ 3 and Cert. CRJN Ex. A, p. 1.)

13      Rodriguez's demurrer was granted and the curfew charge dismissed in the criminal

14  case against him on October 6, 2009. (CRJN B; Richardson Cert. Decl. Ex. 6, p. 160:1-7.)

15  The legality of the instant detention of Rodriguez was confirmed by appeal on August 27,

16  2010. (Cert. CRJN Ex. C, pp. 4-5; Gomez Cert. Decl. ¶ 4.) The rest of the criminal case

17  against Rodriguez was dismissed at the request of the prosecutor on February 15, 2011.

18  (Cert. CRJN Ex. B.) As of September 7, 2011, the case against Cazarez remained open

19  because Cazarez failed to appear for trial. (Cert. CRJN Ex. D, 1st page.)

20      Plaintiffs filed the instant action with the Court on February 7, 2011. Oral argument

21  for their Certification Motion was heard by the Court on June 1, 2012, and a decision is

22  pending. The Injunction Motion was filed with the Court on July 6, 2012.

23  **III.    STANDARDS FOR RULING ON PRELIMINARY INJUNCTION MOTIONS**

24      A preliminary injunction is an extraordinary remedy that is never granted as a matter

25  of right. *Winter v. NRDC, Inc.*, 555 U.S. 7, 24, 172 L.Ed.2d 249, 129 S.Ct. 365 (2008).

26  Because of this, the moving party must carry its burden of persuasion by a "clear showing."

27  *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997); *City of Angoon v. Marsh*,

28  749 F.2d 1413, 1415 (9th Cir. 1984); see generally W. Schwarzer *et al.*, *Cal.Prac. Guide:*

2

*Fed. Civ. Proc. Before Trial* (Rutter Group 2011) ¶¶ 13:159-59.1. The purpose of a preliminary injunction is simply to preserve the status quo. As a result, findings of fact and conclusions of law associated therewith are not binding at trial on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 68 L.Ed.2d 175, 101 S.Ct. 1830 (1981); *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007); W. Schwarzer ¶ 13:179. The decision on a request for a preliminary injunction is entrusted to the sound discretion of the district court. *Winter,* 555 U.S. at 24.

The party moving for a preliminary injunction has the burden of establishing that (1) he is "likely to succeed on the merits," (2) he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [movant's] favor," and (4) "an injunction is in the public interest." *Winter,* 555 U.S. at 20; Schwarzer ¶¶ 13:43-57.5. The requisite likelihood of success on the merits means the plaintiffs must demonstrate that irreparable injury is *likely,* not merely *possible*, in the absence of an injunction. *Id.* at 21-22, citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 75 L.Ed.2d 675, 103 S.Ct. 1660 (1983). Further, the threatened harm must be "immediate," not speculative. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th cir. 1988); *Midgett v. Tri-county Metro. Trans. Dist. of Oregon*, 254 F.3d 846, 850-51 (9th Cir. 2001).

The Ninth Circuit employs "the 'serious questions' approach, which survived the Supreme Court's decision in *Winter.*" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). This is a version of the "sliding scale approach" in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. Under this version of the sliding scale, "a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor.'" *Id.* at 1131-2 (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

///

///

3

III.    **ARGUMENT**

A.    **The Injunction Motion should be denied because Plaintiffs lack standing for injunctive relief.**

Standing is a threshold matter that is central to the court's subject matter jurisdiction. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). In order to have standing for injunctive relief, a plaintiff must have (1) an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and challenged action that can be traced to the Defendant; and (3) an injury that will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L.Ed.2d 351, 112 S.Ct. 2130 (1991). Plaintiffs have no standing to seek injunctive relief because they cannot meet any of these elements.

An injury-in-fact must be likely to be replicated to be considered "actual or imminent." "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy. ... [I]t is the *reality* of the threat of repeated injury that is relevant to the standing inquiry. . . ." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 107, 75 L.Ed.2d 675, 103 S.Ct. 1660 (1983). Here Plaintiffs rights have not been violated at all. Even if they had been, there is no indication they will be again. Plaintiffs were arrested once, more than three years ago, and the LAPD Pacific Division gang officers who arrested them have made no arrests for CCBG Injunction violations in almost two years. (Gomez Cert. Decl. ¶ 5.)

*Plaintiffs were lawfully detained June 20, 2009:* Plaintiffs' claim that "Both plaintiffs have been detained on suspicion of violating the [CCBG curfew]" (Motion 18:20-21) is not true. Plaintiffs were detained by LAPD Officer Gomez near midnight on June 19-20, 2009, *not* for suspicion of violating the CCBG injunction (see SAC ¶ 21), but rather for suspicion of vandalism or narcotics activities near a handball court where other CCBG members appeared to be congregated. (Cert. CRJN Ex. C, p. 3; Gomez Cert. Decl. ¶ 4.) The lawfulness of this detention was affirmed on appeal and Plaintiffs are collaterally estopped from contesting it now. (Cert. Opp. 15:4-14.)

4

*Plaintiffs were lawfully arrested June 20, 2009:* "[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and ... it is not relevant whether probable cause existed with respect to each individual charge, or, indeed any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006).

The existence of probable cause is judged objectively and without regard to the subjective motivations of the officer involved, even if detention of a suspect for one crime is a pretext for investigation of another suspected crime. *Whren v. U.S.,* 517 U.S. 806, 813-19, 135 L.Ed.2d 89, 116 S.Ct. 1769 (1996). Whether probable cause exists depends on the reasonable conclusion drawn by the officer from the facts known to him at the time of arrest. Probable cause to arrest may be based on any criminal offense established by the facts known to the arresting officer and is not limited to offenses identified by the officer at the time of arrest or to offenses that are closely related thereto. *Devepeck v. Alford,* 543 U.S. 146, 152-53, 160 L.Ed.2d 537, 125 S.Ct. 588 (2004). A custodial arrest is justified under the Fourth Amendment when the arresting officer has probable cause to believe the suspect has committed *any crime,* even a minor traffic offense punishable only by a fine. (*Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 354-55 [149 L.Ed.2d 549, 121 S.Ct. 1536].) In order to prevail on a Section 1983 claim for false arrest [or unlawful detention], a plaintiff has the burden of proving there was no probable cause to arrest him. *Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir. 1998).

Cazarez was *not* arrested or charged with violation of the gang injunction, but rather was arrested and issued a citation for violation of Los Angeles Municipal Code (LAMC) Section 45.03, subsection (a) (juvenile curfew). (Gomez Cert. ¶ 3; Cert. CRJN Ex. Q.) His arrest and prosecution were therefore lawful.

Rodriguez was arrested and on June 21, 2009 was charged with violation of paragraphs A (association with other gang members) and E (curfew) of the injunction. (Gomez Cert. Decl. ¶ 3 and Cert. CRJN Ex. A, p. 1.) Because Rodriguez was properly arrested and prosecuted for unlawful association with other gang members, his arrest and

5

1  prosecution were lawful. That he was also arrested and prosecuted for curfew violation is

2  irrelevant.

3    *Plaintiffs' rights were not violated by being served with the injunction:* Plaintiffs

4  argue in their Motion that their rights were violated the moment each was served with the

5  CCBG Injunction because the curfew provision was unconstitutional as determined by the

6  court in *Colonia Chiques* and because all person served with a gang injunction are "bound

7  by the injunction." (Motion 14:15-15:4.) As a result, Plaintiffs say they "live their lives in

8  fear of immediate arrest" for curfew violation and therefore refrain from going outside

9  between 10 p.m. and sunrise. (Motion 5:11-14; SAC ¶¶ 25, 34.) They are mistaken for

10  several reasons.

11    First, the rights of persons such as Rodriguez, who were served with the injunction

12  before the *Colonia Chiques* decision became final were not violated because the permanent

13  injunction, issued as part of a Los Angeles Superior Court judgment on March 27, 2001, was

14  presumed to be lawful until a higher court ruled otherwise. *People v. Shorts*, 32 Cal.2d 502,

15  508, 197 P.2d 330 (1948) [Presumption that trial court's judgment is valid in all respects is

16  strong]; *Thomas v. Dept. of Motor Veh.*, 3 Cal.3d 335, 337, 90 Cal.Rptr. 586, 475 P.2d 858

17  (1970) ["Ordinarily a judgment is presumed valid if collaterally attacked, unless it is void

18  on its face."] Prior to the *Colonia Chiques* decision becoming final in February of 2008,

19  neither Defendants nor Plaintiffs were on notice that the CCBG curfew was unenforceable.

20    Second, Plaintiffs have not cited any legal authorities to support their contention that

21  their rights were violated solely by service of an injunction containing one invalid provision.

22  That the Court of Appeal in *Colonia Chiques* declared a similar curfew unconstitutionally

23  vague does not show that their own constitutional rights were violated merely by being

24  served with a similar curfew. They claim that "[j]ust by being served, the law violates their

25  due process rights by both not providing adequate notice of permitted conduct, and by

26  authorizing and even encouraging arbitrary and discriminatory enforcement." (Motion 18:6-

27  9.)

28  ///

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION       PALS\RODRGPIM_OPP

The only case Plaintiffs cite in support of this claimed due process violation is *City of Chicago v. Morales*, 527 U.S. 41, 56, 144 L.Ed.2d 67, 119 S. Ct. 1849 (1999). This case has no application here because it involves an anti-loitering statute applicable to all residents, not an injunction applicable only to gang members in a discretely defined "safety zone." In *Morales* there were no issues related to service or applicability of the statute.

The fact that the due process clause may invalidate an injunction curfew (or even an anti-loitering statute) does not necessarily thereby establish that service of the injunction violated the constitutional rights of the person served so as to establish liability under 42 U.S.C. Section 1983. Plaintiffs have provided no authorities in support of liability.

Third, Plaintiffs argue that persons served before *Colonia Chiques* became final were violated by retrospective application of that decision, which they say was "a newly declared constitutional rule of criminal procedure." (Motion 15:5-16:3.) The case they have cited in support of this proposition, *Griffith v. Kentucky*, 479 U.S. 314, 328, 93 L.Ed.2d 649, 107 S.Ct. 708 (1987) [New rule for conduct of criminal prosecutions (e.g., procedure for challenging allegedly discriminatory use of peremptory juror challenges) applies to all pending cases], does not apply. The *Colonia Chiques* decision did not create any rule of criminal procedure; it merely declared one provision of a civil gang injunction to be too vague to be enforceable. Plaintiffs have not cited nor has the City found any case holding that a plaintiff's constitutional rights were violated by retrospective application of a case which declared part of an injunction invalid. All *Griffith* establishes is that had *Rodriguez* been charged with violation of the CCBG curfew before *Colonia Chiques* and his case been pending when it was decided, rather than after, his demurrer could still have been sustained.

After *Colonia Chiques,* the rights of those served were likewise not violated because they are presumed to have known about the court's decision in that case and presumed to have known they were not required to obey portions of an injunction that had been ruled invalid. Just as police officers are presumed to know the law, so are gang members. "Everyone is presumed to know the law" (*Pittsburgh and Lake Angeline Iron Co. v. Cleveland Iron Mining Co.,* 178 U.S. 270, 278, 44 L.Ed.2d 1065, 20 S.Ct. 931 (1900), and

1  is "presumed to know [his] rights under the law ..." (*California v. Trombetta*, 467 U.S. 479,

2  492 (conc. opn. of O'Connor, J.), 81 L.Ed.2d 413, 104 S.Ct. 2528 (1984). "[I]gnorance of

3  the law will not excuse any person, either civilly or criminally." *Jerman v. Carlisle*, ___ U.S.

4  ___, 176 L.Ed.2d 519, 527, 130 S.Ct. 1605 (2010). This principle of presumptive knowledge

5  applies to both statutes and case law. See *Atkins v. Parker*, 472 U.S. 115, 130, 86 L.Ed.2d

6  81, 105 S.Ct. 2520 (1985) (statutes); *Pittsburgh/Lake Angeline,* 178 U.S. at 278 (cases).

7      The principle is stated in the cases in universal form: "**Everyone** is presumed to know

8  the law." It is not limited to defendants trying to evade liability, but includes plaintiffs trying

9  to establish liability. Examples of cases applying the principle to plaintiffs follow.

10     *Atkins v. Parker*, 472 U.S. 115, 86 L.Ed.2d 81, 105 S.Ct. 2520 (1985): Plaintiff food

11 stamp recipients did not have a right to better notice of a statutory change reducing their

12 benefits since "all citizens are presumptively charged with knowledge of the law." *Id. at

13 130.* "The entire structure of our democratic government rests on the premise that the

14 individual citizen is capable of informing himself about the particular policies that affect his

15 destiny." *Id. at 131.*

16     *New Jersey v. Delaware*, 552 U.S. 597, 170 L. Ed. 2d 315, 128 S. Ct. 1410 (2008):

17 Plaintiff State of New Jersey was not entitled to a declaratory judgment establishing

18 exclusive rights to build over submerged Delaware land because both states had passed

19 legislation restricting coastal land use. "All citizens are presumptively charged with

20 knowledge of the law." (Quoting *Atkins.*) "We find unconvincing New Jersey's contention

21 that its officials were ignorant of the State's own statutes. ..." *Id.* at 621.

22     *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 282-83, 69 L.Ed.2d 953, 45 S.Ct.

23 491 (1925): The due process rights of plaintiff land owner were not violated by the

24 government's failure to give him notice of proceedings when his land was taken for a public

25 road. "All persons are charged with knowledge of the provisions of statutes and must take

26 note of the procedure adopted by them ...."

27     *Jones v. United States*, 121 F.3d 1327, 1329-30 (9th Cir. 1997): The due process rights

28 of plaintiff mining claim owner were not violated by the government's failure to give him

8

1    notice of a statutory amendment whose violation led to loss of his claim. "All persons are

2    chargeable with knowledge of the Statutes-at-Large." [citation]. ... "Further, Jones must be

3    presumed to have acquired knowledge of the new requirements upon their enactment ...."

4        Under federal law, disobedience of a lawfully issued injunction is punishable as

5    criminal contempt even if the injunction is later declared unlawful or unconstitutional. *U.S.*

6    *v. United Mine Workers of America,* 330 U.S. 258, 293, 91 L.Ed. 884, 67 S.Ct. 677, (1947).

7    A person may not violate such an injunction and then contest its validity by appeal from a

8    contempt conviction or in collateral proceedings. *Walker v. City of Birmingham,* 388 U.S.

9    307, 313-315, 320, 18 L.Ed.2d 1210, 87 S.Ct. 1824 (1967). This is known as the "collateral

10    bar rule," which a state *may,* but is not required to adopt by federal law. *Zal v. Steppe,* 968

11    F.2d 924, 927 (9th Cir. 1992.)

12        California has not adopted the collateral bar rule. Under California law, "a person

13    subject to a court' injunction may elect whether to challenge the constitutional validity of

14    the injunction when it is issued, or to reserve that claim until a violation of the injunction

15    is charged as a contempt of court." *People v. Gonzalez*, 12 Cal.4th 804, 818, 50 Cal.Rptr.2d

16    74, 910 P.2d 1366 (1996); *see also In re Berry,* 68 Cal.2d 137, 147, 65 Cal.Rptr. 273, 436

17    P.2d 273 (1968); *Zal,* 968 F.2d. At 927; 2 B. Witkin, *Cal. Procedure* (5th ed. 2012)

18    Jurisdiction §§ 342-343.

19        Therefore, Plaintiffs (and all class members, if any are certified) were and are

20    presumed to know that the Court of Appeal has invalidated some gang injunction curfew

21    provisions through the *Colonia Chiques* decision and that the law does not require them to

22    obey those curfews.

23        Fourth, even were Plaintiffs not *presumed* to know the change in the law effected by

24    *Colonia Chiques*, Plaintiffs have actual knowledge of the decision and its impact from their

25    participation in this case. One of the main points of this case is that the curfew provisions

26    of the CCBG Injunction were invalidated by *Colonia Chiques*. Consequently, Plaintiffs'

27    alleged decision to remain in their homes each night (Motion 5:11-14) is purely voluntary.

28    ///

9

Therefore, Plaintiffs' themselves have neither a right to notice that the CCBG Injunction curfew is invalid (because they are presumed to know already) or a need to notice (because they have actual notice already). Nevertheless, they *claim* that potential class members are helplessly huddled in their homes in fear each night just because LAPD, which could "easily" give notice to each one of them, has chosen not to do so. (Motion 6:10-21, 20:11-26.) This is not true.

LAPD gang officers such as Officer Gomez do *not* have easy access to serve gang members with documents. If the Court ordered service of notice to all persons served with the CCBG Injunction (or the other 25 designated injunctions), there would be many that LAPD would not be able to serve. (Attached Gomez Decl. ¶¶ 2-5.) Plaintiffs are in a much better position to notify persons who have been served with the injunctions, and apparently have already notified many of them. (See Olu Orange Supp. Cert. Decl. ¶ 2.)

Fifth, only gangs and their members are subject to a gang injunction. See *People v. Englebrecht*, 88 Cal.App.4th 1236, 1258, 106 Cal.Rptr.2d 738 (2001). Persons served with injunctions who are not gang members may be removed from enforcement of the injunction by a court (*Id.* at 1242 fn. 1, 1244 ["defense of nonmembership"]) or through the filing of a removal petition with the City Attorney's Office (see Tremblay Cert. Decl. ¶¶ 15-16 and Ex. 3). Therefore, if Plaintiffs' claims that they have never been gang members are true (Cazarez Decl. ¶ 6; Rodriguez Decl. ¶ 5), they are *not* subject to the CCBG Injunction with which they have been served.

Injunctions obtained by the City after *Colonia Chiques* all include in their terms an opportunity for persons served to "opt out" of enforcement of the injunction by proof they are not gang members. (Tremblay Cert. Decl. ¶ 15 and RJN Exs. F-P.) Since June of 2009, LAPD policy has required service of removal petitions with service of all gang injunctions. (Tremblay Cert. Decl. ¶ 16.) Consequently, non-members who have been served, but have not taken the necessary steps to have themselves removed from enforcement, bear at least part of the responsibility for that situation.

///

10

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

By its own terms, the injunction at issue in *Colonia Chiques* applied only to "Colonia Chiques 'and its active members, as well as all persons who participate with or act in concert with the Colonia Chiques in more than a nominal, passive, inactive or purely technical way.'" (*Colonia Chiques*, 156 Cal.App.4th at 37.) The same is true for the CCBG injunction at issue here. By its terms, only specified CCBG members (not including Plaintiffs), the CCB Gang, "and its members and all persons acting under, in concert with or for any one of them" are subject to the injunction. (Cazarez Decl. Ex. 2.)

For all the foregoing reasons, Plaintiffs lack standing for injunctive relief. The Motion should therefore be denied.

**B.    The Injunction Motion should be denied because Plaintiffs have failed to meet their burden of proving any of the four requirements for a preliminary injunction.**

The party moving for a preliminary injunction has the burden of establishing that (1) he is "likely to succeed on the merits," (2) he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [movant's] favor," and (4) "an injunction is in the public interest." *Winter,* 555 U.S. at 20; Schwarzer ¶¶ 13:43-57.5. The requisite likelihood of success on the merits means the plaintiffs must demonstrate that irreparable injury is *likely,* not merely possible, in the absence of an injunction. *Id.* at 21-22, citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 103, 75 L.Ed.2d 675, 103 S.Ct. 1660 (1983). Further, the threatened harm must be "immediate," not speculative. *Caribbean Marine Serv. Co. v. Baldridge,* 844 F.2d 668, 674 (9th cir. 1988); *Midgett v. Tri-county Metro. Trans. Dist. of Oregon,* 254 F.3d 846, 850-51 (9th Cir. 2001). The Motion must be denied because Plaintiffs have failed to meet their burden of proving any of these elements.

As already shown above, Plaintiffs are unlikely to succeed on the merits and are very unlikely to suffer irreparable harm because their rights have not been violated in any way, and they have not been arrested in more than three years. Further, they have not shown a substantial likelihood of success of the merits because they have failed to establish the existence of a municipal policy or a condoned pervasive practice that could serve as a predicate to municipal liability under section 1983. See *Church v. City of Huntsville,* 30

11

1    F.3d 1332, 1342-47 (11th Cir. 1994).

2         Clearly there is no official City policy of enforcing gang injunction curfews that have

3    been declared invalid by a court. City policy is precisely the opposite: such curfews should

4    not be enforced. (See attached Decl. of Anne C. Tremblay ¶ 5; see also William J. Hart Cert.

5    Decl. ¶ 2.) When Deputy City Attorneys (DCAs) or police officers are found to have made

6    decisions that are inconsistent with this policy, City Attorney management instructs the

7    DCAs not to file charges of this type in the future and it recommends to police officers not

8    to make such arrests in the future. As a result, the number of arrests and prosecutions of

9    invalid curfew provisions has been substantially reduced since the *Colonia Chiques* decision

10   became final in February of 2008. (Attached Tremblay Decl. ¶¶ 3-6.)

11        Doubtless Plaintiffs will argue that the City's failure to correct the actions of officers

12   and DCAs in making curfew-related arrests since February of 2008 shows implicit

13   authorization of or deliberate indifference toward those arrests and filings. See *Church*, 30

14   F.3d at 1345-47; Motion 6:22-9:16. They make the unsupported assertion that "The City

15   cavalierly admits that it has made a conscious decision to *do nothing* to address the fact that

16   in the City of Los Angeles, thousands of individuals have been served with gang injunctions

17   containing unconstitutional curfew provisions." (Motion 19:14-17.) This is decidedly untrue

18   and injunctive relief will not redress any injury.

19        Even before *Colonia Chiques* became final and binding February 1, 2008, the City

20   began a series of actions to comply with it: (1) Changing the curfew language in the next

21   injunction filed and each one thereafter to comply with *Colonia Chiques* (Tremblay Cert.

22   Decl. ¶¶ 7-8, Cert. RJN Exs. F-P); (2) Training Anti-Gang Section DCAs to recommend to

23   LAPD officers that they not enforce curfew provisions declared invalid by *Colonia Chiques*

24   (Tremblay Cert. Decl. ¶ 9); (3) Recommending to LAPD officers during training sessions

25   that they change curfew enforcement practices (Tremblay Cert. Decl. ¶ 10-11; (4) Greatly

26   reducing the filing of criminal cases for violation of curfews declared unenforceable by

27   *Colonia Chiques* (Tremblay Cert. Decl. ¶ 12); (5) Modifying the City Attorney program

28   guidelines to move curfew provisions for new injunctions from standard to optional and

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                                    PALS\RODRGPIM_OPP

1  requiring supervisory approval for inclusion of curfew provisions in new injunctions
2  (Tremblay Cert. Decl. ¶ 13-14); and (6) permitting non-gang members to file petitions for
3  removal from injunction enforcement, serving removal petitions along with service of all
4  new injunctions, and including provisions in all new injunctions for non-members to "opt
5  out" of enforcement (Tremblay Cert. Decl. ¶¶ 15-16). Additional steps were also considered.
6  (Tremblay Cert. Decl. ¶ 17.) These actions help to explain why, if *any* persons were arrested
7  for violation of unenforceable curfews after *Colonia Chiques,* it was a maximum of 15 for
8  potential class members over a four-year period–truly a very small number out of more than
9  150,000 arrests made annually by over 9,500 LAPD officers. (See Monroe Cert. Decl. ¶ 7,
10 Ex. A; Shahandeh Cert. Decl. ¶¶ 2-8.)

11      Thus the City has done quite a bit to ensure that invalid curfew provisions are not
12 enforced. It is *Plaintiffs* who have done nothing. They claim they have never been members
13 of any gang. (Cazarez Decl. ¶ 6; Rodriguez Decl. ¶ 5) But they have not filed a petition for
14 removal from enforcement of the injunction with the City Attorney's Office (Tremblay Cert.
15 Decl. ¶ 15), nor is there any evidence they have asked a court to remove them from
16 enforcement.

17      The evidence produced in the case thus far certainly does **not** show that "the curfew
18 provisions are likely to be enforced," as Plaintiffs weakly assert. (Motion 6:22-23.) All it
19 really shows is that police officers and DCAs are not perfect. Lack of perfection does not
20 entitle Plaintiffs to injunctive relief–or any other relief. It shows the mere *possibility* of
21 harm, not the required likelihood thereof.

22      Based on the foregoing, the Motion must be denied because Plaintiffs have not met
23 their burden of showing any of the four requirements for obtaining a preliminary injunction.
24 They (1) are unlikely to succeed on the merits, (2) are unlikely to suffer irreparable harm,
25 (3) the balance of equities tips decidedly against them, since they have experienced no
26 injury, and (4) an injunction is *not* in the public interest. It is not in the public interest
27 because it would accomplish nothing other than what LAPD and the City Attorney's Office
28 have already done to reduce arrests and prosecutions of invalid curfews. Further, it would

13

1  require much time and effort by gang officers to serve the required notices to those they can

2  locate, which would be time away from their duties in investigation of gang crimes.

3

4  Dated:  August 3, 2012                    Respectfully submitted,

5                                            CARMEN A. TRUTANICH, City Attorney
                                             GARY G. GEUSS, Chief Assistant City Attorney
6                                            CORY M. BRENTE, Assistant City Attorney
                                             RENA M. SHAHANDEH, Deputy City Attorney
7                                            BRUCE MONROE, Deputy City Attorney

8                                            By:  _____
9                                                  BRUCE MONROE, Deputy City Attorney
                                             Attorneys for Defendants City of Los Angeles, et al.,
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                    PALS\RODRGPIM_OPP

## DECLARATION OF ANGEL GOMEZ

I, Angel Gomez, declare as follows:

1.    I am employed by the Los Angeles Police Department (LAPD or the Department) as a Police Officer.  If called as a witness, I would testify to the following facts based on my personal knowledge.

2.    I am assigned to the Pacific Division Gang Enforcement Detail and have qualified in court several times as an expert on the three criminal street gangs who operate within Pacific Division. One of these is the Culver City Boys Gang.

3.    The Pacific Division Gang Enforcement Detail, of which I am part, maintains records of gang member contact information, including addresses, that are continually updated as we arrest the gang members or have other contacts with them. Nevertheless, this information is not always reliable because most of it comes from the gang members themselves. At times, they have given us false address information.

4.    Based on approximately ten years of trying to track down gang members to arrest them, serve search warrants, etc., I would estimate that approximately 50% of the address information in our records for Pacific Division gang members is inaccurate at any given time. If ordered to serve all Pacific Division gang members with notice regarding a court order to cease enforcement of the curfew provisions of gang injunctions covering these gang, I estimate that we might be able to obtain more accurate address information for as many as 25% more of the total number of gang members by searching data bases available to LAPD—assuming such data bases could lawfully be accessed for this purpose. Almost certainly we could not serve a substantial number of them because gang members frequently move, sometimes out of the area.

5.    At the end of paragraph 5 of the Declaration I signed for the City's Opposition to Plaintiffs' Motion for Class Certification, I stated that "[a]ccording to the [gang injunction] log [at Pacific Division], no arrests for violation of the Culver City Boys Gang Injunction have been made by Pacific Division gang officers since September 5, 2010, and no arrests for any gang injunction have been made since February 10, 2010." This log

1

pertains only to Pacific Division and the three gangs that operate in that area. It does not contain information regarding arrests for violation of gang injunctions in other LAPD areas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed July 31, 2012.

ANGEL GOMEZ

2

## DECLARATION OF ANNE C. TREMBLAY

I, ANNE C. TREMBLAY, declare as follows:

1.    I am employed as Assistant City Attorney and Supervisor of the Anti-Gang Section of the Office of the Los Angeles City Attorney. If called as a witness, I would testify to the following based on my personal knowledge.

2.    The duties of my position have given me an extensive knowledge of civil gang injunctions, injunction curfew provisions, related policies of the City Attorney's Office, and the manner in which those policies and the law are communicated to members of the Los Angeles Police Department (LAPD). My knowledge on these subjects is also based in part on my prior positions as an assistant supervisor of the Anti-Gang Section, and before that, as an Orange County Deputy District Attorney who prosecuted gang-related crimes.

3.    I have read portions of Plaintiff's Motion for a Preliminary Injunction. On pages 6-9 of the Motion Plaintiffs argue that because both LAPD officers and Los Angeles Deputy City Attorneys (DCAs) make independent decisions regarding whom to arrest or prosecute for violation of gang injunctions, a preliminary injunction is necessary because the City has no control over the officers or DCAs. Therefore, they contend, "the [injunction] curfew provisions are likely to be enforced." These statements are a distortion of the evidence and the ultimate conclusion is simply not true.

4.    It is true that officers and DCAs make independent arrest and filing decisions. It could not be otherwise, since each is a professional placed in a position where independent decisions are required. But it is definitely not true that the City has *no control* over the officers or DCAs.

5.    Even though police officers and DCAs have on rare occasions made arrest or filing decisions that the City does not approve of, the City's policy is clear: the invalid curfews are not to be enforced. When we have found specific cases in which we believe inappropriate decisions have been made, we have instructed DCAs not to file such cases in the future and have recommended to officers that they not make such arrests in the future.

///

1

---

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                    PALS\RODRGPIM_OPP

6.     The actions taken by the City in training LAPD officers and DCAs to cease enforcement of invalid injunction curfews and correcting enforcement errors when they are discovered have brought about a substantial reduction in the number of arrests and prosecutions of invalid curfews since the *Colonia Chiques* decision became final in February of 2008. These actions will continue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed August 2, 2012.

ANNE TREMBLAY

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                    PALS\RODRGPIM_OPP