1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT
8          CENTRAL DISTRICT OF CALIFORNIA
9                                    )
10   CHRISTIAN RODRIGUEZ, ALBERTO    )    Case No. CV 11-01135 DMG (JEMx)
     CAZAREZ, individually and as class )
11   representatives,                )    **MEMORANDUM OPINION AND ORDER**
                                      )    **RE: MOTION FOR PROTECTIVE ORDER**
12                      Plaintiffs,   )    **(Docket No. 129)**
                                      )
13              v.                    )
                                      )
14   CITY OF LOS ANGELES, CARMEN      )
     TRUTANICH, CHARLES BECK, ALLAN   )
15   NADIR, ANGEL GOMEZ AND DOES 1    )
     THROUGH 10,                      )
16                                    )
                     Defendants.      )
17   _____ )

18         Defendants City of Los Angeles, Carmen Trutanich, Charles Beck, Allan Nadir, Angel

19   Gomez and Does ("City") seek a protective order pursuant to Fed. R. Civ. P. Rule 26(c) to

20   prevent the depositions of City Police Chief Charles Beck and former City Attorney Carmen

21   Trutanich.  The City's Motion for Protective Order is GRANTED for now, without prejudice to

22   Plaintiffs' right to seek relief at a later time as explained below.

23   **I.    APPLICABLE LEGAL STANDARDS**

24         City seeks to prevent the two depositions on the ground that high ranking officials like

25   Chief Beck and Mr. Trutanich normally are not subject to deposition.  Kyle Engineering Co.

26   v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979).  The Ninth Circuit has not provided definitive

27   guidance on deposing high ranking officials except to embrace the general rule in Kyle in

28   regard to the federal Small Business Administration head.  The Court notes that the district

Exhibit 1
Page 8

1    court in Kyle ordered Kleppe to answer interrogatories and approved a deposition date at

2    the end of discovery.  Id.  The Ninth Circuit also noted "the very wide discretion" allowed

3    district courts in handling discovery.  Id.; see also Harper v. Betor, 95 F.3d 1157*2 (9th Cir.

4    1996) (denying deposition of Sheriff Block but permitting deposition of subordinates, citing

5    Kyle).

6         As the City concedes, the rule in Kyle is not absolute.  The parties cite decisions from

7    other Circuits and other district courts in and outside the Ninth Circuit on what

8    circumstances must exist to warrant the depositions of high ranking officials.  The Court,

9    however, will take guidance from three Central District decisions.  Jarbo v. County of

10   Orange, 2010 WL 3584440*1-*3 (C.D. Cal.) (Selna); Avalos v. Baca, 2006 WL 6220447*1-

11   *3 (C.D. Cal.) (Pregerson); Green v. Baca, 226 F.R.D. 624, 648-650 (C.D. Cal. 2005)

12   (Morrow).  These cases agree that a narrow exception to the general rule exists where: (1)

13   high ranking officials have direct personal factual information pertaining to material issues in

14   the action, and (2) the information to be gained is not available through any other source.

15   Avalos also recognized that litigants ordinarily should be required to depose lower ranking

16   officials with the most relevant knowledge of the facts before taking the depositions of higher

17   ranking officials.  See 2006 WL 6220447*1.

18        Preliminarily, Plaintiffs contend that Chief Beck and Mr. Trutanich are not high

19   ranking officials, based on Green which cited Detoy v. City and County of San Francisco,

20   196 F.R.D. 362, 369-70 (N.D. Cal. 2000).  Detoy found the Police Chief of the City of San

21   Francisco not to be a high ranking official.  Judge Selna in Jarbo, however, noted that Judge

22   Morrow did not make a clear determination whether Los Angeles County Sheriff Baca was a

23   high ranking official and in fact Baca was deposed because he did not deny personal

24   knowledge.  2010 WL 3584440*2.  Judge Selna also noted that Judge Pregerson implicitly

25   held Sheriff Baca was a high ranking official in Avalos as Baca's deposition was barred

26   because plaintiffs did not meet the exceptions to the general rule.  Id.  Judge Selna also

27   strongly disagreed with the reasoning of Detoy, finding Orange County Sheriff Michael

28   Cardona to be a high ranking official.  Id. at fn. 1.  Another Central District case finding

Exhibit 1
Page 9

1  Sheriff Baca to be a high ranking official, citing <u>Jarbo</u>, is <u>Holguin v. County of Los Angeles</u>,

2  2011 WL 7128640*4 (C.D. Cal.).  Thus, the Court finds that Chief Beck and Mr. Trutanich

3  are high ranking officials.

4  **II.     CURFEW PROVISIONS**

5          Before applying the general rule and its exceptions to this case, we must identify the

6  information Plaintiffs seek by their depositions of Chief Beck and Mr. Trutanich.  Going to

7  the heart of the issue and the heart of the case, there is considerable evidence apparently

8  that the City continued to enforce curfew provisions in 26 gang injunctions declared invalid

9  as unconstitutionally vague by the California Court of Appeal in <u>People <i>ex rel.</i> Totten v.</u>

10 <u>Colonia Chiques</u>, 156 Cal. App. 4th 31, 47-49 (2007) <u>until August, 2012</u>.  In fact, the City

11 continued to enforce the curfew provisions even after Plaintiffs filed this suit in February,

12 2011.  Only when Plaintiffs filed a preliminary injunction in July 2012 did the City instruct its

13 officers to stop enforcing the curfews.  Plaintiff Christian Rodriguez was arrested for

14 violation of the curfew provisions in 2009 and Plaintiff Cazarez was served with a gang

15 injunction containing the curfew provisions in 2009.  In February 2013, the District Court

16 granted Plaintiffs' motion for class certification and motion for preliminary injunction

17 enjoining enforcement of the illegal curfew provisions and requiring the City to notify those

18 subject to the curfew provisions that the provisions were illegal and unenforceable.  (The

19 injunction is under appeal to the Ninth Circuit).

20         Put simply, the District Court and the Plaintiffs are entitled to know, <u>and definitively</u>

21 <u>so</u>, the City's reasons for continuing to enforce the curfew provisions of the gang injunctions

22 after the decision in <u>Colonia Chiques</u>.  Plaintiffs understandably contend that it is difficult to

23 believe that Chief Beck and Mr. Trutanich did not have personal knowledge of and approve

24 the continued enforcement of the invalidated curfew provisions, or that they were unaware

25 of <u>Colonia Chiques</u>.  Additionally, the Second Amended Complaint alleges knowing and

26 intentional refusal to rectify a constitutional violation that Chief Beck and Mr. Trutanich had a

27 mandatory duty to correct (or deliberate indifference in failing to do so) and seeks damages

28 against them personally in their individual capacity as well as their official capacity.  <u>See</u>,

3

Exhibit 1
Page 10

1   e.g., Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (holding that plaintiff could state a

2   claim against sheriff for deliberate indifference based on the sheriff's knowledge of and

3   acquiescence in unconstitutional conduct by his or her subordinates).  Resolving such

4   claims would seem to require inquiry into their knowledge, acquiescence and reasons for

5   not acting, by deposition or otherwise.  The City does not respond to this contention of

6   Plaintiffs, and the trio of Central District cases do not appear to involve allegations of

7   personal liability for continued enforcement of policies even after found unconstitutional.

8   When and if this issue returns to the Court, the City will need to address Plaintiffs'

9   contention that, because Chief Beck and Mr. Trutanich's personal liability turns on their

10  reasons, or lack thereof, for not acting to stop enforcement of the City's illegal,

11  unconstitutional curfew provisions, they are entitled to take their depositions.[1]

12  **III.   CHIEF BECK**

13          Like Sheriff Baca in Green, Chief Beck does not provide any declaration that he has

14  no personal knowledge of the continued enforcement of the curfew provisions after the

15  Colonia Chiques decision, and thus the Court does not accept the hearsay statement in the

16  Motion by his attorneys that "Chief Beck has no personal factual information of any issue of

17  material fact pertinent to this action."  The City asserts that Chief Beck was not a percipient

18  witness to the incidents involving the individual plaintiffs but the overarching issue in this

19  case is the City's reasons for the continuing policy implementation of the illegal,

20  unconstitutional curfew provisions after Colonia Chiques.  Judge Morrow permitted a

21  deposition of Sheriff Baca in Green because he did not deny personal knowledge of jail

22

_____

23          [1]   Plaintiffs also contend that they should be able to depose Chief Beck and
    Mr. Trutanich because the Second Amended Complaint includes claims for liability for
24  unconstitutional policies under Monell v. Dept. of Social Services of City of New York, 436
    U.S. 658 (1978).  The Court, however, does not believe the Monell claims add anything to
25  the analysis here because applying the Kyle cases on deposing high ranking officials need
    not compromise Plaintiffs' ability to prove those claims if the City's reasons for not
26  discontinuing the curfew provisions after Colonia Chiques are fully elucidated or the
    elements of the exception to Kyle are demonstrated.  Plaintiffs' claims against Chief Beck
27  and Mr. Trutanich in their individual capacities, as opposed to their official capacities, are
    another matter entirely.
28

Exhibit 1
Page 11

1   release policies and he was the final policymaker and decisionmaker on the implementation

2   of policies governing the release of parolees and inmates.  Green, 226 F.R.D. at 649.

3   Plaintiffs are entitled to know Chief Beck's reasons, if any, for the continued enforcement of

4   the gang injunction curfews after Colonial Chiques, particularly in view of the claim against

5   him personally in his individual capacity.

6        The Court, however, must grant the City's Motion for Protective Order as to Chief

7   Beck at this point in time because a deposition of Chief Beck is premature.  The second

8   component of the exception to the general rule barring deposition of high ranking officials is

9   whether the information is available through alternative, less burdensome sources.  Jarbo,

10  2010 WL 3584440*1.  Plaintiffs have yet to exhaust alternative sources of information.  They

11  have scheduled depositions of the City Attorney Gang Supervisor, LAPD Gang and

12  Narcotics Captain Hart and Deputy Chief Paysinger in November 2013.  PMK depositions of

13  the City Attorney and LAPD are noticed for December 2013.  Only when these depositions

14  are completed can it be known to what extent, if at all, Chief Beck should be deposed.

15  Plaintiffs may move to modify this Order when the above depositions are completed.  The

16  Court will entertain at that time further argument and evidence from the City as well on

17  whether both the City's reasons and Chief Beck's reasons for the continued enforcement of

18  the gang injunction curfew provisions after Colonia Chiques have been fully elucidated.  The

19  Court also would like to know if Chief Beck has any relevant non-privileged emails regarding

20  Colonia Chiques and the gang injunction curfews.  The parties are directed to agree on a

21  date for Chief Beck's deposition in the event the Court orders it in some measure.

22  **IV.    MR. TRUTANICH**

23        Mr. Trutanich is no longer in office.  Plaintiffs contend that Kyle and later cases on

24  deposing high ranking officials do not apply to former officials but the weight of authority,

25  albeit out of District and some out of the Circuit, is to the contrary.  Sargent v. City of

26  Seattle, 2013 WL 1898213*3 fn.2 (collecting cases) (W.D. Wash.)

27        Unlike Chief Beck, Mr. Trutanich submitted a declaration stating under oath "I do not

28  recall ever discussing the specific subject of gang injunction curfews with anyone.  I have

Exhibit 1
Page 12

Case 2:11-cv-01135-DMG-PJW    Document 167-3    Filed 09/30/14    Page 6 of 225    Page
ID #:3204
Case 2:11-cv-01135-DMG-JEM   Document 141   Filed 10/30/13   Page 6 of 6   Page ID #:3000

1   never given input regarding City or City Attorney policy on this subject to anyone.  Instead I

2   have entrusted policy on injunction curfews to other people in the City Attorney's Office who

3   deal with gang injunctions."  Missing from this broad declaration of no personal knowledge is

4   any reference to <u>Colonia Chiques</u>.  Is it believable that Mr. Trutanich was not aware of

5   <u>Colonia Chiques</u> and that the City was not complying with it?   Why didn't he or his office

6   instruct Chief Beck to stop enforcing the curfew provisions?  The Court believes those

7   questions must be answered by deposition or otherwise.

8         Again, the Court will grant the City's Motion for Protective Order as to Mr. Trutanich

9   <u>for now</u>, for the same prematurity reason as for Chief Beck.  Plaintiffs may move to modify

10  this Order when depositions of Mr. Trutanich's subordinates are completed.  The Court will

11  entertain at that time further argument and evidence as well from the City on whether

12  Mr. Trutanich's knowledge of <u>Colonia Chiques</u> and his reasons and those of his office for

13  not instructing the LAPD to stop enforcing the curfew provisions thereafter have been fully

14  elucidated.  As with Chief Beck, the Court would like to know if the City has any relevant

15  non-privileged emails regarding <u>Colonia Chiques</u> and the gang injunction curfews to or from

16  Mr. Trutanich.  The parties are directed to agree on a date for Mr. Trutanich's deposition in

17  the event the Court orders it in some measure.

18  **V.    MISCELLANEOUS**

19        One matter of further note.  The parties are not authorized to decide to depart from

20  the Joint Stipulation procedure mandated for discovery motions in Local Rule 37-1, 37-2.1

21  and 37-2.4.  The Court expects the parties to comply with that procedure on all future

22  discovery motions.  The Court will entertain a motion to shorten time if the parties request it.

23        **IT IS SO ORDERED**.

24

25  DATED:  October 30, 2013              _____*/s/ John E. McDermott*_____

26                                                       JOHN E. MCDERMOTT
                                                         UNITED STATES MAGISTRATE JUDGE

27

28

Exhibit 1
Page 13

**MICHAEL N. FEUER,** City Attorney  (SBN 111529x)        **DISCOVERY MATTER**
**GARY G. GEUSS,** Chief Assistant City Attorney
**CORY M BRENTE,** Supervising Assistant City Attorney
**GEOFFREY PLOWDEN,** Deputy City Attorney - (SBN 146602)
200 N. Main Street
Los Angeles, CA 90012
Email: geoffrey.plowden@lacity.org
Phone No.: (213) 978-7038
Fax Number: (213) 978-8785

Attorneys for Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH AND
CHARLIE BECK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN RODRIGUEZ, ALBERTO CAZAREZ, individually and as class representatives<br><br>*Plaintiff,*<br><br>vs.<br><br>CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLES BECK, ALLAN NADIR, ANGEL GOMEZ AND DOES 1 THROUGH 10.<br><br>*Defendants.* | **CASE NO. CV11-01135 DMG(JEMx)**<br><br>**DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF CHIEF CHARLIE BECK AND CARMEN TRUTANICH**<br><br>Hearing Date: October 29, 2013<br>Time: 10:00 a.m.<br>Courtroom: C<br><br>U.S. Magistrate Judge John E.McDermott |

**TO THIS COURT, ALL PARTIES,  AND THEIR COUNSEL OF RECORD:**

Please take notice that on **October 29, 2013, at 10 a.m.** in Courtroom C, located

on the 8th floor of the U.S. Central District Courthouse, located at 312 N. Spring Street,

Los Angeles, California, Defendants CITY OF LOS ANGELES, et al., will move this

Honorable Court for a protective order pursuant to Federal Rules of Civil Procedure,

Rule 26(c).  Specifically, Defendants CITY OF LOS ANGELES, CARMEN

TRUTANICH AND CHARLIE BECK seek an order protecting Los Angeles Police

Chief Charlie Beck and former City Attorney Carmen Trutanich from depositions in the

above entitled case.

1

Exhibit 2
Page 14

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, Declarations of Geoffrey Plowden and Carmen Trutanich, Exhibits A and B, and any further documents request the Court requires at the hearing on the motion.

Counsel have met and conferred, commencing on September 6, 2013 and continuing through September 13, pursuant to L.R. 7-3 and 37-1, but counsel for the Plaintiffs were unwilling to withdraw their deposition notices for Chief Beck and Carmen Trutanich. The parties agreed the matter may be raised by a regularly-noticed motion by defendants at this time.

There is no discovery cut-off at this time.

DATED: September 18, 2013    Respectfully submitted,

MICHAEL N. FEUER. City Attorney

By: _____
    **GEOFFREY PLOWDEN**, Deputy City Attorney
    Attorneys for Defendants CITY OF LOS ANGELES, et al.,

2

Exhibit 2
Page 15

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiffs Christian Rodriguez and Alberto Cazares have filed this lawsuit on behalf of themselves and a class of persons who have been served with 26 enumerated gang injunctions. The causes of action are for alleged constitutional violations under 42 U.S.C. § 1983 and the California Constitution, false imprisonment and "violation of mandatory duties." The primary legal issues involved in this case are whether curfew provisions in the enumerated injunctions are unconstitutionally vague, whether service of an injunction containing such a provision is itself a constitutional violation, and if so, whether persons served with the injunctions are entitled to damages. Legal issues pertaining to the plaintiffs' individual arrests also exist, including whether qualified immunity and prosecutorial immunity apply.

On August 30, 2013, Plaintiff served the Plaintiffs' First Amended Notice of Depositions of Chief Charlie Beck and Carmen Trutanich. [see Exhibit A] Defendants respectfully request that this Court quash the noticed depositions of the Chief and former City Attorney and issue a protective order pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 26(c). Chief Beck and Mr. Trutanich are not a percipient witness to any incident complained of by Plaintiffs. They have no direct personal factual information pertaining to any material issue in this action and as such their deposition testimony is not relevant nor reasonably calculated to lead to the discovery of admissible evidence with regard to the claims involved in this action. Furthermore, federal common law precludes deposing a high-ranking government official unless there is a showing that the official in question has direct personal factual information pertaining to any material issue in the action, and that the information cannot be obtained through some other, less burdensome source.

Exhibit 2
Page 16

Plaintiffs were advised the deponents had no personal knowledge and Plaintiffs have made no such showing to defendants, but refuse to take the depositions off calendar, necessitating the instant motion.

## II.    COURT'S AUTHORITY TO GRANT THIS MOTION

Defendants move for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure[1] in regards to the deposition notice of Los Angeles Chief of Police Charlie Beck and former City Attorney Carmen Trutanich.  The Court should issue a protective order barring the depositions because: (1) Chief Beck and Mr. Trutanich have no direct factual information pertaining to any material issues in the underlying action; (2) Any information sought of Chief Beck and Mr. Trutanich can be obtained through other, less obtrusive sources; and (3) Requiring Chief Beck to appear for the deposition would severely impede his ability to perform his duties and responsibilities as Los Angeles Chief of Police. In accordance with FRCP Rule 26(c), Deputy City Attorneys Rena Shahandeh and Geoffrey Plowden met and conferred with Plaintiff's attorneys on September 13, 2013.  The parties could not, however, agree to cancel the deposition. (See Declaration of Geoffrey Plowden.)

## III.    CHIEF BECK AND CARMEN TRUTANICH HAVE NO DIRECT PERSONAL FACTUAL KNOWLEDGE OF ANY MATERIAL ISSUES TO THIS ACTION.

Federal common law is ripe with precedent restricting taking the depositions of high-ranking government officials.  The Supreme Court has indicated that the practice of calling high government officials as witnesses is something that should be discouraged. *United States v. Morgan*, 313 U.S. 409, 422 (1941).  The 9th Circuit elaborated on this, holding that heads of government agencies are not normally subject to deposition. *Kyle*

---

[1] Federal Rules of Civil Procedure Rule 26(c) provides in part that "a party or any person from whom discovery is sought may move for a protective order...The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

4

Exhibit 2
Page 17

*Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979). See also, *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994) (noting that "before the involuntary depositions of high ranking government officials will be permitted, the party seeking the depositions must demonstrate that the particular official's testimony will likely lead to the discovery of admissible evidence and is essential to that party's case, [citation omitted] ... [and] the evidence must not be available through an alternative source or via less burdensome means"); and *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir. 1982) (governor could not be deposed absent specific need).

The issue essentially involves the Rule 26(b)(2) procedural standards for determining whether a protective order is warranted under the circumstances.  Whether governmental officials' deposition should not be permitted is essentially an inquiry under Rule 26(b)(2); determining whether the burdens of the requested discovery outweigh the probative value of such discovery– superimposed upon a general reluctance in federal law to divert public officials away from their primary public duties (or constantly bedevil former governmental officials with litigation process directed to their previous public decisions). And, the higher placed the official, the more the law exhibits reluctance.

This policy has been implemented to protect such officials from the constant interference of the discovery process and leave them free to perform their official duties and responsibilities.  *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990).  Various other circuit courts have ruled consistently with the 9th Circuit, but qualified the rule by allowing depositions of high-ranking government officials to be taken only under extraordinary circumstances.  *See, e.g., Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *In re United States (Holder)*, 197 F.3d 310, 313 (8th Cir. 1999); *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re United States (Kessler)*, 95 F.2d 510, 512 (11th Cir. 1993); *E.E.O.C. v. K-Mart*, 694 F.2d 1055, 1067-68 (6th Cir. 1982); *Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999).

Exhibit 2
Page 18

The restriction on deposing high-ranking government officials, as such, is not absolute.  The 1st Circuit outlined a two-part test to be used in determining when high-ranking government officials may be deposed; (1) If they have direct personal factual information pertaining to material issues in an action, and (2) If there is a showing that the information sought cannot be obtained through some other, less burdensome source. *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007).

There are very few mentions of protective orders concerning high-ranking law enforcement officials appearing in published cases.  Numerous unpublished district court opinions within the 9th Circuit, however, have held that high-ranking law enforcement officials are the type of public official federal common law seeks to protect.  *See, e.g., Arizmendi v. City of San Jose*, No. C08-05163 JW (HRL), 2010 WL 1459867, at 2-3 (N.D. Cal. 2010) (granting a protective order precluding taking the deposition of the Chief of the San Jose Police Department.); *Jarbo v. County of Orange*, No. SACV 05-00202-JVS, 2010 WL 3584440, at 3 (C.D. Cal. 2010) (holding that the Sheriff of Orange County is a high-ranking government official for the purposes of this rule.); *Sargent v. City of Seattle*, No. C12-1232 TSZ, 2013 WL 1898213, at 3 (W.D. Wash. 2013) (holding that the Chief of the Seattle Police Department was a high-ranking public official who may not be deposed absent a showing of extraordinary circumstances by the plaintiff.).  As Chief of Police of the Los Angeles Police Department, Chief Beck's duties and responsibilities are of the nature federal courts have sought to protect.  He is responsible for the management of one of the country's largest police departments.  To depose him on every matter involving the L.A.P.D. would severely restrict his ability to perform his duties and responsibilities.  Chief Beck has no personal factual information of any issue of material fact pertinent to this action.  He was not a percipient witness to the incident in question.  Furthermore, Plaintiff has not shown that the information sought of Chief Beck is unobtainable through another, less burdensome sources.

Exhibit 2
Page 19

Plaintiff has noticed the depositions of lower level employees. Plaintiff should exhaust those depositions before pushing for the Chief and Mr. Trutanich's depositions. Plowden Decl.

Carmen Trutanich has submitted a declaration that he has no personal knowledge. Deposing him would be burdensome and not likely to lead to discovery of admissible evidence.  Further, former heads of departments are entitled to the same considerations under Rule 26(b)(2)[2].

Since Plaintiffs have not shown that Chief Beck and Mr. Trutanich have direct personal factual information pertaining to material issues in this action, or that the information sought cannot be obtained through a less burdensome source, the Court should grant Defendant's Motion for Protective Order Re: Depositions of Chief Charlie Beck and Carmen Trutanich and quash the First Amended Notices of Depositions.

DATED: September 18, 2013  Respectfully submitted,

**MICHAEL N. FEUER**, City Attorney

By:_____
   **GEOFFREY PLOWDEN**, Deputy City Attorney
   Attorneys for Defendants CITY OF L. A., et al.,

---

[2] Several cases discuss the issue of whether the official's "former" status changes the protection. See, e.g. *Moyle v. Liberty Mutual*, 2012 U.S. Dist. Lexis 155527 (unpublished); *Mulvey v. Chrysler Corp*, 106 F.R.D. 364, 365 (D.R.I. 1985); and *Gauthier v Union Pac. R. Co.*, 2008 U.S. Dist. Lexis 47199 (E.D. Texas 2008) (unpublished)

7

Exhibit 2
Page 20

## DECLARATION OF GEOFFREY PLOWDEN

I, GEOFFREY PLOWDEN, declare:

1.    I am an attorney at law duly admitted to practice before all courts of the State of California and before this Court. I am a Deputy City Attorney at the Office of the City Attorney for the City of Los Angeles, Attorneys of Record for Defendants CITY OF LOS ANGELES, CHIEF BECK and CARMEN TRUTANICH in this action. I make this declaration based upon my own personal knowledge and if called upon I would testify thereto.

2.    Attached as Exhibit A is a true and correct copy of the Plaintiffs' First Amended Notice of the Deposition of Charlie Beck. Attached as Exhibit B is a true and correct copy of the Plaintiffs' First Amended Notice of the Deposition of Carmen Trutanich.

3.    Mr. Trutanich prepared a declaration while still in office pertaining to his lack of personal knowledge. He currently maintains the same position, although he no longer is the City Attorney for Los Angeles.

2.    The deposition of Allan Nadir, a Deputy City Attorney who has personal knowledge concerning individual claims of the plaintiffs, is set for September 25, 2013.

3.    The depositions of the "Persons Most Knowledgeable" from the Los Angeles Police Department and the City Attorney's Office regarding the subjects of this complaint was set for September 28, 2013, and is being rescheduled by agreement of the parties for a mutually agreeable date.

4.    The deposition of Angel Gomez, an arresting officer who has personal knowledge concerning individual claims by the plaintiffs, was set for September 27, 2013 and is being rescheduled by agreement of the parties to a mutually agreeable date.

5.    The deposition of Anne Tremblay, who is a person most knowledgeable about the Los Angeles City Attorney's Office policies concerning gang injunctions and supervising attorney of the City Attorney's Anti-Gang Section, is set for October 1, 2013.

8

Exhibit 2
Page 21

6.    The deposition of Earl Paysinger, who is knowledgeable about Los Angeles Police Department's policies, is set for October 9, 2013.

7.    The deposition of Captain William Hart, who is the Commanding Officer of LAPD's Gang and Narcotics Division and is knowledgeable about the Los Angeles Police Department's policies concerning gang injunctions, is set for October 10, 2013.

8.    All of these depositions should be exhausted before pushing for the Chief's deposition.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed this 18th day of September, 2013 at Los Angeles, California.

_____
GEOFFREY PLOWDEN, Declarant

9

Exhibit 2
Page 22

1   Olu K. Orange, Esq. [S.B. #213653]
    ORANGE LAW OFFICES
2   3435 Wilshire Blvd., Suite 2900
    Los Angeles, California 90010
3   Telephone: (213) 736-9900
    Facsimile: (213) 417-8800
4   Email: oluorange@att.net

5   Dan Stormer, Esq. [S.B. #101967]
    Anne Richardson, Esq. [S.B. #151541]
6   Cindy Pánuco, Esq. [S.B. #266921]
    HADSELL, STORMER
7       RICHARDSON & RENICK, LLP
    128 North Fair Oaks Avenue
8   Pasadena, California 91103-3645
    Telephone: (626) 585-9600
9   Facsimile: (626) 577-7079
    Email: dstormer@hadsellstormer.com
10          arichardson@hadsellstormer.com
            cpanuco@hadsellstormer.com
11

12  Attorneys for Plaintiffs

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15  CHRISTIAN RODRIGUEZ, ALBERTO        Case No.: CV11-01135 DMG (JEMx)
16  CAZAREZ, individually and as class
    representatives                      [Assigned to the Honorable Dolly M.
17                                       Gee – Courtroom 7]
                          Plaintiffs,
18                                       PLAINTIFFS' FIRST AMENDED
        vs.                              NOTICE OF THE DEPOSITION OF
19                                       CHARLES BECK
    CITY OF LOS ANGELES, CARMEN
20  TRUTANICH, CHARLES BECK,            Date:      September 20, 2013
    ALLAN NADIR, ANGEL GOMEZ            Time:      9:00 a.m.
21  AND DOES 1 THROUGH 10.              Place:     Hadsell Stormer, et al.
22                                                 128 N. Fair Oaks Ave.
                          Defendants.              Pasadena, CA 91103
23

24

25                                      Complaint Filed:  February 7, 2011
26                                      Discovery Cut-Off: By Code
                                        Motion Cut-Off:   By Code
27                                      Trial Date:       None set
28

PLTFS' FIRST AMEND NTC OF THE DEPO OF CHARLES BECK

Exhibit - A - Page - 10

Exhibit 2
Page 23

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of

3   Civil Procedure, plaintiffs will take the deposition of CHARLES BECK on

4   September 20, 2013.  Said deposition shall commence 9:00 a.m. at Hadsell Stormer

5   Richardson & Renick LLP, 128 N. Fair Oaks Avenue, Pasadena, California, 91103.

6       PLEASE TAKE FURTHER NOTICE that said deposition will be taken

7   upon oral examination by stenographic means before a notary public, or some other

8   officer authorized by law to administer oaths.  Plaintiffs reserve the right to record

9   said deposition by videotape.  If the deposition is not completed on September 20,

10  2013, it will be continued day to day thereafter, until completed, or at some mutually

11  agreeable date within a reasonable period of time.

12

13  Dated:  August 30, 2013                    Respectfully Submitted,

14                                             ORANGE LAW OFFICES

15
                                               HADSELL STORMER
16                                                RICHARDSON & RENICK, LLP

17

18                                             By:_____

19                                                Dan Stormer
                                                  Attorneys for Plaintiffs
20

21

22

23

24

25

26

27

28

                                2

## PROOF OF SERVICE

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks Avenue, Pasadena, California 91103.

On August 30, 2013, I served the foregoing document described as: **PLAINTIFFS' FIRST AMENDED NOTICE OF THE DEPOSITION OF CHARLES BECK** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

| Rena M. Shahandeh, Esq.<br>Cory Brente, Esq.<br>Bruce Monroe, Esq.<br>Los Angeles City Attorneys' Office<br>200 N. Main Street, 6th Fl., City Hall East<br>Los Angeles, California 90012-4119 | Attorneys for Defendants |
|---|---|

## XX_  BY MAIL

XX  I deposited such envelope in the mail at Pasadena, California. The envelope was mailed with postage thereon fully prepaid.

_____ I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

Executed on August 30, 2013, at Pasadena, California.

XX  (Federal)    I declare that I am employed in the office of a member of the bar of this Court at whose direction the serve was made.

_____
Tami Galindo
Declarant

Exhibit - A - Page - 12

Exhibit 2
Page 25

1  Olu K. Orange, Esq. [S.B. #213653]
   ORANGE LAW OFFICES
2  3435 Wilshire Blvd., Suite 2900
   Los Angeles, California 90010
3  Telephone: (213) 736-9900
   Facsimile: (213) 417-8800
4  Email: oluorange@att.net

5  Dan Stormer, Esq. [S.B. #101967]
   Anne Richardson, Esq. [S.B. #151541]
6  Cindy Panuco, Esq. [S.B. #266921]
   HADSELL, STORMER
7       RICHARDSON & RENICK, LLP
   128 North Fair Oaks Avenue
8  Pasadena, California 91103-3645
   Telephone: (626) 585-9600
9  Facsimile: (626) 577-7079
   Email: dstormer@hadsellstormer.com
10        arichardson@hadsellstormer.com
          cpanuco@hadsellstormer.com
11

12 Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15 CHRISTIAN RODRIGUEZ, ALBERTO       Case No.:  CV11-01135 DMG (JEMx)
   CAZAREZ, individually and as class
16                                    [Assigned to the Honorable Dolly M.
   representatives                    Gee – Courtroom 7]
17
                    Plaintiffs,       PLAINTIFFS' FIRST AMENDED
18                                    NOTICE OF THE DEPOSITION OF
        vs.                           CARMEN TRUTANICH
19
   CITY OF LOS ANGELES, CARMEN        Date:       September 19, 2013
20 TRUTANICH, CHARLES BECK,           Time:       9:00 a.m.
   ALLAN NADIR, ANGEL GOMEZ           Place:      Hadsell Stormer, et al.
21 AND DOES 1 THROUGH 10.                         128 N. Fair Oaks Ave.
22                                                Pasadena, CA 91103
                    Defendants.
23
                                      Complaint Filed:   February 7, 2011
24                                    Discovery Cut-Off: By Code
25                                    Motion Cut-Off:    By Code
                                      Trial Date:        None set
26

27

28
                                1

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of

3  Civil Procedure, plaintiffs will take the deposition of CARMEN TRUTANICH on

4  September 19, 2013.  Said deposition shall commence 9:00 a.m. at Hadsell Stormer

5  Richardson & Renick LLP, 128 N. Fair Oaks Avenue, Pasadena, California, 91103.

6      PLEASE TAKE FURTHER NOTICE that said deposition will be taken

7  upon oral examination by stenographic means before a notary public, or some other

8  officer authorized by law to administer oaths.  Plaintiffs reserve the right to record

9  said deposition by videotape.  If the deposition is not completed on September 19,

10  2013, it will be continued day to day thereafter, until completed, or at some mutually

11  agreeable date within a reasonable period of time.

12

13  Dated:  August 30, 2013               Respectfully submitted,

14                                        ORANGE LAW OFFICES

15                                        HADSELL STORMER

16                                          RICHARDSON & RENICK, LLP

17

18                                        By: _____

19                                        Dan Stormer

20                                        Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

2

PLTFS FIRST AMEND NTC OF THE DEPO OF CARMEN TRUTANICH

Exhibit - B - Page - 14

Exhibit 2
Page 27

## PROOF OF SERVICE

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks Avenue, Pasadena, California 91103.

On August 30, 2013, I served the foregoing document described as: **PLAINTIFFS' FIRST AMENDED NOTICE OF THE DEPOSITION OF CARMEN TRUTANICH** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

| | |
|---|---|
| Rena M. Shahandeh, Esq.<br>Cory Brente, Esq.<br>Bruce Monroe, Esq.<br>Los Angeles City Attorneys' Office<br>200 N. Main Street, 6th Fl., City Hall East<br>Los Angeles, California 90012-4119 | Attorneys for Defendants |

**XX   BY MAIL**

__XX__ I deposited such envelope in the mail at Pasadena, California. The envelope was mailed with postage thereon fully prepaid.

_____ I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

Executed on August 30, 2013, at Pasadena, California.

__XX__   (Federal)   I declare that I am employed in the office of a member of the bar of this Court at whose direction the serve was made.

Tami Galindo
Declarant

Exhibit - B -  Page -  15

Exhibit 2
Page 28

# DECLARATION OF CARMEN A. TRUTANICH

I, Carmen A. Trutanich, declare as follows:

1.    I am employed as City Attorney by the City of Los Angeles, and am a Defendant in this action. If called as a witness, I would testify to the following facts based on my personal knowledge.

2.    I am aware that Plaintiffs in this action have alleged in their Second Amended Complaint (SAC) that Defendants violated their rights by serving them with a gang injunction with invalid curfew provisions, and by arresting and prosecuting them for violation of that curfew. I am also aware that I have been sued in both my official and individual capacities as policymaker for the City Attorney's Office.

3.    I have read SAC paragraphs 1-3, 8, and 13-15. The allegations in paragraph 14 that I "participated in, approved, and/or ratified the unconstitutional and/or illegal acts complained of herein," and in paragraph 15 that I "acted in coordination with, approval of, and in conspiracy with [the other defendants]," and that I "ratified the aforesaid conduct committed under color of law" are not true.

4.    I do not recall ever discussing the specific subject of gang injunction curfews with anyone. I have never given input regarding City or City Attorney policy on this subject to anyone. Instead, I have entrusted policy on injunction curfews to other people in the City Attorney's Office who deal with gang injunctions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed August **25**, 2012.

_____
CARMEN A. TRUTANICH

1

Exhibit 2
Page 29

1 | **MICHAEL N. FEUER**, City Attorney  (SBN 111529x)        **DISCOVERY MATTER**
**GARY G. GEUSS**, Chief Assistant City Attorney
2 | **CORY M BRENTE**, Supervising Assistant City Attorney
**GEOFFREY PLOWDEN,** Deputy City Attorney - (SBN 146602)
3 | 200 N. Main Street
Los Angeles, CA 90012
4 | Email: geoffrey.plowden@lacity.org
Phone No.: (213) 978-7038
5 | Fax Number: (213) 978-8785

6 | Attorneys for Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH,
CHARLIE BECK and ANGEL GOMEZ

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHRISTIAN RODRIGUEZ, ALBERTO CAZAREZ, individually and as class representatives | **CASE NO. CV11-01135 DMG(JEMx)** |
| *Plaintiff,* | **DEFENDANT CITY OF LOS ANGELES' REPLY BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF CHIEF CHARLIE BECK AND CARMEN TRUTANICH; DECLARATIONS OF RENA SHAHANDEH AND ARTURO MARTINEZ** |
| vs. | |
| CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLES BECK, ALLAN NADIR, ANGEL GOMEZ AND DOES 1 THROUGH 10. | |
| *Defendants.* | Hearing Date: November 5, 2013 Time: 10:00 a.m. Courtroom: C |
| | U.S. Magistrate Judge John E.McDermott |

**TO THIS COURT, ALL PARTIES,  AND THEIR COUNSEL OF RECORD:**

Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLIE

BECK and ANGEL GOMEZ submit the following Reply Brief in support of ther Motion

for Protective Order from depositions in the above-entitled case.

DATED: October 22, 2013        **MICHAEL N. FEUER**. City Attorney

By: _____/S/_____
           **GEOFFREY PLOWDEN**, Deputy City Attorney
           Attorneys for Defendants CITY OF LOS ANGELES, et al.,

1

Exhibit 3
Page 30

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    PLAINTIFFS' OPPOSITION MISSES THE POINT, FOCUSING ON GANG INJUNCTIONS GENERALLY INSTEAD OF THE CURFEW PROVISION WHICH IS THE MATERIAL ISSUE HERE.**

Plaintiffs Christian Rodriguez and Alberto Cazares have filed this lawsuit on behalf of themselves and a class of persons who have been served with 26 enumerated gang injunctions.  The causes of action are for alleged constitutional violations under 42 U.S.C. § 1983 and the California Constitution, false imprisonment and "violation of mandatory duties."  The primary legal issues involved in this case are whether **curfew** provisions in the enumerated injunctions are unconstitutionally vague, whether service of an injunction containing such a provision is itself a constitutional violation, and if so, whether persons served with the injunctions are entitled to damages.

Defendants moved for a protective order under Rule 26(c) because (1) Chief Beck and Mr. Trutanich have no direct factual information pertaining to any **material** issues in the underlying action; (2) Any information sought of Chief Beck and Mr. Trutanich can be obtained through other, less obtrusive sources; and (3) Requiring Chief Beck to appear for the deposition would severely impede his ability to perform his duties and responsibilities as Los Angeles Chief of Police.

Plaintiff's opposition fails to focus on the relevant inquiry: Whether the Chief and Mr. Trutanich have personal knowledge of the enforcement of the **curfew** provision of the gang injunctions.  Plaintiffs have cited campaign literature, gang injunction press releases, etc. but nothing from any source, other than plaintiffs' counsel's suppositions, that Chief Beck and Mr. Trutanich have personal knowledge of the curfew provision of the gang injunction and the enforcement thereof.

Plaintiffs are misleading the Court with their "evidence" of personal knowledge. For example, plaintiffs cite Exhibit 17 as evidence that Mr. Trutanich and Chief Beck "ostensibly consulted" with Deputy City Attorney Anne Tremblay. (See Opp. at p.17:4-9)

Exhibit 3
Page 31

Ms. Tremblays' declaration does not name or infer Chief Beck or Mr. Trutanich at all.  Plaintiffs' pure supposition is highlighted by underlining "we decided."

Further, Provision B-7 of Ex. 17, found on p. 111 merely states the City Attorney can delegate the decision to proceed with a gang injunction request to Chief of the Criminal Branch. Further B-7 provides that *LAPD command staff*, not the Chief of Police himself, along with a gang expert is in on the consultation with a gang deputy (A deputy city attorney working in the gang unit).  As set forth in the accompanying Declaration of Deputy City Attorney Arturo Martinez, a gang deputy, neither the Chief of Police or the City Attorney himself get involved in decisions to seek or file gang injunctions.

On the following page (p.112, provision C-3) of Ex. 17 (which Plaintiffs failed to point out to the Court in their opposition), it states the inclusion of special provisions including **curfew** must be approved by a **Gang Supervisor** (i.e. not Mr. Trutanich).  See, also Marinez Decl.

On p.113 of Ex. 17, the Gang Deputy and Gang Supervisor review and approve the gang provisions. (Again, not Mr. Trutanich). See, also Martinez Decl.

Thus, plaintiffs' counsel supposition that Chief Beck and Mr. Trutanich were "ostensibly" involved is not borne out by Exhibit 17 at all. Indeed, Exhibit 17 illustrates that the decision about enforcement of the curfew provisions of gang injunctions rests with the Gang Deputy, City Attorney Gang Supervisor, Chief of the Criminal Branch, **but no higher.**  Martinez Decl.

Another example of the lack of substance of the opposition is the constant reference to the City's liability (e.g. pp.14-17) in the opposition.  Just because the City has potential liability does not equate to Mr. Trutanich or Chief Beck having personal knowledge of material issues.

Plaintiffs' opposition, in large part because it is premature and persons under Chief Beck and Mr. Truntanich have not yet been deposed, lacks any "smoking gun" evidence that either Chief Beck or Mr. Trutanich have personal knowledge over plaintiffs, their injunction, curfew provisions of any injunctions, or the *Colonia Chiques* decision.

Exhibit 3
Page 32

Defendants submit that unless and until Plaintiffs develop some smoking gun evidence, they have not met their burden in showing these top officials must be deposed at this time.

## II.

### PLAINTIFFS SHOULD EXHAUST DISCOVERY OF LOW LEVEL EMPLOYEES BEFORE FORCING CHIEF BECK AND MR. TRUTANICH TO BE DEPOSED.

As set forth above, plaintiffs have demonstrated, at best, that LAPD command Staff and certain City Attorney officials may have relevant personal knowledge. Defendants submit the depositions of those persons should be completed first, before imposing upon Chief Beck and Mr. Trutanich. See, *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994) (noting that "before the involuntary depositions of high ranking government officials will be permitted, the party seeking the depositions must demonstrate that the particular official's testimony will likely lead to the discovery of admissible evidence and is essential to that party's case, [citation omitted] ... [and] the evidence must not be available through an alternative source or via less burdensome means".)

As set forth in the accompanying Declaration of Rena Shahandeh, Plaintiffs have confirmed with defendants that City Attorney Gang Supervisor Anne Tremblay, and former LAPD Gang and Narcotics Captain Hart, and Deputy Chief Paysinger will be deposed in November, 2013.  PMK depositions from the City Attorney and LAPD are noticed for December, 2013.

These depositions should be done first.  If and when Plaintiffs can show that these depositions of lower level employees failed to yield the discovery they need, then they can pursue the depositions of the high ranking officials.

The 9th Circuit has held that heads of government agencies are not normally subject to deposition. *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979). Plaintiffs effort to distinguish this holding, that the deponents were *federal* employees, is unavailing.  Similarly, plaintiffs offer no contrary authority that a former elected official such as Mr. Trutanich loses the Court's protection simply due to his leaving office.

4

Exhibit 3
Page 33

1    Since Plaintiffs have not shown that Chief Beck and Mr. Trutanich have direct

2  personal factual information pertaining to material issues in this action, or that the

3  information sought cannot be obtained through a less burdensome source, the Court

4  should grant Defendant's Motion for Protective Order Re: Depositions of Chief Charlie

5  Beck and Carmen Trutanich and quash the First Amended Notices of Depositions.

6

7  DATED: October 22, 2013         Respectfully submitted,

8

9                                 **MICHAEL N. FEUER**, City Attorney

10

11                                By:_____/S/_____
                                   **GEOFFREY PLOWDEN**, Deputy City Attorney

12                                Attorneys for Defendants CITY OF L. A., et al.,

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 3
Page 34

## DECLARATION OF RENA M. SHAHANDEH

I, RENA M. SHAHANDEH declare that I am a Deputy City Attorney with the Los Angeles City Attorney's Office and I am lead trial counsel for defendants City of Los Angeles, Chief Charlie Beck, Carmen Trutanich and Angel Gomez in the case of Christian Rodriguez, et al. v. City of Los Angeles, et al., Case No.CV 11-01135 DMG (JEMx). I make this declaration based upon my own personal knowledge except upon those matters stated upon information and belief, and if called upon I would competently testify under penalty of perjury as follows:

1.    I have met and conferred with plaintiffs' counsel and counsel for defendant Allan Nadir regarding dates for upcoming depositions. The parties have agreed that depositions of former LAPD Captain William Hart, Assistant City Attorney Anne Tremblay, Deputy City Attorney Allan Nadir and LAPD Officer Angel Gomez will take place in November 2013. The parties also have agreed that depositions of persons most knowledgeable will take place in December 2013. The latter depositions include, *inter alia*, persons most knowledgeable about policies concerning inclusion of particular provisions in gang injunctions and enforcement of those provisions.

2.    I have also met with opposing counsel regarding the deposition of LAPD Deputy Chief Earl Paysinger, and although we have not reached an agreement on the exact date of his deposition, the defendants are attempting to offer him no later than November, 2013. We are just working out a mutually agreeable date or dates.

I declare under penalty of perjury pursuant to the laws of the United States of America the foregoing is true and correct.

Executed this 22nd day of October, 2013, at Los Angeles, California.

RENA M. SHAHANDEH, Declarant

6

Exhibit 3
Page 35

## DECLARATION OF ARTURO MARTINEZ

I, ARTURO MARTINEZ declare that I am a Deputy City Attorney and the assistant supervisor of the Anti-Gang Section of the Los Angeles City Attorney's Office. I make this declaration based upon my own personal knowledge except upon those matters stated upon information and belief, and if called upon I would competently testify under penalty of perjury as follows:

1.    I joined the Anti-Gang Section in October 2007.  Since then, I participated in the revision process for the Gang Injunction Program Guidelines (hereinafter, "Guidelines") that were initially published in April 2007.  I have reviewed provisions B.7, C.2 and C.3 of Exhibit 17 to the Plaintiff's Opposition to Defendant City of Los Angeles' Motion for Protective Order re: Depositions of Chief Charlie Beck and Carmen Trutanich in case number CV11-01135 DMG (JEMx).  Exhibit 17 is the most current version of the Guidelines.

2.    The requirement that a request for a gang injunction be analyzed by a gang supervisor and in consultation with LAPD command staff in provision B.7 of the Guidelines does not mean the elected City Attorney must analyze the request in consultation with the Chief of Police.  The term "gang supervisor" refers to the supervisor of the Anti-Gang Section, and "command staff" in practice refers to the Area Captain of the division or divisions where the injunctions are requested and the Bureau Chief.  I have not personally come across the situation where Carmen Trutanich and Chief Charlie Beck have been involved in analyzing requests for gang injunctions.

3.    The requirements that deviations from standard injunction provisions and that special provisions such as curfew provisions be approved by a gang supervisor in provisions C.2 and C.3 of the Guidelines does not mean such provisions have to be

...

...

...

7

Exhibit 3
Page 36

1  approved by the elected City Attorney personally.  The term "gang supervisor" again

2  refers to the supervisor of the Anti-Gang Section.

3      I declare under penalty of perjury pursuant to the laws of the United States of

4  America the foregoing is true and correct.

5      Executed this 22nd day of October, 2013, at Los Angeles, California.

7  _____

8      ARTURO MARTINEZ, Declarant

8

Exhibit 3
Page 37

**Cindy Panuco**

| | |
|---|---|
| **From:** | Geoffrey Plowden <geoffrey.plowden@lacity.org> |
| **Sent:** | Wednesday, November 06, 2013 8:25 AM |
| **To:** | Cindy Panuco |
| **Cc:** | rena.shahandeh@lacity.org; oluorange@att.net; Dan Stormer; jjeffery@reilyjeffery.com; Anne Richardson |
| **Subject:** | Re: Depositions of Chief Beck and Carmen Trutanich |

**The protective order was granted and I will impose on Chief Beck and Mr. Trutanich:**

"Only when these depositions are completed can it be known to what extent, *if at all*, Chief Beck should be deposed... The parties are directed to agree on a date for Chief Beck's deposition *in the event* the Court orders it in some measure."
**We intend to comply with the Court's orders if and when it becomes necessary. For now, there are no depositions to schedule. Thank you.**

On Tue, Nov 5, 2013 at 4:09 PM, Cindy Panuco <cpanuco@hadsellstormer.com> wrote:

Rena:


Pursuant to Judge McDermott's Order (Dkt No. 141), please provide dates in January that Chief Beck and Carmen Trutanich are available to be deposed for the permitted seven hours. As you know, the judge has ordered that the parties agree on dates for those depositions now, so that we are prepared to move forward on those dates in the event that he orders they can go forward.



Thanks,

Cindy


Cindy Pánuco

Hadsell Stormer Richardson & Renick, LLP*

128 N. Fair Oaks Ave.

Pasadena, CA 91103

tel. (626) 585-9600

fax (626) 577-7079

1

Exhibit 4
Page 38

cpanuco@hadsellstormer.com*

www.hadsellstormer.com*

*Please note new firm name, my new email address, and new firm website.*

This message is intended only for the addressee and may contain attorney client or attorney work product protected information.  If you have received this message in error, please contact the sender immediately and delete the message.

--
Geoffrey Plowden
Deputy City Attorney
Police Litigation Section
200 N. Main Street #600
Los Angeles, CA 90012
213-978-7038 ph.
213-978-8785 fx.
*****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected
by the attorney-client privilege and/or the work product doctrine. If you are not the
intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited.  If you have
received this communication in error, please notify us immediately by e-mail and delete
the original message and any attachments without reading or saving in any manner.
******************************************************************

Exhibit 4
Page 39

**Cindy Panuco**

| | |
|---|---|
| **From:** | Cindy Panuco |
| **Sent:** | Monday, August 18, 2014 4:43 PM |
| **To:** | rena.shahandeh@lacity.org; jjeffery@reilyjeffery.com; Gilbert, Kevin (kgilbert@meyersnave.com) |
| **Cc:** | Dan Stormer; Anne Richardson (arichardson@hadsellstormer.com); oluorange@att.net; Mohammad Tajsar |
| **Subject:** | RE: Rodriguez v. City of LA et al. |

Counsel:

I looks like Wednesday 8/20 at 2 pm works for everyone. Here is the dial-in info.
712-432-0800
PIN is 634231#

This email also confirms that we have not agreed to take Anne Tremblay's depo off calendar (as noted below) and it is going forward on Friday 8/22 as scheduled. This deposition was originally scheduled for 8/5. However, on 8/1 the City informed us that it needed more time to produce key documents responsive to Plaintiffs' document demands to Beck and Trutanich. In the spirit of professional courtesy and on the City's representation that it would produce responsive documents by 8/13, we continued Ms. Tremblay's deposition to 8/22. As of Friday 8/15 we still did not have the City's responses or the responsive documents. I had to request that they City send us an emailed version of the documents, which were sent to us on Friday afternoon at 5:30 pm. However, the only documents that the City produced on 8/15, (despite a two-week extension) were the bios of Chiefs Beck and Trutanich--printed from websites. Further the responses were not even verified as required by the federal rules of procedure. In light of this recent and severely deficient production of documents we reserve the right to start Ms. Tremblay's deposition on Friday, and finish it after we have met and conferred on Plaintiffs' document demands to Beck and Trutanich, and obtained the responsive documents.

This email will also serve as an immediate request to the City, for a conference of counsel pursuant to Local Rule 37-1, regarding he City's responses and objections to the following discovery:

1. Plaintiffs' Document demand to Charlie Beck Set One
2. Plaintiffs' Document demand to Carmen Trutanich Set One
3. Plaintiffs' First Set of Interrogatories to the City.

We can meet and confer with you about this discovery during a break in the deposition of Ms. Tremblay on Friday.

Thanks,
Cindy

---

**From:** Cindy Panuco
**Sent:** Friday, August 15, 2014 4:16 PM
**To:** rena.shahandeh@lacity.org; jjeffery@reilyjeffery.com; Gilbert, Kevin (kgilbert@meyersnave.com)
**Cc:** Dan Stormer; Anne Richardson (arichardson@hadsellstormer.com); oluorange@att.net; Mohammad Tajsar
**Subject:** Rodriguez v. City of LA et al.
**Importance:** High

Counsel:

Exhibit 5
Page 40

I got a call today from Kevin Gilbert regarding putting off the agreed upon summary judgment deadlines and the depos happening next week because he has not been able to get Angel Gomez's signature on the substitution of counsel.

I called Judge Gee's clerk and she has 11/21 available for a hearing on the Cross MSJ's. That would mean that per the agreement of the parties, the following deadlines would apply:

MSJ Filing: 10/10/14
Opposition Filing: 10/24/14
Reply Filing: 11/7/14

We are agreeable to this extension if all defense counsel are agreeable to the following:

1.  Anne Tremblay's depo goes forward on 8/22/14 as agreed, and the PMK depo goes forward as agreed on 9/4/14
2.  Defense Counsel provides us firm dates on which they can do the following depos:
    a.  Mr. Gomez's depo
    b.  Mr. Rodriguez's depo
    c.  Mr. Nadir's depo
    d.  Mr. Hart's depo
    e.  Mr. Paysinger's depo
3.  All of the dates of the depos are between 8/25—9/12
4.  If any depositions are rescheduled further out and require us to obtain a transcript on an expedited basis for use in the summary judgment motions, the City will cover the expenses of any fees for expediting.

As you know, we have been trying to get dates for all of these depositions since June 27, still have not gotten a date for Mr. Paysinger's deposition, and already continued Ms. Tremblay's deposition to 8/22 to accommodate the City's request for an extension on the responses to the document demands.

If all of this is agreeable to all counsel, we can call Judge Gee's clerk and confirm the 11/21 hearing date.

Thanks,
Cindy


Cindy Pánuco
Hadsell Stormer Richardson & Renick, LLP*
128 N. Fair Oaks Ave.
Pasadena, CA 91103
tel. (626) 585-9600
fax (626) 577-7079
cpanuco@hadsellstormer.com*
www.hadsellstormer.com*

*Please note new firm name, my new email address, and new firm website.
This message is intended only for the addressee and may contain attorney client or attorney work product protected information.  If you have received this message in error, please contact the sender immediately and delete the message.

2

Exhibit 5
Page 41

## Cindy Panuco

| | |
|---|---|
| **From:** | Rena Shahandeh <rena.shahandeh@lacity.org> |
| **Sent:** | Thursday, August 21, 2014 11:55 AM |
| **To:** | Cindy Panuco |
| **Cc:** | Dan Stormer; Anne Richardson; oluorange@att.net; Mohammad Tajsar |
| **Subject:** | Re: Rodriguez v. City of LA |

Cindy, I have no objection to meeting telephonically and would not make that objection to the court.  Is 3:00 on the 26th convenient for you?


--

Rena M. Shahandeh
Deputy City Attorney
Los Angeles City Attorney's Office
Police Litigation Unit
(213) 978-7047 (direct)
(213) 978-6900 (general)
(213) 978-8785 (fax)


On Thu, Aug 21, 2014 at 11:50 AM, Cindy Panuco <cpanuco@hadsellstormer.com> wrote:

Hi Rena:


I am not opposed to a telephonic meet and confer as long as Defendants will not object that we did not comply with the local rules in this respect. August 26 works for me, but I am not available from 11 am to 2 pm on that day. Any other time works at this point. Let me know what time works for you so we can confirm.


Thank you,

Cindy


**From:** Rena Shahandeh [mailto:rena.shahandeh@lacity.org]
**Sent:** Wednesday, August 20, 2014 4:46 PM
**To:** Cindy Panuco
**Cc:** Dan Stormer; Anne Richardson; oluorange@att.net; Mohammad Tajsar
**Subject:** Re: Rodriguez v. City of LA

1

Exhibit 6
Page 42

Hi Cindy,

I had to look back for your letter, and I just noticed it written below today's conference call dial-in.  I will certainly meet within the required time period and accommodate your vacation, but August 22 is cutting it close for me.  How is August 26?

Also, are you opposed to a telephonic meet and confer?

Thanks,

Rena

--

Rena M. Shahandeh

Deputy City Attorney

Los Angeles City Attorney's Office

Police Litigation Unit

(213) 978-7047 (direct)

(213) 978-6900 (general)

(213) 978-8785 (fax)

On Wed, Aug 20, 2014 at 4:30 PM, Cindy Panuco <cpanuco@hadsellstormer.com> wrote:

Rena:

2

Exhibit 6
Page 43

Please confirm that you are coming to our office on Friday 8/22 as I proposed on Monday when I sent you a request to meet and confer under 37-1, about the City's Discovery Responses. On Friday I am available from 10-2:30 to confer with you.

As you know, we have to meet and confer by August 28. However I am leaving the country and out of the office starting 8/28. My last day in the office is 8/27 so we will need to confer before then. If Friday no longer works, please propose dates/times before 8/27.

Thanks,

Cindy

Cindy Pánuco

Hadsell Stormer Richardson & Renick, LLP*

128 N. Fair Oaks Ave.

Pasadena, CA 91103

tel. (626) 585-9600

fax (626) 577-7079

cpanuco@hadsellstormer.com*

www.hadsellstormer.com*

*Please note new firm name, my new email address, and new firm website.*

This message is intended only for the addressee and may contain attorney client or attorney work product protected information. If you have received this message in error, please contact the sender immediately and delete the message.

```
*****************Confidentiality Notice ************************
This electronic message transmission contains information
```

3

Exhibit 6
Page 44

from the Office of the Los Angeles City Attorney, which may be confidential or protected
by the attorney-client privilege and/or the work product doctrine. If you are not the
intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited.  If you have
received this communication in error, please notify us immediately by e-mail and delete
the original message and any attachments without reading or saving in any manner.
*****************************************************************************


*****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected
by the attorney-client privilege and/or the work product doctrine. If you are not the
intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited.  If you have
received this communication in error, please notify us immediately by e-mail and delete
the original message and any attachments without reading or saving in any manner.
*****************************************************************************

Exhibit 6
Page 45

HADSELL
STORMER
RICHARDSON
& RENICK LLP

128 North Fair Oaks Avenue, Pasadena, California 91103
Tel: 626.585.9600 • Fax: 626.577.7079 • www.hadsellstormer.com

Cornelia Dai
Lincoln Ellis
Barbara Enloe Hadsell
Cindy Pánuco
Josh Piovia-Scott
Randy Renick
Anne Richardson
Mary Tanagho Ross
Dan Stormer
Mohammad Tajsar
of counsel
Traber & Voorhees

August 28, 2014

**VIA EMAIL AND U.S. MAIL**

Ms. Rena M. Shahandeh
Los Angeles City Attorneys
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012-4119
Email: rena.shahandeh@lacity.org

    Re: *Rodriguez, et al. v. City of Los Angeles, et al.*
       CV 11-1135 DMG (JEMx)

Dear Counsel:

   Pursuant to Cindy's email dated August 18, 2014, and our telephonic conference of counsel on Tuesday August 26, I am writing to further confer with you regarding 1) Defendant City of Los Angeles's Responses to Plaintiff Christian Rodriguez's First Set of Written Interrogatories, 2) Defendant Charles Beck's Responses to Plaintiff Christian Rodriguez's Request for Production of Documents Set Number One, and 3) Defendant Carmen Trutanich's Responses to Plaintiff Christian Rodriguez's Request for Production of Documents Set Number One.

   As an initial matter, this confirms my understanding that you agreed to produce a privilege log that will "describe the nature of the documents, communications, or tangible things not produced or disclosed" so that we may meaningfully assess your claims of privilege. You stated that you could produce this log within ten days of our call, or by September 5, 2014.

**A.** **Defendant City of Los Angeles's Responses to Plaintiff Christian Rodriguez's First Set of Written Interrogatories Nos. 1-3.**

   **Interrogatory No. 1:**

   This Interrogatory asks the City to "Please set forth 1) the number of total arrests made by THE CITY based only on violations of curfew provisions contained in THE INJUNCTIONS between October 15, 2007, through the date of your response to this interrogatory, and 2)

Exhibit 7
Page 46

***Hadsell Stormer Richardson & Renick, LLP***
*Ms. Rena M. Shahandeh*
*August 28, 2014*
*Page 2*

IDENTIFY each of the arrested persons."

When we spoke, you maintained your objection that this information was not relevant because 1) the arrest class was not certified, and second because it was 2) subject to work-product and attorney-client protections.

As we discussed, aside from the arrest class, this information is relevant to Plaintiffs' class-wide §52.1 claim. As you know, Plaintiffs have to show their rights were violated by "threats, intimidation, or coercion." Arrests constitute the required "threat, intimidation, or coercion" necessary to trigger liability under the Bane Act. *See Cole v. Doe*, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005) ("Use of law enforcement authority to effectuate a stop, detention (including use of handcuffs), and search can constitute interference by 'threat, intimidation, or coercion' if the officer lacks probable cause to initiate the stop, maintain the detention, and continue a search."). The number of arrests for violations of the curfew provisions is therefore relevant to demonstrate a class-wide threat to infringe our clients' constitutional rights-the same rights *Colonia Chiques* vindicated. This is true regardless of whether a subclass of arrestees has been certified.

As to your second point that this information is protected by either the work-product or attorney-client privileges, that objection is not well-taken in light of the fact that you have already disclosed most of the information this Interrogatory seeks in the Declaration of Bruce Monroe filed on April 27, 2012. In that Declaration, Mr. Monroe states: "I discovered there were 32 reports that described arrests for violation of a gang injunction curfew *alone* (not for violation of the curfew in the City Municipal Code) after February 1, 2008. Each of these 32 arrests reports indicates only one person was seized or arrested on that occasion." What this Interrogatory seeks is a narrow category of any other arrests dating back to October 15, 2007 through the present. The City has already relied on this information, and disclosed it to Plaintiffs and the Court through a public filing. This disclosure waived the protection. *See ASARCO, LLC v. Ams. Mining Corp.*, 2007 U.S. Dist. LEXIS 84604, 22 (D. Idaho Nov. 15, 2007) (holding that the work-product privilege is waived if the party has disclosed work product to an adversary); *see also In re Pacific Pictures Corp.* (9th Cir. 2012) 679 F.3d 1121, 1130; *In re Syncor ERISA Litig.*, 229 F.R.D. 636 645-46 (C.D. Cal. 2005).

Plaintiff is entitled to the information which underlies Mr. Monroe's statements to the court about how many persons have been arrested for the curfew violation alone since the *Colonia Chiques* ruling. By his own statements complying may only implicate as little as 32 records or persons and this also can not be said to be burdensome.

**Interrogatory No. 2:**

This Interrogatory asks the City to "Please IDENTIFY the DOCUMENTS and/or sources from which THE CITY determined the number of arrests YOU set forth in response to Interrogatory No. 1."

Exhibit 7
Page 47

**Hadsell Stormer Richardson & Renick, LLP**
Ms. Rena M. Shahandeh
August 28, 2014
Page 3

The same points raised above regarding to Interrogatory No. 1 apply here.

**Interrogatory No. 3:**

This Interrogatory asks THE CITY to "Please explain how THE CITY calculated the number of arrests identified in response to interrogatory No. 1."

The same points raised above regarding to Interrogatory No. 1 apply here.

If Defendant agrees to Supplement its Responses, it must do so under oath pursuant to FRCP 33(b)(3). Please let us know if after our call, and reviewing these authorities the City will supplement its Responses.

**B.     Defendant Carmen Trutanich's Responses to Plaintiff Christian Rodriguez's Request for Production of Documents Set Number One Nos. 1-20.**

Trutanich has refused to produce any documents except the biography of Trutanich printed from his law firm's website.

First, I'll clarify that Cindy confirmed that under Federal Rule of Procedure 26(g) all that is required for Responses to Requests for Production of Documents is "certification," not "verification" as is the case with Interrogatories under FRCP 33(b)(3). So we no longer maintain our objection that he must verify his Responses. Nonetheless, Trutanich's Responses and document production remain deficient in the following respects:

**Request for Production No. 2**

This Requests asks for "The complete contents of any file maintained by YOU regarding PLAINTIFFS."

Trutanich responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in a privilege log. (I understand you have indicated you will produce a log by September 5 and it will indicate whether any documents responsive to this Request are being withheld). He is also required to set for the reason he is unable to comply as to the non-privileged documents. Is it the case that he never maintained a file; it never existed, or his file been lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

**Request for Production No. 3**

This Request asks for "Every Document responsive to the October 30, 2013 Order of United States Magistrate Judge McDermott, that YOU produce all documents which set forth the reasons YOU did not instruct the LOS ANGELES POLICE DEPARTMENT to stop enforcing

Exhibit 7
Page 48

**Hadsell Stormer Richardson & Renick, LLP**
  Ms. Rena M. Shahandeh
  *August 28, 2014*
  *Page 4*

the curfew provisions of THE INJUNCTIONS."

This document demand is supported by the order of Judge McDermott as he held that, "Put simply, the District Court and the Plaintiffs are entitled to know, <u>and definitively so</u>, the City's reasons for continuing to enforce the curfew provisions of the gang injunctions after the decision in *Colonia Chiques*." (Dkt. No. 141 at p. 3) (emphasis in original). The Court further elaborates that these documents are highly relevant to the allegations in the Second Amended Complaint which alleges "knowing and intentional refusal to rectify a constitutional violation that Chief Beck and Trutanich had a mandatory duty to correct . . ." (Dkt. No. 141 at p. 3.) Indeed, the Court notes that, "the City will need to address Plaintiffs' contention that, because Chief Beck and Trutanich's personal liability turns on their reasons, or lack thereof, for not acting to stop enforcement of the City's illegal unconstitutional curfew provisions, they are entitled to their depositions." (Dkt. No. 141 at p. 4.) Last, the court directs "the court would like to know if the City has any relevant non-privileged emails regarding *Colonia Chiques* and the gang injunction curfews to or from Mr. Trutanich." (Dkt. No. 141 at p. 6.) To the extent Trutanich is withholding documents Responsive to this Request, we are compelled to seek compliance with the Court's order that these documents are highly relevant and must be produced. Any memos, emails, or documents he relied upon in his decision to continue to allow enforcement of the injunctions must be produced.

Trutanich also responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in a privilege log. (I understand you have indicated you will produce a log by September 5 and it will indicate whether any documents responsive to this Request are being withheld). He is also required to set for the reason he is unable to comply as to the non-privileged documents. Is it the case that he never maintained a file; it never existed, or his file been lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

**Request for Production No. 4**

This Request asks for "Every DOCUMENT responsive to the October 30, 2013 Order of United States Magistrate Judge McDermott, that YOU produce all documents which set forth the reasons YOUR office did not instruct the LOS ANGELES POLICE DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS"

The same comments and arguments I raise in support of Request for Production No. 3 apply here.

**Request for Production No. 5**

This Request asks for "Every DOCUMENT responsive to the October 30, 2013 Order of United States Judge McDermott, that YOU produce all "relevant non-privileged emails regarding *Colonia Chiques* and the gang injunction curfews to or from [YOU]."

Exhibit 7
Page 49

*Hadsell Stormer Richardson & Renick, LLP*
Ms. Rena M. Shahandeh
August 28, 2014
Page 5

The same comments and arguments I raise in support of Request for Production No. 3 apply here.

**Request for Production No. 6**

This Request asks for "Every DOCUMENT generated, maintained, or received by YOU REGARDING this lawsuit."

Trutanich responds that he will not comply on privilege grounds. I understand you have indicated you will produce a log by September 5 and it will indicate whether any documents responsive to this Request are being withheld.

**Request for Production No. 7**

This Request asks for "Every DOCUMENT generated, maintained or received by YOU REGARDING how YOU are informed when a lawsuit has been filed which personally names YOU as a defendant.

Trutanich responds that he will not comply because he believes these documents are immaterial to any issue in this case. As we discussed with you on our telephone call, this information is relevant because as Judge McDermott points out, "the City continued to enforce the curfew provisions even after Plaintiffs filed this suit in February 2011," and the District Court and Plaintiffs are entitled to know why. (Dkt. No. 141 at p.3.)

On our call, we also agreed to narrow this Request to only seek documents to show how and when Trutanich learned of this lawsuit, as opposed to how he was informed of lawsuits while he was employed as the City Attorney. Please let us know whether you will agree to produce documents responsive to this more narrow request, and in light of the Judge's Order.

**Request for Production No. 8**

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTION."

Trutanich responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in the privilege log you will produce by September 5. As I understand, the log will indicate whether any documents responsive to this Request are being withheld. He is also required to set for the reason he is unable to locate the non-privileged documents. Is it the case that he never maintained these documents; they never existed, or they lost or destroyed? This information must be set forth in his Response. *See*

Exhibit 7
Page 50

**Hadsell Stormer Richardson & Renick, LLP**
Ms. Rena M. Shahandeh
August 28, 2014
Page 6

*Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

### Request for Production No. 9

This Request asks for "Every DOCUMENT generated, maintained or received by the CITY OF LOS ANGELES on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTION."

The same comments and arguments I raise in support of Request for Production No. 8 apply here.

### Request for Production No. 10

This Request asks for, "Every DOCUMENT generated, maintained or received by YOUR office on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTION."

The same comments and arguments I raise in support of Request for Production No. 8 apply here.

### Request for Production No. 11

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES."

The same comments and arguments I raise in support of Request for Production No. 8 apply here.

### Request for Production No. 12

This Request asks for, "Every DOCUMENT REGARDING Plaintiff Alberto Cazarez."

Trutanich's principal objection here is that he "will not produce any privileged documents." His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in the privilege log you will produce by September 5. As I understand, the log will indicate whether any documents responsive to this Request are being withheld.

Exhibit 7
Page 51

**Hadsell Stormer Richardson & Renick, LLP**
Ms. Rena M. Shahandeh
August 28, 2014
Page 7

**Request for Production No. 13**

This Request asks for "Every DOCUMENT REGARDING Plaintiff Christian Rodriguez."

The same comments and arguments I raise in support of Request for Production No. 12 apply here.

**Request for Production No. 14**

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Anne Tremblay about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES."

A principal objection here, is that the request seeks privileged documents. Again, to the extent that Trutanich is withholding privileged documents responsive to this Request, we expect that to be set forth in the privilege log.

Further, Trutnich responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in the privilege log you will produce by September 5. As I understand, the log will indicate whether any documents responsive to this Request are being withheld. He is also required to set for the reason he is unable to locate the non-privileged documents. Is it the case that he never maintained these documents; they never existed, or they lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

Here too, these documents are highly relevant because in the City's Reply to Plaintiffs' Opposition to the motion for a protective order, the City argues that Trutanich delegated his authority over the gang injunctions. (Dkt. No. 139 at 2). Communications with Ms. Tremblay regarding that delegation are highly relevant to prove or disprove his individual liability.

**Request for Production No. 15**

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the mayor of the CITY about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY."

The same comments and arguments I raise in support of Request for Production No. 14

Exhibit 7
Page 52

**Hadsell Stormer Richardson & Renick, LLP**
*Ms. Rena M. Shahandeh*
*August 28, 2014*
*Page 8*

apply here. Additionally, Trutanich claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

### Request for Production No. 16

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the Chief Charles Beck about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY."

The same comments and arguments I raise in support of Request for Production No. 14 apply here. Additionally, Trutanich claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

### Request for Production No. 17

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in YOUR office about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY."

The same comments and arguments I raise in support of Request for Production No. 14 apply here. Additionally, Trutanich claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

### Request for Production No. 18

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in the LOS ANGELES POLICE DEPARTMENT about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY."

The same comments and arguments I raise in support of Request for Production No. 14 apply here. Additionally, Trutanich claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

Exhibit 7
Page 53

**Hadsell Stormer Richardson & Renick, LLP**
Ms. Rena M. Shahandeh
August 28, 2014
Page 9

### Request for Production No. 19

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS to Anne Tremblay."

The same comments and arguments I raise in support of Request for Production No. 14 apply here. Additionally, Trutanich claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

### Request for Production No. 20

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS to any person."

The same comments and arguments I raise in support of Request for Production No. 14 apply here. Additionally, Trutanich claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

C.    **Defendant Charles Beck's Request for Production of Documents Set Number One Nos. 1-22.**

Just as with Trutanich's Responses, we no longer maintain our objection that Beck must verify his Responses. Nonetheless, Beck's Responses and document production remain deficient in the following respects:

### Request for Production No. 2

This Requests asks for "The complete contents of any file maintained by YOU regarding PLAINTIFFS."

Beck responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in a privilege log.  (I understand you have indicated you will produce a log by September 5 and it will indicate whether any documents responsive to this Request are being withheld). He is also required to set for the reason he is unable to comply as to the non-privileged documents. Is it the case that he never maintained a

Exhibit 7
Page 54

**Hadsell Stormer Richardson & Renick, LLP**
*Ms. Rena M. Shahandeh*
*August 28, 2014*
*Page 10*

file; it never existed, or his file been lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

### Request for Production No. 3

This Request asks for "Every Document responsive to the October 30, 2013 Order of United States Magistrate Judge McDermott, that YOU produce all documents which set forth the reasons YOU did not instruct the LOS ANGELES POLICE DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS."

This document demand is supported by the order of Judge McDermott as he held that, "Put simply, the District Court and the Plaintiffs are entitled to know, <u>and definitively so</u>, the City's reasons for continuing to enforce the curfew provisions of the gang injunctions after the decision in *Colonia Chiques*." (Dkt. No. 141 at p. 3) (emphasis in original). The Court further elaborates that these documents are highly relevant to the allegations in the Second Amended Complaint which alleges "knowing and intentional refusal to rectify a constitutional violation that Chief Beck and  Trutanich had a mandatory duty to correct . . ." (Dkt. No. 141 at p. 3.) Indeed, the Court notes that, "the City will need to address Plaintiffs' contention that, because Chief Beck and Trutanich's personal liability turns on their reasons, or lack thereof, for not acting to stop enforcement of the City's illegal unconstitutional curfew provisions, they are entitled to their depositions." (Dkt. No. 141 at p. 4.) Last, the court directs "the court would like to know if Chief Beck has any relevant non-privileged emails regarding *Colonia Chiques* and the gang injunction curfews." (Dkt. No. 141 at p. 5.) To the extent Beck is withholding documents Responsive to this Request, we are compelled to seek compliance with the Court's order that these documents are highly relevant and must be produced. Any memos, emails, or documents he relied upon in his decision to continue to allow enforcement of the injunctions must be produced.

Beck also responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in a privilege log. (I understand you have indicated you will produce a log by September 5 and it will indicate whether any documents responsive to this Request are being withheld). He is also required to set for the reason he is unable to comply as to the non-privileged documents. Is it the case that he never maintained a file; it never existed, or his file been lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

### Request for Production No. 4

This Request asks for "Every DOCUMENT responsive to the October 30, 2013 Order of United States Magistrate Judge McDermott, that YOU produce all documents which set forth the reasons YOUR office did not instruct the LOS ANGELES POLICE DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS"

The same comments and arguments I raise in support of Request for Production No. 3

Exhibit 7
Page 55

**Hadsell Stormer Richardson & Renick, LLP**
  Ms. Rena M. Shahandeh
  *August 28, 2014*
  *Page 11*

apply here.

### Request for Production No. 5

This Request asks for "Every DOCUMENT responsive to the October 30, 2013 Order of United States Judge McDermott, that YOU produce all "relevant non-privileged emails regarding *Colonia Chiques* and the gang injunction curfews."

The same comments and arguments I raise in support of Request for Production No. 3 apply here.

### Request for Production No. 6

This Request asks for "Every DOCUMENT in YOUR possession, REGARDING YOUR authority to forbid YOUR officers from enforcing the curfew provisions of THE INJUNCTIONS, from October 15, 2007 to the present."

Beck responds that he is unable to comply without clarification. This objection is not well taken. Again, Judge McDermott's order clearly explains that if Beck wants to avoid individual liability and his deposition, he must produce documents. If he contends he had no authority to stop his officers from enforcing the curfews he must produce the documents that prove that. Likewise, if he had the authority to issue that order and did not do it, Plaintiff is entitled to those documents also.

We hope that with this clarification he will comply with this request.

### Request for Production No. 7

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTION."

Beck responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in the privilege log you will produce by September 5. As I understand, the log will indicate whether any documents responsive to this Request are being withheld. He is also required to set for the reason he is unable to locate the non-privileged documents. Is it the case that he never maintained these documents; they never existed, or they lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

Exhibit 7
Page 56

**Hadsell Stormer Richardson & Renick, LLP**
Ms. Rena M. Shahandeh
August 28, 2014
Page 12

### Request for Production No. 8

This Request asks for "Every DOCUMENT generated, maintained or received by the CITY OF LOS ANGELES on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTION."

The same comments and arguments I raise in support of Request for Production No. 7 apply here.

### Request for Production No. 9

This Request asks for, "Every DOCUMENT generated, maintained or received by YOUR office on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTION."

The same comments and arguments I raise in support of Request for Production No. 7 apply here.

### Request for Production No. 10

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES."

The same comments and arguments I raise in support of Request for Production No. 7 apply here.

### Request for Production No. 11

This Request asks for, "Every DOCUMENT REGARDING Plaintiff Alberto Cazarez."

Beck's principal objection here is that he "will not produce any privileged documents." His Response must set forth whether he is withholding any privileged documents, and those withheld documents must be set forth in the privilege log you will produce by September 5. As I understand, the log will indicate whether any documents responsive to this Request are being withheld.

Exhibit 7
Page 57

***Hadsell Stormer Richardson & Renick, LLP***
*Ms. Rena M. Shahandeh*
*August 28, 2014*
*Page 13*

### Request for Production No. 12

This Request asks for "Every DOCUMENT REGARDING Plaintiff Christian Rodriguez."

The same comments and arguments I raise in support of Request for Production No. 11 apply here.

### Request for Production No. 13

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Anne Tremblay about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES."

A principal objection here, is that the request seeks privileged documents and Beck asserts he "will not produce any such privileged documents." Again, to the extent that Beck is withholding privileged documents responsive to this Request, we expect that to be set forth in the privilege log.

Further, Beck responds that he is unable to locate and responsive non-privileged documents in his possession. He is also required to set for the reason he is unable to locate the non-privileged documents. Is it the case that he never maintained these documents; they never existed, or they lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

Here too, these documents are highly relevant because in the City's Reply to Plaintiffs' Opposition to the motion for a protective order, the City argues that Beck has "no personal factual information of any issue of material fact pertinent to this action." (Dkt. No. 129 at p. 6.) Communications with Ms. Tremblay are highly relevant to prove or disprove his individual liability.

### Request for Production No. 14

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the mayor of the CITY about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY."

The same comments and arguments I raise in support of Request for Production No. 13 apply here. Additionally, Beck claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal

Exhibit 7
Page 58

**Hadsell Stormer Richardson & Renick, LLP**
*Ms. Rena M. Shahandeh*
*August 28, 2014*
*Page 14*

liability.

If he has found no responsive documents, he must explain why. Were they lost, destroyed, never existed?

**Request for Production No. 15**

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with defendant Carmen Trutanich about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY."

The same comments and arguments I raise in support of Request for Production No. 13 apply here. Additionally, Beck claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

If he has found no responsive documents, he must explain why. Were they lost, destroyed, never existed?

**Request for Production No. 16**

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Assistant Chief Earl Paysinger about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES."

The same comments and arguments I raise in support of Request for Production No. 13 apply here. Additionally, Beck claims that the policies of the City involved delegation of his authority over gang injunctions, likely to Paysinger, and as such he must produce the documents which disprove Beck's personal liability.

If he has found no responsive documents, he must explain why. Were they lost, destroyed, never existed?

**Request for Production No. 17**

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with William J. Hart about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY."

Exhibit 7
Page 59

***Hadsell Stormer Richardson & Renick, LLP***
*Ms. Rena M. Shahandeh*
*August 28, 2014*
*Page 15*

The same comments and arguments I raise in support of Request for Production No. 13 apply here. Additionally, Beck claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

If he has found no responsive documents, he must explain why. Were they lost, destroyed, never existed?

**Request for Production No. 18**

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in the LOS ANGELES POLICE DEPARTMENT about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY."

The same comments and arguments I raise in support of Request for Production No. 13 apply here. Additionally, Trutanich claims that the policies of the City involved delegation of his authority over gang injunctions, and as such he must show proof of that to disprove his personal liability.

If he has found no responsive documents, he must explain why. Were they lost, destroyed, never existed?

**Request for Production No. 19**

This Request asks for "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Assitant Chief Earl Paysinger REGARDING Operations Order No. 3 dated August 2, 2012, and which subject line reads: Modification of Enforcement of Four Provisions Contained in Permanent Gang Injunctions."

Beck has not asserted that the communications are privileged. He responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth the reason he is unable to comply as to these non-privileged documents. Is it the case that he never communicated with Paysinger on this topic, or that these communications have been lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

**Request for Production No. 20**

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in the LOS ANGELES POLICE

Exhibit 7
Page 60

*Hadsell Stormer Richardson & Renick, LLP*
*Ms. Rena M. Shahandeh*
*August 28, 2014*
*Page 16*

DEPARTMENT REGARDING Operations Order No.3 dated August 2, 2012, and which subject line reads: Modification of Enforcement of Four Provisions Contained in Permanent Gang Injunctions."

Beck has not asserted that the communications are privileged. He responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth the reason he is unable to comply as to these non-privileged documents. Is it the case that he never communicated with Paysinger on this topic, or that these communications have been lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

**Request for Production No. 21**

This Request asks for, "Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS to any person."

Beck has not asserted that the communications are privileged. He responds that he is unable to locate and responsive non-privileged documents in his possession. His Response must set forth the reason he is unable to comply as to these non-privileged documents. Is it the case that he never communicated with Paysinger on this topic, or that these communications have been lost or destroyed? This information must be set forth in his Response. *See Searock v. Stripling*, 736 F. 2d 650 (11th Cir. 1984).

These documents are relevant to prove or disprove his knowledge and individual liability.

**Request for Production No. 22**

This Request asks for Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, REGARDING the CITY'S policies and procedures for informing YOU when a lawsuit has been filed which personally names YOU."

Beck responds that there is no good cause for this Request and that he will not comply because he believes these documents are immaterial to any issue in this case. As we discussed with you on our telephone call, this information is relevant because as Judge McDermott points out, "the City continued to enforce the curfew provisions even after Plaintiffs filed this suit in February 2011," and the District Court and Plaintiffs are entitled to know why. (Dkt. No. 141 at p.3.)

On our call, we also agreed to narrow this Request to only seek documents to show how and when Beck learned of *this* lawsuit, as opposed to how he is informed of all lawsuits against

Exhibit 7
Page 61

*Hadsell Stormer Richardson & Renick, LLP*
*Ms. Rena M. Shahandeh*
*August 28, 2014*
*Page 17*

him. Please let us know whether you will agree to produce documents responsive to this more narrow request, and in light of the Judge's Order.

Very truly yours,

Mohammad Tajsar, Esq.

cc:    Dan Stormer
      Anne Richardson
      Cindy Pánuco
      Olu Orange (via email only)
      Janine Jeffery (via email only)
      Kevin Gilbert (via email only)

Exhibit 7
Page 62

**Cindy Panuco**

| | |
|---|---|
| **From:** | Cindy Panuco |
| **Sent:** | Wednesday, September 17, 2014 6:07 PM |
| **To:** | rena.shahandeh@lacity.org |
| **Cc:** | Dan Stormer; Anne Richardson (arichardson@hadsellstormer.com); oluorange@att.net; Mohammad Tajsar |
| **Subject:** | FW: Rodriguez, et al. v. City of Los Angeles, et al. |
| **Attachments:** | OppCounsel.017.mo.08-28-14.pdf |

Rena:

I am writing regarding the discovery responses that you conferred about with Mohammad and me by phone on August 26, 2014, and which Mohammad wrote you about on August 28, 2014.

As of today, September 17, 2014, we have not received the privilege log you agreed to produce by September 5, and none of my co-counsel received any requests for a continuance on this, nor did they agree to one while I was gone.

You also have not responded to any of the authorities cited in the letter Mohammad sent you on August 28, or indicated whether you would agree to supplement any of the Interrogatory Responses, or the document demands.

By the end of the day tomorrow, we will serve you with our portion of the Joint Stipulation pursuant to Local Rule 37-2.2 to compel further responses to the Interrogatories, the production of the requested documents, compliance with Judge McDermott's order regarding the production of documents, and for the depositions of Chief Beck and Mr. Trutanich in light of the failure to produce the documents ordered by the Judge, or a privilege log. We will expect your portion within the deadline set forth by the local rules.

Cindy

**From:** Jessica Valdenegro
**Sent:** Thursday, August 28, 2014 4:58 PM
**To:** rena.shahandeh@lacity.org
**Cc:** Dan Stormer; Anne Richardson; Cindy Panuco; Mohammad Tajsar; oluorange@att.net; Jjeffery@reilyjeffery.com; cbrente@atty.lacity.org; bruce.monroe@lacity.org; kgilbert@meyersnave.com; kmclaughlin@meyersnave.com; lyoo@meyers.nave.com
**Subject:** Rodriguez, et al. v. City of Los Angeles, et al.

Ms. Shahandeh,

Please find attached correspondence from Mohammad Tajsar in regards to the above referenced matter. A copy of the attached has been sent to your attention via mail.

Regards,
*Jessica Valdenegro*
Legal Assistant
*Hadsell Stormer Richardson & Renick LLP*
128 N. Fair Oaks Ave.
Pasadena, CA 91103
Tel: (626) 585-9600
Fax: (626) 577-7079
Email: jessicav@hadsellstormer.com

1

Exhibit 8
Page 63

2

Exhibit 8
Page 64

**DECLARATION OF ALBERTO CAZAREZ**

I, ALBERTO CAZAREZ declare and state as follows:

1.       I submit this declaration in support of Plaintiffs' Motion for Class Action Certification. The following information is within my own personal knowledge. If I am called, I could and would competently testify to the truth of the matters stated herein.

2.       I am 20 years old. I live in Mar Vista Gardens Housing Projects. I graduated from Central High School where I obtained my high school diploma in June 2011. I have also taken classes at West Los Angeles College. Attached hereto as Exhibit 1 is a copy of a press release that was published about me on the Housing Authority's Website regarding a scholarship I received to attend West Los Angeles College. I now work at a non-profit organization which organizes mentors to provide story-telling to at-risk youth. My position is Student and Community Organizer. I have been doing this work since January 2012.

3.       On June 19, 2009, it was near midnight and my friend Christian Rodriguez and I were walking home from visitting the homes of our girlfriends who live in the Mar Vista Gardens Housing Projects. When we were walking home, I heard police officers yell suddenly, "Police! Stop, drop to the ground." Both Christian and I stopped and dropped to the ground. Officer Angel Gomez and another officer of the Los Angeles Police Department reached me, and handcuffed us, and took us to the front of the projects. They put me in the back of the police car. I was about 17 years old when I was arrested. At that time, I had not been served with a gang injunction. The police took me to the front of the Projects and gave me a ticket.

4.       Over the next six months or so, I appeared in court on at least one occasion regarding charges that were brought against me. I was prosecuted by the City of Los Angeles for violating a curfew provision of the Municipal Code.

5.       On December 20, 2009, I was at the local Recreation Center. On my way in to the recreation center, I saw two of my female friends and classmates standing outside of the Center so I stopped to talk to them. While I was talking to my friends, I was approached by an officer with the Los Angeles Police Department named Officer Switzer, and was given a

**DECLARATION OF ALBERTO CAZAREZ**

- 1

Exhibit 9
Page 65

document by the officer which was titled "Culver City Boys Gang Injunction." Attached hereto as Exhibit 2, is a true and correct copy of the gang injunction with which I was served on December 20, 2009.

6.      When he served me with the injunction, Officer Switzer pulled me aside and said, "That document means you can't hang out with this guy right here," and he pointed at my friend Christian Rodríguez who was standing a few feet away talking to another female classmate of ours. I didn't take the documents from him, so Officer Switzer threw the injunction documents at me. I have never been a member of any gang, so never understood why I got an injunction.

7.      When I am out in my neighborhood, or going to work, I am constantly aware that I am subject to the terms of the Culver City Boys gang injunction and that I will be arrested if I violate any of the terms of the injunction. I live in the Projects and the gang injunction Safety Zone is in the Projects. The minute I step out of the front door to my home, I walk into the safety zone. I don't want to be arrested or stopped again by LAPD, or have any arrests or jail time as part of my criminal record, so I try not to go outside after 10:00 p.m. or before sunrise.

8.      I have met with the lawyers working on this class action lawsuit to help others who like me, unjustly live in constant fear of doing something that might be viewed by the LAPD as a violation of the curfew provision of an injunction, and cause them to be arrested, prosecuted, and jailed. I have agreed to serve as a representative of all others who have also been served with an injunction like the one I was served with, and who have been arrested for violating any provisions of the injunctions.

9.      I regularly receive updates on the status of the lawsuit from the lawyers: Olu Orange, Esq. Anne Richardson, Esq., and Cindy Pánuco, Esq. I understand that by agreeing to serve as a class representative of others served with and arrested for violations of the injunctions, I have special responsibilities in helping with this case. I have made, and will continue to make myself available for whatever is necessary in this case, including a deposition and trial.

**DECLARATION OF ALBERTO CAZAREZ**

- 2

Exhibit 9
Page 66

1    10.    I am not aware of any conflict with any other member of the proposed class in this

2    case.

3        I declare under penalty of perjury under the laws of the United States that the foregoing is

4    true and correct. Executed on March 15, 2012, in Pasadena, California.

6    A Cazarez Jr.  3/15/12

7    ALBERTO CAZAREZ

**DECLARATION OF ALBERTO CAZAREZ**

-3

Exhibit 9
Page 67

Cazarez Declaration

# Exh. 1

Exhibit 9
Page 68

Central High School Seniors Receive AHMA Scholarship! - 30-Apr-10 p...                    http://www.hacla.org/en/rel/718/



**Central High School Seniors Receive AHMA Scholarship!**

Christian Rodriguez and Alberto Cazarez, Jr from Mar Vista Gardens' Central High School are the recipients of AHMA Foundation scholarship.

"All of the hard work, resiliency, brilliance that comes through is paying off. I'm glad for them to be able to experience some of the success that I know they are capable of." said Vitaly, Central High School teacher.

Rodriguez is a Graduating Senior at Central High School who is also taking classes at West Los Angeles College. He says he was inspired to go to college by his older sister who is a student at Pasadena City College.

Alberto Cazarez, Jr. is an 18 year old junior (11th Grade) who is already taking classes at West Los Angeles Junior College. He is a first generation college student with aspirations of studying Political Science, and ultimately attending to Law School.

Cazarez and Rodriquez were awarded a $750.00 scholarship from the AMHA Foundation to be used toward their college expenses. Alberto says he's going to use the money to purchase books. "Vitaly inspired me, just the whole community inspires me." says Rodriquez. They in turn, inspire other youth to follow their educational dreams by providing good example. This year more students are applying for the same scholarship at Central High School.

"For me nothing that they accomplish is a surprise. It's a manifestation of everything they have been working towards." said Vitaly.

The Affordable Housing Management Association, Pacific Southwest (AHMA-PSW) is a non-profit organization composed of affordable housing providers, including agents, owners, property managers and related professionals who offer management and products or services to the affordable housing industry - low and moderate income families, seniors and persons with disabilities. This was the the twenty-sixth year of providing assistance in continuing education to deserving residents of public housing complexes.

*Photo: Central High School teacher Vitaly (in the middle) with students Alberto Cazarez (right) and Christian Rodriquez (left).*

1 of 2

Exhibit 9
Page 69

Central High School Seniors Receive AHMA Scholarship! - 30-Apr-10 p...          http://www.hacla.org/en/rel/718/



Source: HACLA Media Relations
Website: N/A

👍 Like    Be the first of your friends to like this.

Bookmark this page (CTRL-D) • del.icio.us • digg • facebook
E-mail this release to a friend (requires login).

Related Documents:

Other Recent Releases:
- Jordan Downs Redevelopment Highlighted at the ULI TOD Summit  4-Jun-10
- Jordan Downs Redevelopment Project Wins SCAG Award  13-May-10
- Residents of Estrada Courts celebrate Cinco De Mayo  12-May-10
- Mothers Unite for Change  12-May-10
- HACLA Youth Train to be Leaders  5-May-10
- Central High School Seniors Receive AHMA Scholarship!  30-Apr-10
- Housing Authority Hosts 16th Annual Spelling Bee Competition  19-Apr-10
- HACLA Commissioner Participates in Greenlining Institute's 17th Annual Economic Summit  14-Apr-10
- City Audit Finds HACLA Acted Appropriately in Denying Section 8 Vouchers to Developer  12-Apr-10
- HACLA COO Speaks at Groundbreaking for Apartments for Transition Aged Youth  9-Apr-10

Contact Us | Site Map | RSS | OPML | Search This Site | Home
Schipul Web Design | Tendenci Membership Management Software | Privacy

Exhibit 9
Page 70

Cazarez Declaration

Exh. 2

Exhibit 9
Page 71

```
 1   STEVE COOLEY
     DISTRICT ATTORNEY
 2   By: JONLYN CALLAHAN (Bar No. 129236)
     Deputy District Attorney
 3   Hardcore Gang Division
     210 West Temple St., 17th Floor
 4   Los Angeles, California  90012
     Telephone:  (213) 974-3903
 5
     JAMES K. HAHN, CITY ATTORNEY
 6   222 S. Hill Street, 6th Floor
     Los Angeles, California  90012
 7   Telephone:  (213) 847-0128

 8

 9   Attorney for Plaintiff, People of the State of California

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                 FOR THE COUNTY OF LOS ANGELES

13

14   PEOPLE OF THE STATE OF CALIFORNIA, )  CASE NO:  SC056980
                                        )
15                   Plaintiff,         )  ▬▬▬▬▬▬
                                        )
16            v.                        )  PERMANENT INJUNCTION
                                        )
17   CULVER CITY BOYS, an unincorporated)
     association, et al.                )
18                                      )
                        Defendants.     )
19   _____)

20

21        After considering the declarations, memorandum of points and

22   authorities, oral evidence, arguments of counsel and any other

23   evidence submitted and for good cause:

24        IT IS HEREBY ORDERED THAT JUDGMENT is entered in favor of

25   Plaintiff, People of the State of California, acting by and through

26   Steve Cooley, the District Attorney for Los Angeles County and

27   James Hahn, the City Attorney for Los Angeles and against

28                              1
```

[▬▬▬▬▬] PERMANENT INJUNCTION



Exhibit 9
Page 72

1    DEFENDANTS, ALEX ACUNA (FESTER), VICTOR AGUAYO (VIC DOG), JOSE LUIS

2    ALVARADO, RUBEN ARANGO (LIL SHARKY), BENJAMIN ARCHIBEQUE (BENJI),

3    JOSEPH BARRON (DRIFTER), ISRAEL BECERRA, OSWALDO BECERRA

4    (BECHO/OZ), DAVID BELTRAN (BROWNIE), NOE BELTRAN (LISTO/MONSTER),

5    HENRY BRAVO (HENNESEY/HEN-DOG), MARCOS CAMARILLO (TAVI), BRIAN

6    CISNEROS (LITTLE BRIAN), EDMUND CISNEROS (STRETCH), ANTHONY

7    COVARRUBIAS (PENGUIN), FRANCISCO DE LA TRINIDAD (CISCO), JOE DIAZ

8    (LAZY), MARIO ESCOBAR, REFUGIO ESCOBAR (CUCO), JULIAN ESPINOZA

9    (TITO), MARIO ESQUIVEL, JR, GILBERTO FABIAN (BETO), JESUS "JESSE"

10   GARCIA (LIL PSYCHO), ERIBERTO GONZALEZ (LIL CUCO), SAUL GONZALEZ

11   (LIL BOUNCER/TOKER), JEAN PAUL GRAMMATICO (JP), BENJAMIN GUERRERO

12   (PIRATE), JAIME GUERRERO (J-CAT/CAPONE), DAVID GUTIERREZ

13   (DOVERMAN), JOHN "JUAN" HARO (JASPER), KELLY HARO (LIL YOUNGSTER),

14   STEPHEN HARO (YOUNGSTER), JOSE JACOBO, JUAN CARLOS JACOBO (C-DOG),

15   VICTOR JACOBO (CREEPER), NOEL JAIME (NOE), ROBERT LARIOS (CHINO),

16   JOHNNY "JUAN" LEON (RATON/RACOON), MARIO LEON (NIGHT OWL), JOHN

17   LOVEJOY (JOHN-JOHN), RONALD MARESTEIN (RON BOY), SAL MARQUEZ

18   (GRIZZLEY), ROBERT MELGOZA (HUERO), JOHN MUNOZ (BOO-BOO), GUSTAVO

19   MURATAYA (GREEN EYES), MAURICIO OLMEDO (WICHO), FREDDIE PANIAGUA

20   (LIL CORNEJO), LEO PARRA, GUSTAVO PEREZ (LIL GUS), GUILLERMO

21   PLACENSIA (MEMO), ANDRES REGALADO (SMOKEY), JESUS "JESSE" RINCON

22   (LITTLE PSYCHO), MARTIN ROCHA, ROBERT RONQUILLO (LIL BETO/MC COY),

23   RICARDO SALAZAR (MALO), RUBEN SALAZAR (SCOOTER), PEDRO SANTANA

24   (CHUBBS), ANDRES VALENCIANA (BANDIT), GERARDO VALENCIANA, PEDRO

25   VALENCIANA (BOXER), HUGO VELIZ (CARTOON)AND THE CULVER CITY BOYS

26   GANG, and its members and all persons acting under, in concert

27   with, or for any one of them, and that the defendants named in this

28

2



Exhibit 9
Page 73

1  judgment are hereby enjoined and restrained from engaging in,

2  committing or performing directly or indirectly, any of the

3  following activities in the SAFETY ZONE bounded by Venice Boulevard

4  to the north, Jefferson Boulevard to the south, Centinela Avenue to

5  the west and Sepulveda Boulevard to the east (See "Exhibit 1").

6      A.   Standing, sitting, walking, driving, or otherwise

7  appearing anywhere in public view with one or more named Defendants

8  or known Culver City Boys Gang members, but not including when all

9  individuals reside within a dwelling unit as defined in L.A.M.C.

10  section 1203;

11      Provision "A" does not apply at the Mar Vista Family Center

12  located at 5070 and 5075 Slauson Avenue, Monday through Saturday,

13  8:00 a.m. to 10:00 p.m.; Culver/Slauson Park located at 5070

14  Slauson Avenue, Monday through Saturday 8:00 a.m. to 7:00 p.m.

15      Provision "A" also does not apply to any named Defendant or

16  Culver City Boys Gang member who is in a vehicle in transit on the

17  405 and 90 Freeways or at the Los Angeles Police Department,

18  Pacific Division, located at 12312 Culver Boulevard.

19      B.   Selling, possessing, or using, without a prescription, or

20  knowingly remaining in the presence of anyone possessing, selling,

21  or using, without a prescription, any controlled substance or

22  related paraphernalia, including but not limited to, rolling papers

23  and pipes used for illegal drug use;

24      C.   Blocking the free passage of any person or vehicle on any

25  street, walkway, sidewalk, driveway, alleyway, or other area of

26  public passage;

27      D.   Being present on the private property of others except

28

3

[ ████ ] PERMANENT INJUNCTION

Exhibit 9
Page 74

1    with 1) the prior written consent of the owner or person in lawful

2    possession of the property or 2) in the presence of and with the

3    voluntary consent of the owner or person in lawful possession of

4    the property;

5        E.    Being outside between the hours of 10:00 p.m. on any day

6    and sunrise of the following day, unless (1) going to/from a

7    legitimate meeting or entertainment activity, or (2) actively

8    engaged in some business, trade, profession or occupation which

9    requires such presence, or (3) involved in a legitimate emergency

10   situation that requires immediate attention;

11       F.    Acting as a lookout, whistling, yelling or otherwise to

12   warn another person of an approaching law enforcement officer, or

13   soliciting, encouraging or employing another to do so;

14       G.    Confronting, intimidating, harassing, or threatening any

15   person;

16       H.    Drinking any alcoholic beverage in any public place or

17   any place open to public view, or knowingly being within 10 feet of

18   any open container of alcohol in a public place or a place open to

19   public view;

20       I.    Possessing any gun, ammunition, or illegal weapon as

21   defined in Penal Code section 12020 in any public place or place

22   open to public view or knowingly remaining in the presence of

23   anyone who is in possession of such gun, ammunition or dangerous

24   weapon;

25       J.    Damaging or defacing any public property or private

26   property of another, or possessing any aerosol paint container, a

27   flat tip marker, or any other marking substance as defined by Penal

28

4

 [ ▮▮▮▮▮ ] PERMANENT INJUNCTION 

Exhibit 9
Page 75

1   Code section 594.2;

2       K.   Approaching or signaling as a pedestrian any moving

3   vehicle on any street unless legitimate emergency situation

4   requires;

5       L.   Possessing a pager;

6       M.   Being in any vehicle, other than a public bus, with any

7   other named Defendant or known Culver City Boys Gang member in the

8   area bordered by Lincoln Boulevard to the east, Pacific Avenue to

9   the west, Rose Avenue to the north and Venice Boulevard to

10  the south, unless a medical emergency exists (See "Exhibit 2").

11

12  DATE: *3-27-01*                    IT IS SO ORDERED

13

14                                     *Judith Abrams*

15                                     Judge of the Superior Court

16

17                                     Respectfully submitted by:

18                                     PEOPLE OF THE STATE OF CALIFORNIA
                                       Steve Cooley, District Attorney

19

20  DATE: *2-16-01*              By:   *Jonlyn Callahan*

21                                     JONLYN CALLAHAN
                                       Deputy District Attorney
22                                     Attorney for Plaintiff

23

24

25

26

27

28
                                   5
_____
                        PERMANENT INJUNCTION



Exhibit 9
Page 76

## DECLARATION OF CHRISTIAN RODRIGUEZ

I, CHRISTIAN RODRIGUEZ declare and state as follows:

     1.     I submit this declaration in support of Plaintiffs' Motion for Class Action Certification. The following information is within my own personal knowledge. If I am called, I could and would competently testify to the truth of the matters stated herein.

     2.     I am now 21 years old. I live in Mar Vista Gardens Housing Projects. I obtained my high school diploma from Central High School in June 2011. I have also taken classes at West Los Angeles College. Attached hereto as Exhibit 1 is a copy of a press release that was published about me, on the Housing Authority's Website regarding a scholarship I received to attend West Los Angeles College. I am currently employed at a local car rental company.

     3.     Sometime in 2005, I was walking home and had reached the front of the buildings often referred to as "the projects" where my home is. Officer Anthony Rodriguez stopped me, and told me, "I'm going to make sure you do life, just like your friend is doing life right now!" I had a friend who had just been arrested and was facing a lengthy sentence. He then gave me some documents and said, "You've been served," and just left. At the time, I was about 16 years old and still a student in high school. When I got these documents, I did not read them because I didn't know what they were.

     4.     On or around February 25, 2006, Officer Rodriguez stopped me and gave me some documents again. One of the documents I was given was titled "Culver City Boys Gang Injunction." Attached hereto as Exhibit 2, is a true and correct copy of the gang injunction with which I was served with on February 25, 2006.

     5.     I have never been in a gang. Within a few months of being served with the injunction, others in the neighborhood who were also served with the injunctions began to discuss that the injunctions meant we could not be out during certain hours. Through hearing from people in my neighborhood, I got the understanding that being served with the gang injunction, meant that I could not leave my home after 10:00 p.m. every night. If I left my home or was anywhere outdoors, my understanding was that I would be arrested and sent to jail. My

## DECLARATION OF CHRISTIAN RODRIGUEZ

- 1

Exhibit 10
Page 77

family and I worried that I'd be arrested for no reason other than I was outdoors later than I should be. On many occasions, I had to stay home because I did not want to risk being arrested.

6.    On June 19, 2009, it was near midnight and my friend Alberto Cazarez and I were walking home from visitting the homes of our girlfriends who live in the Mar Vista Gardens Housing Projects. When we were walking home, I heard police officers yell suddenly, "Police! Stop, drop to the ground." Both Alberto and I stopped and dropped to the ground. Officer Angel Gomez and another officer of the Los Angeles Police Department reached me, handcuffed us, and took us to the front of the projects. They put me in the back of the police car, and they took me to the station. I was suspected of having violated the curfew provision of the gang injunction, and I was sent to Los Angeles County Jail pending an arraignment. I was in jail over the whole weekend. I went to court on the following Wednesday, and met my attorney Olu Orange. After the arraignment, I was released on my own recognizance.

7.    Over the next year, I was in and out of court for appearances regarding charges that were brought against me. I was prosecuted by a City Attorney for the City of Los Angeles - Allan Nadir. I was prosecuted for violating the curfew provision of the gang injunction. The charges were eventually dismissed, about a year later, but I am still required to comply with the terms of the gang injunction which was served on me nearly six years ago.

8.    When I am out in my neighborhood, or going to work, I am constantly aware that I am still subject to the terms of the Culver City Boys gang injunction and that I could be arrested again if I violate any of the terms of the injunction. I live in the Projects and the gang injunction Safety Zone is in the Projects. The minute I step out of the front door to my home, I walk into the safety zone. On one occasion after 10 p.m., I walked to the parking lot in the projects to help my mom with groceries. The minute I stepped onto the parking lot, a police officer stopped me. My mom stepped out of the car to ask what was going on, and the police left me alone. I don't want to be arrested again, or have any more arrests or jail time as part of my criminal record, so I try not to go outside after 10:00 p.m. or before sunrise.

**DECLARATION OF CHRISTIAN RODRIGUEZ**

- 2 -

Exhibit 10
Page 78

9.      I have met several times with the lawyers working on this class action lawsuit to help others who like me, unjustly live in constant fear of doing something that might be viewed by the LAPD as a violation of some provision of an injunction, and cause them to be arrested, prosecuted, and jailed.  I have agreed to serve as a representative of all others who have also been served with an injunction like the one I was served with, and arrested for allegedly violating.

10.      I regularly receive updates on the status of the lawsuit from lawyers: Olu Orange, Esq. Anne Richardson, Esq., and Cindy Pánuco, Esq.  I understand that by agreeing to serve as a class representative of others served with injunctions, I have special responsibilities in helping with this case.  I have made, and will continue to make myself available for whatever is necessary in this case, including a deposition.

11.      I am not aware of any conflict with any other member of the proposed class in this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on March 15, 2012, in Los Angeles, California.

*Christian Rodriguez* 3/15/12

CHRISTIAN RODRIGUEZ

**DECLARATION OF CHRISTIAN RODRIGUEZ**

- 3 -

Exhibit 10
Page 79

Rodriguez Declaration

# Exh. 1

Exhibit 10
Page 80

Central High School Seniors Receive AHMA Scholarship! - 30-Apr-10 p...          http://www.hacla.org/en/rel/718/





The Housing Authority of
the City of Los Angeles
2600 Wilshire Blvd. | Los Angeles, CA 90057

| Releases | Articles | Calendar | |

Releases   View   Search   List

30-Apr-10 12:00 PM PDT                                    Print | More options ▾

# Central High School Seniors Receive AHMA Scholarship!



Christian Rodriguez and Alberto Cazarez, Jr from Mar Vista Gardens' Central High School are the recipients of AHMA Foundation scholarship.

"All of the hard work, resiliency, brilliance that comes through is paying off. I'm glad for them to be able to experience some of the success that I know they are capable of." said Vitaly, Central High School teacher.

Rodriguez is a Graduating Senior at Central High School who is also taking classes at West Los Angeles College. He says he was inspired to go to college by his older sister who is a student at Pasadena City College.

Alberto Cazarez, Jr. is an 18 year old junior (11th Grade) who is already taking classes at West Los Angeles Junior College. He is a first generation college student with aspirations of studying Political Science, and ultimately attending to Law School.

Cazarez and Rodriquez were awarded a $750.00 scholarship from the AMHA Foundation to be used toward their college expenses. Alberto says he's going to use the money to purchase books. "Vitaly inspired me, just the whole community inspires me." says Rodriquez. They in turn, inspire other youth to follow their educational dreams by providing good example. This year more students are applying for the same scholarship at Central High School.

"For me nothing that they accomplish is a surprise. It's a manifestation of everything they have been working towards." said Vitaly.

The Affordable Housing Management Association, Pacific Southwest (AHMA-PSW) is a non-profit organization composed of affordable housing providers, including agents, owners, property managers and related professionals who offer management and products or services to the affordable housing industry - low and moderate income families, seniors and persons with disabilities. This was the the twenty-sixth year of providing assistance in continuing education to deserving residents of public housing complexes.

*Photo: Central High School teacher Vitaly (in the middle) with students Alberto Cazarez (right) and Christian Rodriguez (left).*

ABOUT HACLA
PUBLIC HOUSING
SECTION 8 HOUSING
HOMELESS INITIATIVES
INTERNAL CONTROL/FRAUD
DOING BUSINESS WITH HACLA
ASSET MANAGEMENT
15% ORDINANCE
PUBLIC DOCUMENTS
JORDAN DOWNS
CALENDAR OF EVENTS
JOBS AT HACLA
JOBS AT LOMOD
NEWS/PUBLICATIONS
CONTACT US
HOME

[    ] Search
☑ only search HACLA.org

Contact HACLA
213-252-2500
2600 Wilshire Blvd.
Los Angeles, CA 90057

Department List ➧

1 of 2

Exhibit 10
Page 81

Central High School Seniors Receive AHMA Scholarship! - 30-Apr-10 p...    http://www.hacla.org/en/rel/718/



Exhibit 10
Page 82

Rodriguez Declaration

# Exh. 2

Exhibit 10
Page 83

```
 1 │ STEVE COOLEY
   │ DISTRICT ATTORNEY
 2 │ By: JONLYN CALLAHAN (Bar No. 129236)
   │ Deputy District Attorney
 3 │ Hardcore Gang Division
   │ 210 West Temple St., 17th Floor
 4 │ Los Angeles, California  90012
   │ Telephone:  (213) 974-3903
 5 │
   │ JAMES K. HAHN, CITY ATTORNEY
 6 │ 222 S. Hill Street, 6th Floor
   │ Los Angeles, California  90012
 7 │ Telephone:  (213) 847-0128
 8 │
 9 │ Attorney for Plaintiff, People of the State of California
10 │
11 │            SUPERIOR COURT OF THE STATE OF CALIFORNIA
12 │               FOR THE COUNTY OF LOS ANGELES
13 │
14 │ PEOPLE OF THE STATE OF CALIFORNIA, )  CASE NO:  SC056980
   │                                    )
15 │              Plaintiff,            )  ████████████
   │                                    )
16 │      v.                            )  PERMANENT INJUNCTION
   │                                    )
17 │ CULVER CITY BOYS, an unincorporated )
   │ association, et al.                )
18 │                                    )
   │              Defendants.           )
19 │ _____)
20 │
21 │      After considering the declarations, memorandum of points and
22 │ authorities, oral evidence, arguments of counsel and any other
23 │ evidence submitted and for good cause:
24 │      IT IS HEREBY ORDERED THAT JUDGMENT is entered in favor of
25 │ Plaintiff, People of the State of California, acting by and through
26 │ Steve Cooley, the District Attorney for Los Angeles County and
27 │ James Hahn, the City Attorney for Los Angeles and against
28 │                              1
```

 

[████████] PERMANENT INJUNCTION

Exhibit 10
Page 84

1  DEFENDANTS, ALEX ACUNA (FESTER), VICTOR AGUAYO (VIC DOG), JOSE LUIS

2  ALVARADO, RUBEN ARANGO (LIL SHARKY), BENJAMIN ARCHIBEQUE (BENJI),

3  JOSEPH   BARRON   (DRIFTER),   ISRAEL   BECERRA,   OSWALDO   BECERRA

4  (BECHO/OZ), DAVID BELTRAN (BROWNIE), NOE BELTRAN (LISTO/MONSTER),

5  HENRY BRAVO (HENNESEY/HEN-DOG), MARCOS CAMARILLO (TAVI), BRIAN

6  CISNEROS   (LITTLE   BRIAN),   EDMUND   CISNEROS   (STRETCH),   ANTHONY

7  COVARRUBIAS (PENGUIN), FRANCISCO DE LA TRINIDAD (CISCO), JOE DIAZ

8  (LAZY), MARIO ESCOBAR, REFUGIO ESCOBAR (CUCO), JULIAN ESPINOZA

9  (TITO), MARIO ESQUIVEL, JR, GILBERTO FABIAN (BETO), JESUS "JESSE"

10  GARCIA (LIL PSYCHO), ERIBERTO GONZALEZ (LIL CUCO), SAUL GONZALEZ

11  (LIL BOUNCER/TOKER), JEAN PAUL GRAMMATICO (JP), BENJAMIN GUERRERO

12  (PIRATE),   JAIME   GUERRERO   (J-CAT/CAPONE),   DAVID   GUTIERREZ

13  (DOVERMAN), JOHN "JUAN" HARO (JASPER), KELLY HARO (LIL YOUNGSTER),

14  STEPHEN HARO (YOUNGSTER), JOSE JACOBO, JUAN CARLOS JACOBO (C-DOG),

15  VICTOR JACOBO (CREEPER), NOEL JAIME (NOE), ROBERT LARIOS (CHINO),

16  JOHNNY "JUAN" LEON (RATON/RACOON), MARIO LEON (NIGHT OWL), JOHN

17  LOVEJOY (JOHN-JOHN), RONALD MARESTEIN (RON BOY), SAL MARQUEZ

18  (GRIZZLEY), ROBERT MELGOZA (HUERO), JOHN MUNOZ (BOO-BOO), GUSTAVO

19  MURATAYA (GREEN EYES), MAURICIO OLMEDO (WICHO), FREDDIE PANIAGUA

20  (LIL CORNEJO), LEO PARRA, GUSTAVO PEREZ (LIL GUS), GUILLERMO

21  PLACENSIA (MEMO), ANDRES REGALADO (SMOKEY), JESUS "JESSE" RINCON

22  (LITTLE PSYCHO), MARTIN ROCHA, ROBERT RONQUILLO (LIL BETO/MC COY),

23  RICARDO SALAZAR (MALO), RUBEN SALAZAR (SCOOTER), PEDRO SANTANA

24  (CHUBBS), ANDRES VALENCIANA (BANDIT), GERARDO VALENCIANA, PEDRO

25  VALENCIANA (BOXER), HUGO VELIZ (CARTOON) AND THE CULVER CITY BOYS

26  GANG, and its members and all persons acting under, in concert

27  with, or for any one of them, and that the defendants named in this

28

2

[~~~~~~~~~~] PERMANENT INJUNCTION

Exhibit 10
Page 85

1   judgment are hereby enjoined and restrained from engaging in,

2   committing or performing directly or indirectly, any of the

3   following activities in the SAFETY ZONE bounded by Venice Boulevard

4   to the north, Jefferson Boulevard to the south, Centinela Avenue to

5   the west and Sepulveda Boulevard to the east (See "Exhibit 1").

6       A.   Standing, sitting, walking, driving, or otherwise

7   appearing anywhere in public view with one or more named Defendants

8   or known Culver City Boys Gang members, but not including when all

9   individuals reside within a dwelling unit as defined in L.A.M.C.

10  section 1203;

11      Provision "A" does not apply at the Mar Vista Family Center

12  located at 5070 and 5075 Slauson Avenue, Monday through Saturday,

13  8:00 a.m. to 10:00 p.m.; Culver/Slauson Park located at 5070

14  Slauson Avenue, Monday through Saturday 8:00 a.m. to 7:00 p.m.

15      Provision "A" also does not apply to any named Defendant or

16  Culver City Boys Gang member who is in a vehicle in transit on the

17  405 and 90 Freeways or at the Los Angeles Police Department,

18  Pacific Division, located at 12312 Culver Boulevard.

19      B.   Selling, possessing, or using, without a prescription, or

20  knowingly remaining in the presence of anyone possessing, selling,

21  or using, without a prescription, any controlled substance or

22  related paraphernalia, including but not limited to, rolling papers

23  and pipes used for illegal drug use;

24      C.   Blocking the free passage of any person or vehicle on any

25  street, walkway, sidewalk, driveway, alleyway, or other area of

26  public passage;

27      D.   Being present on the private property of others except

28

3



─────────────── [▬▬▬▬▬] PERMANENT INJUNCTION

Exhibit 10
Page 86

with 1) the prior written consent of the owner or person in lawful possession of the property or 2) in the presence of and with the voluntary consent of the owner or person in lawful possession of the property;

E.    Being outside between the hours of 10:00 p.m. on any day and sunrise of the following day, unless (1) going to/from a legitimate meeting or entertainment activity, or (2) actively engaged in some business, trade, profession or occupation which requires such presence, or (3) involved in a legitimate emergency situation that requires immediate attention;

F.    Acting as a lookout, whistling, yelling or otherwise to warn another person of an approaching law enforcement officer, or soliciting, encouraging or employing another to do so;

G.    Confronting, intimidating, harassing, or threatening any person;

H.    Drinking any alcoholic beverage in any public place or any place open to public view, or knowingly being within 10 feet of any open container of alcohol in a public place or a place open to public view;

I.    Possessing any gun, ammunition, or illegal weapon as defined in Penal Code section 12020 in any public place or place open to public view or knowingly remaining in the presence of anyone who is in possession of such gun, ammunition or dangerous weapon;

J.    Damaging or defacing any public property or private property of another, or possessing any aerosol paint container, a flat tip marker, or any other marking substance as defined by Penal

4




1  Code section 594.2;

2      K.    Approaching or signaling as a pedestrian any moving

3  vehicle on any street unless legitimate emergency situation

4  requires;

5      L.    Possessing a pager;

6      M.    Being in any vehicle, other than a public bus, with any

7  other named Defendant or known Culver City Boys Gang member in the

8  area bordered by Lincoln Boulevard to the east, Pacific Avenue to

9  the west, Rose Avenue to the north and Venice Boulevard to

10  the south, unless a medical emergency exists (See "Exhibit 2").

11

12  DATE: _3-27-01_                    IT IS SO ORDERED

13

14

15                                    _Judith Abrams_
                                      Judge of the Superior Court

16

17                                    Respectfully submitted by:

18                                    PEOPLE OF THE STATE OF CALIFORNIA
                                      Steve Cooley, District Attorney

19

20  DATE: _2-16-01_              By: _Jonlyn Callahan_
                                      JONLYN CALLAHAN
21                                    Deputy District Attorney
                                      Attorney for Plaintiff

22

23

24

25

26

27

28                                      5

_____ PERMANENT INJUNCTION



Exhibit 10
Page 88

## DECLARATION OF ANGEL GOMEZ

I, Angel Gomez, declare as follows:

1.     I am employed by the Los Angeles Police Department (LAPD or the Department) as a Police Officer. If called as a witness, I would testify to the following facts based on my personal knowledge.

2.     I am assigned to the Pacific Division Gang Enforcement Detail and have qualified in court several times as an expert on the Culver City Boys gang. I am Pacific Division's primary gang officer for this gang. I spend quite a bit of time in Culver City Boys territory and have gotten to know many of the gang members. All of the statements in this paragraph were also true in 2009 at the time of the arrest at issue in this case.

3.     On June 20, 2009, my partner and I arrested Plaintiffs Christian Rodriguez and Alberto Cazarez. I recognized Rodriguez as an admitted Culver City Boys gang member that I had encountered on several prior occasions. We arrested Rodriguez for violation of the gang injunction with which he had previously been served, specifically for violation of subsections (a) association with other known members in public and (e) curfew. We did not arrest Cazarez for violating the gang injunction, but rather for violation of Los Angeles Municipal Code Section 45.03, subsection (a) (juvenile curfew). We issued a citation to Cazarez, then released him. I do not remember ever arresting anyone for violation of a gang injunction's curfew provision alone.

4.     I have reviewed the opinion written by the Superior Court Appellate Division in Case Number BR 048115 (LASC Case No. 9WA01997) regarding our detention of Rodriguez prior to this arrest. (See the City's concurrently filed Req. for Jud. Notice.) The facts stated in the BACKGROUND section of the opinion regarding my testimony in that case are accurate. I remember this arrest well because it was the last arrest I made for violation of a gang injunction and because I testified in court regarding the detention and arrest.

5.     The gang officers at Pacific Division maintain a log of all gang injunction arrests. The log appears to be accurate regarding the number and dates of arrests. That is,

1

Exhibit 11
Page 89

1  when the log showed that officers were making gang injunction arrests, I was hearing oral

2  reports from other officers confirming the arrests. During the time since the log shows that

3  the last gang injunction arrest occurred (February of 2011), I do not recall hearing about any

4  injunction arrests from the other officers. On April 19, 2012, I checked the gang injunction

5  log at Pacific Division. According to the log, no arrests for violation of the Culver City Boys

6  Gang Injunction have been made by Pacific Division gang officers since September 5, 2010,

7  and no arrests for any gang injunction have been made since February 10, 2011.

8

9       I declare under penalty of perjury under the laws of the United States of America that

10  the foregoing is true and correct. Executed April 20, 2012.

11

12                                    ANGEL GOMEZ

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    PALS\RODRGCER_OPP

Exhibit 11
Page 90

1           ## DECLARATION OF WILLIAM J. HART

2           I, William J. Hart, declare as follows:

3           1.      I am employed as a Captain by the Los Angeles Police Department (LAPD or

4    the Department) and am Commanding Officer of the Gang and Narcotics Division. If called

5    as a witness, I would testify to the following facts based on my personal knowledge.

6           2.      As part of the duties of my position, I am familiar with Department policies

7    regarding enforcement of laws concerning gang injunctions. Gang injunctions have

8    generally proven helpful in reducing gang-related crime. As a result, the Department has

9    decided to enforce the injunctions in all situations where they appear to be effective. It is the

10   policy of the Department to follow all laws governing gang injunctions as explained to the

11   Department by the City Attorney's Office.

12          3.      The Department has issued several written orders governing procedures related

13   to gang injunctions. However, none of the written orders discusses enforcement of the

14   injunctions' curfew provisions. General decisions regarding enforcement of injunction

15   curfews are made by supervisors at each of the Department's 21 geographic areas, and, as

16   is true with all arrests, specific decisions regarding whether to arrest a particular person for

17   violation of an injunction curfew are made by each of the thousands of LAPD officers who

18   are assigned to Gang Enforcement Details, patrol duty, or are otherwise in a position to

19   make arrests.

20

21          I declare under penalty of perjury under the laws of the United States of America that

22   the foregoing is true and correct. Executed April 2\, 2012.

23

24                                         WILLIAM J. HART

25

26

27

28

                                              1

Exhibit 12
Page 91

# DECLARATION OF ANNE C. TREMBLAY

I, ANNE C. TREMBLAY, declare as follows:

1.    I am employed as Assistant City Attorney and Supervisor of the Anti-Gang Section of the Office of the Los Angeles City Attorney.  If called as a witness, I would testify to the following based on my personal knowledge.

2.    The duties of my position have given me an extensive knowledge of civil gang injunctions, injunction curfew provisions, related policies of the City Attorney's Office, and the manner in which those policies and the law are communicated to members of the Los Angeles Police Department (LAPD). My knowledge on these subjects is also based in part on my prior positions as an assistant supervisor of the Anti-Gang Section, and before that, as an Orange County Deputy District Attorney who prosecuted gang-related crimes.

3.    Gang injunctions have proven to be a valuable tool in reducing gang-related crime. The City of Los Angeles (the City) has therefore decided to use this tool when it can lawfully do so in situations where it is likely to be effective.

4.    The City currently has 45 permanent gang injunctions covering 72 gangs, or approximately 18% of the estimated 400 gangs in the City.[1] Because the injunctions are designed to address the unique facts and problems caused by the specific targeted gang, the provisions of each are necessarily varied and different from those in other injunctions. The injunctions do not all contain the same provisions, nor do the same provisions have identical language.

5.    For example, of the 45 injunctions, 37 have some form of "Obey Curfew" provision, while the rest have no curfew provision. The language in the curfew provisions is not the same in every injunction, and the exceptions to the curfew also vary from injunction to injunction.

6.    At one time, nighttime curfew provisions became standard in many of the City's injunctions because the majority of the enjoined behaviors tend to happen at night.

---

[1] Each injunction is posted on the City Attorney web page at:
http://atty.lacity.org/our_office/criminaldivision/ganginjunctions/index.htm.

1

Exhibit 13
Page 92

Case 2:11-cv-01135-DMG -JEM   Document 49    Filed 04/27/12   Page 35 of 59   Page ID
#:1156

1  Most gang members are "creatures of the night," and the activities they engage in that
2  constitute a public nuisance often occur under cover of darkness.

3      7.    Each of the City's gang injunctions was supported by the law and the facts at
4  the time of its filing. However, after the filing of some of the injunctions, the published
5  opinion in *People ex rel. Totten v. Colonia Chiques* (*Colonia Chiques*), 156 Cal.App.4th 31,
6  67 Cal.Rptr.3d 70 (2007), which was filed in the Court of Appeal on October 15, 2007,
7  declared invalid certain parts of the curfew provision in a gang injunction for the City of
8  Oxnard that were similar to some of the curfew provision in some of the City's injunctions.
9  As a result of that case, our office immediately began to do the following regarding the
10 City's gang injunction curfew provisions.

11     8.    First, we changed the language of the curfew provision in the next injunction
12 case we filed–*People v. Rolling 40 Crips, et al.*, Los Angeles County Superior Court Case
13 Number BC 380229 (complaint filed 11/7/07; permanent injunction issued 4/10/08)–and
14 each one of the other nine injunctions filed after publication of *Colonia Chiques* that
15 contains a curfew provision in order to comply with that decision. For example, the curfew
16 provision in the Culver City Boys injunction (LASC Case No. SC 056980, issued 3/23/01)
17 reads as follows:

18     [Culver City Boys Gang members are enjoined from engaging in the following
19     activities in the "Safety Zone"] ... E.    Being outside between the hours of 10:00 p.m
20     and sunrise of the following day, unless (1) going to/from a legitimate meeting or
21     entertainment activity, or (2) actively engaged in some business, trade, profession or
22     occupation which requires such presence, or (3) involved in a legitimate emergency
23     situation that requires immediate attention ....

24 (Plaintiffs' App. of Evid. Vol. I, Decl. Of Anne Richardson, Ex. 18; see also City's Req. for
25 Jud. Notice.) By contrast, the injunction provision in the Rolling 40 Crips injunction, LASC
26 Case Number BC 380229 (complaint filed 11/5/07; permanent injunction issued 4/10/08)
27 reads as follows:
28 ///

2

Exhibit 13
Page 93

[Members of named gangs are enjoined from engaging in the following activities in the "Safety Zone"] ... e.   **Obey Curfew:** (1) If under the age of eighteen (18), being out of your residence in any public place or any place accessible to the public between 8:00 p.m. on any day and 5:00 a.m. of the immediately following day, unless (a) going to or from a lawful, non gang-related entertainment activity with prior parental or legal guardian written permission, or (b) engaged in a legal occupation that requires being out of your residence, or (c) responding reasonably to an emergency situation that requires your immediate attention. For purposes of this Judgment, you must have proof of parental permission or occupation and proof of any valid reason for being out of your residence on your person when stopped by any peace officer.

(2) If eighteen (18) years of age or older, being out of your residence in any public place or any place accessible to the public between 10:00 p.m. on any day and 5:00 a.m. of the immediately following day, unless (a) going to or from a lawful, non gang-related entertainment activity, or (b) engaged in a legal occupation that requires being out of your residence, or (c) responding reasonably to an emergency situation that requires your immediate attention. For purposes of this Judgment, you must have written proof of any valid reason for being out of your residence on your person at the time that you are stopped by any peace officer.

(3) For purposes of this Judgment, "accessible to the public" means any place to which the public or a substantial group of the public has access, including but not limited to any streets, highways, sidewalks, driveways, walkways, doorways of commercial establishments, front porches and yards, hallways of apartment buildings, and vacant lots;

(4) For purposes of this Judgment, "entertainment activity" means any activity occurring at places of entertainment open to the public and includes only events for which admission is charged, such as theaters, movies, or sporting events. Proof of payment for such entertainment activity (e.g. ticket stub) must be in your possession

3

Exhibit 13
Page 94

1    when confronted by a peace officer. Parties and other private, associational gatherings
2    do not qualify as entertainment activities.

3        (5) Proof of permission, occupation, entertainment, or emergency as an
4    exception to this subsection shall be an affirmative defense to a charge of a violation
5    of this section. The burden of producing evidence of the existence of such permission,
6    occupation, entertainment, or emergency shall be on the defendant.

7    (See City's Req. for Jud. Notice (RJN) Exs. F, G.) The Rolling 40 Crips curfew provision
8    appears to have been validated by the court's approval of a similar one in *People v. Reisig*,
9    182 Cal.App.4th 866, 889-91, 106 Cal.Rptr.3d 560 (2010).

10        9.    Second, our office began training the Deputy City Attorneys in the Anti-Gang
11   Section regarding the *Colonia Chiques* decision. We directed them to recommend to LAPD
12   officers that they not enforce the curfew provisions of pre-*Colonia Chiques* injunctions.

13        10.    Third, Deputy City Attorneys from the Anti-Gang Section began
14   recommending to LAPD officers that they not enforce the curfew provisions of pre-*Colonia
15   Chiques* injunctions. In areas where officers are enforcing injunctions for more than one
16   gang, and some gang members are covered by a pre-*Colonia Chiques* curfew and some by
17   a new curfew, we recommend to the officers that they not enforce any of the curfew
18   provisions. These recommendations are made during "Gang School" training provided by
19   the LAPD Training Division, with which Deputy City Attorneys from our office assist. All
20   LAPD gang and patrol officers are required to attend Gang School at some point. Gang
21   School lasts several days and has a gang injunction component. Deputies from our office
22   also provide special gang injunction training for gang officers and for patrol officers in an
23   attempt to ensure all officers receive the training.

24        11.    Our office has no direct control over LAPD or its officers; we can only
25   recommend that they take or refrain from taking certain actions. In my experience, most
26   officers tend to follow our recommendations most of the time. However, as with any change
27   in procedure, it takes time, sometimes considerable time for all of the thousands of LAPD
28   gang and patrol officers to learn about our office's recommendations regarding the changed

4

OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    PALS\RODRGCER_OPP

Exhibit 13
Page 95

1 procedure, discuss the change with their supervisors, and implement the change. Even after

2 all officers become aware of the new procedure, they are human and some forget or decide

3 for their own reasons not to follow our recommendations. Plus new officers are added.

4    12.   Fourth, our office greatly reduced its filing of criminal cases for violation of

5 pre-*Colonia Chiques* curfew provisions. Occasionally individual Deputy City Attorneys

6 have filed criminal charges for such curfew violations, usually in combination with other

7 charges, in the exercise of their independent filing discretion, but our office has generally

8 discouraged this in most situations.

9    13.   Fifth, we began the process of modifying our office's "Gang Injunction

10 Program Guidelines" (Program Guidelines), the formal expression of our office's policy and

11 procedure regarding gang injunctions. Because changes of this nature undergo multiple

12 levels of review, they generally take quite a bit of time to finalize. For example, in this case,

13 from the time the *Colonia Chiques* opinion became final and binding on February 1, 2008,

14 it took until July of 2009 before our office could issue revised Program Guidelines that

15 moved "Obey Curfew" provisions from the category of standard gang injunction provisions

16 (see Section C2) to the category of those requiring a supervisor's approval before inclusion

17 in new injunctions (see Section C3). In addition, we considered other, unrelated changes to

18 the Program Guidelines at that time.

19    14.   Attached as Exhibit 3 to the Declaration of Anne Richardson in support of

20 Plaintiffs Motion for Class Certification is a copy of the Program Guidelines, effective

21 November 2009, that are currently posted on the City Attorney's web page.[2] Attached as

22 Exhibit 1 is an accurate copy of the cover page and pages 6-7 of the July 2009 version of

23 the Program Guidelines. Attached as Exhibit 2 is an accurate copy of the cover page and

24 pages 5-7 of the April 2007 version of the Program Guidelines. Each of these versions was

25 posted on our office's web page shortly after its effective date.

26 ────────────

27    [2]These Guidelines express City Attorney policy regarding gang injunctions, and
   are posted, along with commentary in a lengthy appendix, on the City Attorney web page
28 at:   http://atty.lacity.org/stellent/groups/electedofficials/@atty_contributor/documents/
   contributor_web_content/lacityp_007163.pdf.

5

Exhibit 13
Page 96

15.     Sixth, in the fall of 2007, our office and LAPD began to permit persons who have been served with gang injunctions, but who no longer are or never were gang members, to file petitions for removed from enforcement of the injunction (removal petitions). Information regarding filing removal petitions, including blank petitions in both English and Spanish, has been available on our office's website since December of 2007.[3] To date our office has received only one removal petition from a person who was served with the Culver City Boys gang injunction, and that person is not one of the two named plaintiffs in this case. An accurate copy of the one-page English document entitled Gang Injunction Removal Petition Information is attached as Exhibit 3. Guidelines for content, receipt, and processing of removal petitions are detailed in sections G-J, pages 14-19 of the City Attorney Gang Injunction Program Guidelines. (Richardson Decl. Ex. 3.) In addition, our office began inserting "opt out" provisions in the injunctions themselves so persons served with the injunction could ask the court to remove them from enforcement. (See, e.g., RJN Exs. F (¶ 3, pp. 8-9), H (¶ 3, p. 8), I (¶ 5, pp. 7-8.)

16.     In 2008, we began to instruct our Deputy City Attorneys in the Anti-Gang Section to attach removal petitions to each gang injunction served thereafter. LAPD policy, with which I am familiar due to my position, has required that removal petitions be served with gang injunctions since June of 2009. The first injunction to which we attached the removal petition for service from the beginning was *People v. 204th Street* (LASC Case No. BC 381942, permanent injunction issued 7/7/08–RJN Ex. I), and we have done so with each new injunction issued since then.

17.     Seventh, our office seriously considered taking two additional steps: (1) seeking court modification of the pre-*Colonia Chiques* curfew provisions that it appeared might be affected by the decision, and (2) asking LAPD officers to serve gang members covered by curfew provisions that might be subject to *Colonia Chiques* with written notice that LAPD would not be enforcing the curfew provisions of those injunctions. Ultimately,

---

[3] The information and petitions can be found at
http://atty.lacity.org/our_office/criminaldivision/ganginjunctions/index.htm.

6

Exhibit 13
Page 97

1  we decided against either action. We believed that many of the individuals served with the

2  permanent injunctions could not be located for service of the new notices. We also believed

3  that service of the new notice to some, but not all gang members who had been served with

4  the injunction, would be confusing and inconsistent. Further, it is questionable whether it

5  would be proper for us to attach any document, such as a notice of non-enforcement of

6  certain injunction provisions, when serving new gang members with a permanent injunction

7  previously served to others.

8      18.    I have read pages 8-13 of Plaintiffs' Motion for Class Certification. Several of

9  the statements are inaccurate or not true. For example, the statement at 9:8-9--"The City of

10  Los Angeles enforces the curfew provisions of all of its gang injunctions in a common

11  manner."--is decidedly false. Even though the City may be a municipal corporation and

12  therefore a single entity for some legal purposes, the City acts through its many agents and

13  employees. Nowhere is this more evident than in its enforcement of gang injunction curfew

14  provisions. First, the curfew provisions of many of the injunctions are quite different. This

15  is not only true for the post-*Colonia Chiques* curfews, but also for 7 of the 26 injunctions

16  listed in the subject Second Amended Complaint. (See ¶¶ 4-8 above, Richardson Decl. Ex.

17  6, Groups D-G, L-N, City's RJN Exs. F-P.) Second, the different curfew provisions are

18  enforced differently by thousands of LAPD officers and many different Deputy City

19  Attorneys, each of whom, to a certain extent acts independently according to his or her

20  discretion. This fact is demonstrated by the LAPD gang enforcement statistics and City

21  Attorney gang injunction violation case filing records  that I review as part of my duties.

22  Some of LAPD's geographic divisions rarely make arrests for violation of gang injunctions;

23  others make such arrests frequently.

24      19.    Also very inaccurate are the statements at 9:26-10:5 of the Motion: "The City

25  of Los Angeles has also developed several different versions of a common training for its

26  police force, attorneys, gang specialists, and other officers. However, most such trainings

27  cover all the gang injunctions in the same training. ... The same common trainings

28  specifically cover what constitutes violations of the curfew provisions as a whole, without

7

Exhibit 13
Page 98

1  making distinctions between the different injunctions."

2          These statements appear based simply upon the PowerPoint slides provided to
3  Plaintiffs during discovery without any knowledge of what actually occurs during the
4  training sessions. I have attended several of the training sessions, and I personally monitor
5  and oversee all the gang injunction training given by the City Attorney's Office to Deputy
6  City Attorneys and LAPD officers. Regular gang injunction enforcement training is the
7  responsibility of individual City Attorney gang deputies working with each of the 21 LAPD
8  geographic areas. In addition, group injunction enforcement training is given at the LAPD
9  Gang School  and at training sessions for gang and patrol officers given by several of the
10 Deputy City Attorneys in our Anti-Gang Section. (See ¶ 10 above.)

11         These training sessions are as individualized as the different attorneys who give them.
12 For training given at individual LAPD stations, the training is specific to the geographic
13 area in which the officers work. When the PowerPoint slides are used, the attorneys typically
14 give oral commentary and explanation throughout the presentations. They do indeed orally
15 instruct the officers to differentiate between curfews that are similar to those barred by
16 *Colonia Chiques* and curfews similar to those validated by *People v. Reisig*.

17         20.   I have also read paragraph 22 of the Declaration of Olu K. Orange that
18 accompanies Volume 2 of the Appendix of Evidence in Support of Plaintiffs' Motion, which
19 states that "As shown in TABLE A above, defendants failed to comply with the court's
20 order to provide discovery as to all of the injunctions in plaintiffs' complaint." (Injunctions
21 from LASC Cases BC 397522 ("All for Crime"), BC 319166 ("38th Street"), and BC 326016
22 ("42nd Street Gangster Crips") are referenced.) This statement appears to presume that
23 because Plaintiffs found no curfew-related arrest reports for the listed injunctions, the City
24 must have failed to comply with the Court's discovery order. I have no reason to believe this
25 is true.

26         I oversaw the review of the arrest reports collected by LAPD that the Court ordered
27 the City to produce to Plaintiffs through discovery. I instructed my assistants to identify
28 each arrest report for the designated time period for each curfew violation pertaining to the

8

Exhibit 13
Page 99

Case 2:11-cv-01135-DMG -JEM   Document 49    Filed 04/27/12   Page 42 of 59   Page ID
#:1163

1    26 injunctions listed in the Second Amended Complaint. The areas covered by the three

2    injunctions listed above all fall within LAPD's Newton Division. Until this past year,

3    Newton officers made fewer arrests for injunction violations than most other south and

4    central Los Angeles LAPD divisions. In addition, one of our more experienced Deputy City

5    Attorneys from the Anti-Gang Section was assigned to Newton to instruct the officers in

6    proper curfew enforcement. The lack of any curfew violation arrest reports for these

7    injunctions is consistent with these factors.

8

9        I declare under penalty of perjury under the laws of the United States of America that

10   the foregoing is true and correct. Executed April 24, 2012.

11

12                        ANNE TREMBLAY

13

9

Exhibit 13
Page 100

# LOS ANGELES
# CITY ATTORNEY'S OFFICE
# CRIMINAL AND SPECIAL LITIGATION BRANCH

# GANG INJUNCTION PROGRAM GUIDELINES

## OFFICE OF THE CITY ATTORNEY
## CITY OF LOS ANGELES



JEFFREY B. ISAACS
Chief Assistant City Attorney
Chief, Criminal and
Special Litigation Branch

BRUCE RIORDAN
Senior Assistant City Attorney
Deputy Chief, Criminal and
Special Litigation Branch

July 2009

Exhibit____1____ Page 38

Exhibit 13
Page 101

## C.2:   Inclusion of Standard Provisions

To the extent available evidence justifies inclusion of any of the following provisions, the initial application to the court for a Gang Injunction shall include the following provisions, unless a deviation is authorized by a Gang Supervisor:

   a)   *Do Not Associate;*

   b)   *No Intimidation;*

   c)   *No Firearms, Imitation Firearms, or Dangerous Weapons;*

   d)   *Stay Away From Drugs;*

   e)   *Stay Away From Alcohol;*

   f)   *No Trespassing;*

   g)   *No Graffiti or Graffiti Tools;*

   h)   *No Forcible Recruiting;*

   i)   *No Preventing a Member From Leaving the Gang;*

   j)   *Obey All Laws.*

## C.3:   Inclusion of Special Provisions

Inclusion of a new or otherwise non-standard provision in the Gang Injunction must be approved by a Gang Supervisor.

Such special provisions could include, but are not necessarily limited to:

   a)   *Obey Curfew;*

   b)   *Stay Away From School Grounds;*

   c)   *Stay Away From Designated Locations;*

   d)   *No Extortion Including Collection of "Rents" or "Taxes;"*

   e)   *No Acting as Lookout;*

   f)   *No Fighting;*

   g)   *Stay Away From Rival Gang's Territory* (where the Gang Injunction operates against two or more gangs);

Exhibit __1__ Page _39_

Exhibit 13
Page 102

h)  *No Contact With Minors Going to and From School;*

i)  *No Use of Gang Gestures in Public;*

j)  *No Wearing of Gang Clothing in Public;*

k)  *No Interference with a Person's Exercise of Civil Rights Based Upon
Race, Ethnicity, Nationality, or Sexual Orientation;*

l)  *No Contact with Specified Individuals* (especially persons in jail or
prison or on probation or parole);

m)  *Obey Specified Laws.*

The Gang Deputy and Gang Supervisor should carefully research and analyze
the applicable law to ensure the legality (and in particular the constitutionality) of
the provision. To avoid repetition of effort, for each such approved provision the
Gang Deputy shall distribute a memorandum to all attorneys within the Gang
Division and the Chief of the Criminal Branch that includes the language of the
provision, a brief explanation of its intended purpose, and any research and/or
analysis concerning its legality.

**C.4:**    **Notice to the Gang**

Generally, the lawsuit requesting issuance of the Gang Injunction will be filed
against the gang as an unincorporated association or organization and not
against individual gang members.

In such cases, to provide notice to the gang of the pendancy of the lawsuit, one
or more designated gang members must be served with the summons,
complaint, order to show cause and supporting documentation. To ensure that
the court has a sufficient basis for finding that the gang as an entity received
adequate notice of the lawsuit, the Gang Deputy should plan and make
arrangements for the initial service of process on an adequate number of
suspected gang members.

For purposes of this initial service of process, the Gang Deputy should select
only suspected gang members with respect to whom there is substantial,
admissible and credible evidence that they are, in fact, gang members.

Exhibit **1** Page **40**

Exhibit 13
Page 103

# LOS ANGELES
# CITY ATTORNEY'S OFFICE
# CRIMINAL AND SPECIAL LITIGATION BRANCH

# GANG INJUNCTION GUIDELINES

## ROCKARD J. DELGADILLO
## CITY ATTORNEY
## CITY OF LOS ANGELES



JEFFREY B. ISAACS
Chief, Criminal and
Special Litigation Branch

BRUCE RIORDAN
Director of Anti-Gang
Programs and Operations

MARTY VRANICAR
Supervising Attorney,
Gang Prosecution and
Prevention Section

**April 2007**

Exhibit ___2___ Page _41_

Exhibit 13
Page 104

d) There are too few documented incidents of recent nuisance activity attributable to the targeted gang within the proposed Safety Zone to establish a continuing course of conduct or threat of a continuing course of conduct;

e) There is a substantial risk that the gang will be able to establish turf-based nuisance activity in another community; *and/or*

f) LAPD and the City Attorney's Office do not have sufficient available resources to adequately enforce the proposed Gang Injunction.

### B.7: Decision to Seek a Gang Injunction

A request for a Gang Injunction shall be analyzed in the first instance by the Gang Deputy and a Gang Supervisor, in consultation with the designated LAPD gang expert(s). If they concur that the requirements of Guideline B.1 are met, the request and their recommendation shall,be forwarded to the Director of Anti-Gang Programs and Operations, the Chief of the Criminal Branch and the City Attorney for prompt action thereon. The decision whether to proceed with the request rests with the City Attorney, who may delegate such decision-making at any time and in any case to the Chief of the Criminal Branch.

### B.8: Coordination With the Local Branch and Safe Neighborhoods Division

Absent exigent circumstances, the Gang Deputy and Gang Supervisor should timely consult with the supervisor of the local Branch Office and attorneys in the Safe Neighborhoods Division to determine whether there are additional legal actions or other measures that could be taken within or around the proposed Safety Zone to abate the targeted gang's nuisance activity and/or improve the safety and quality of life of the members of the affected community.

### C.

### PROVISIONS OF THE
### GANG INJUNCTION AND NOTICE TO THE GANG

### C.1: Narrowly Tailored

Each provision included in the proposed Gang Injunction should be narrowly tailored to abate a particular category of nuisance activity or a precursor to such nuisance activity.

### C.2: Inclusion of Standard Provisions

To the extent available evidence justifies inclusion of any of the following provisions, the initial application to the court for a Gang Injunction shall include

5                           Exhibit___2___ Page 42

Exhibit 13
Page 105

the provision in the language set forth in Appendix A, unless a deviation is
authorized by a Gang Supervisor:

    a)  *Do Not Associate*

    b)  *No Intimidation*

    c)  *No Firearms, Imitation Firearms, or Dangerous Weapons*

    d)  *Stay Away From Drugs*

    e)  *Stay Away From Alcohol*

    f)  *No Trespassing*

    g)  *Obey Curfew*

    h)  *No Graffiti or Graffiti Tools*

    i)  *No Forcible Recruiting*

    j)  *No Preventing a Member From Leaving the Gang*

    k)  *Obey All Laws.*

**C.3:**  **Inclusion of Special Provisions**

Inclusion of a new or otherwise non-standard provision in the Gang Injunction
must be approved by a Gang Supervisor.

Such special provisions could include, but are not necessarily limited to:

    a)  *Stay Away From School Grounds*

    b)  *Stay Away From Designated Locations*

    c)  *No Extortion Including Collection of "Rents" or "Taxes"*

    d)  *No Acting as Lookout*

    e)  *No Fighting*

    f)  *Stay Away From Rival Gang's Territory* (where the Gang Injunction
       operates against two or more gangs)

    g)  *No Contact With Minors Going to and From School*

    h)  *No Use of Gang Gestures in Public*

Exhibit____**2**____Page____**43**

Exhibit 13
Page 106

   i)   *No Wearing of Gang Clothing in Public*

   j)   *No Interference With a Person's Exercise of Civil Rights Based Upon Race, Ethnicity, Nationality, or Sexual Orientation*

   k)   *No Contact with Specified Individuals* (especially persons in jail or prison or on probation or parole)

   l)   *Obey Specified Laws.*

The Gang Deputy and Gang Supervisor should carefully research and analyze the applicable law to ensure the legality (and in particular the constitutionality) of the provision. To avoid repetition of effort, for each such approved provision the Gang Deputy shall distribute a memorandum to all attorneys within the Gang Prosecution and Prevention Section, the Director of Anti-Gang Programs and Operations and the Chief of the Criminal Branch that includes the language of the provision, a brief explanation of its intended purpose, and any research and/or analysis concerning its legality.

### C.4:  Notice to the Gang

The lawsuit requesting issuance of the Gang Injunction is filed against the gang as an unincorporated association or organization and not against individual gang members. However, to provide notice to the gang of the pendency of the lawsuit, one or more designated gang members must be served with the summons, complaint, order to show cause and supporting documentation. To ensure that the court has a sufficient basis for finding that the gang as an entity received adequate notice of the lawsuit, the Gang Deputy should plan and make arrangements for the initial service of process on an adequate number of suspected gang members.

For purposes of this initial service of process, the Gang Deputy should select only suspected gang members with respect to whom there is substantial, admissible and credible evidence that they are, in fact, gang members.

### D.

### SERVICE OF SUSPECTED
### GANG MEMBERS FOR ENFORCEMENT PURPOSES

### D.1:  Coordination With LAPD

Upon issuance of the Gang Injunction, the Gang Deputy should: (a) provide appropriate training to the LAPD gang detail and any other officers who will be responsible for service and/or enforcement of the Gang Injunction; and (b) assist LAPD in creating an Injunction Enforcement Manual and keeping the Manual current.



# Gang Injunction Removal Petition Information

Thank you for your interest in the Gang Injunction Removal Petition process.  Petitioning for removal from enforcement of an injunction represents a significant step towards creating a healthier, safer, and more productive future.  Please be advised that regardless of the outcome of the Petition, you, like all other persons, remain subject to and must abide by all federal, state and local laws.

The Removal Process itself promotes:

- A symbolic step toward leaving the gang life and creating a better life for you and your family.
- An investment of time to gather background information and positive character references that has many benefits for future school or job applications seeking the same information. This is known as creating a "positive paper trail."
- An opportunity to learn about and utilize the various programs and services available throughout the City of Los Angeles.

If your petition is granted, the benefits include:

- The LAPD and City Attorney will no longer enforce the gang injunction against you.
- Public association, adult curfew, and "stay away" orders are among some of the injunction prohibitions that will no longer be enforced against you.
- Freedom from injunction enforcement and the *opportunity* to build a more productive life for yourself and your family.

The City Attorney's Office accepts applications of any length and format.  During the review process, the City Attorney will contact personal references, seek input from law enforcement, and conduct a face to face interview.  The applicant's motivation for removal and authenticity of the petition documents rank high in determining whether the City Attorney's Office approves the request.  We seek individuals who demonstrate a strong desire to further their goals and make a fresh start.

In addition to the benefits outlined above, the City of Los Angeles, and those agencies whom the City partners with, offers many resources to assist you throughout the application process and beyond. These resources include: job training, development, and placement; housing assistance; tattoo removal; educational support; recreational services; and other beneficial individual and family services.

**For more information regarding the Removal Petition Process, please contact:**
The Office of the City Attorney at (213) 978-7192 or visit our website at www.atty.lacity.org.

**For more information regarding support services, please contact:**
The Mayor's Office of Gang Reduction and Youth Development at (213) 473-7796 or visit their website at www.mayor.lacity.org/index.htm.

Exhibit____3____ Page__45

Exhibit 13
Page 108

### DECLARATION OF MATTHEW J. BLAKE

I, Matthew J. Blake, declare as follows:

1.     I am employed as a Commander and Assistant Director, Office of Operations, by the Los Angeles Police Department (LAPD or the Department). If called as a witness, I would testify to the following facts based on my personal knowledge.

2.     Attached as Exhibit A is an accurate copy of Operations Order No. 3 (OO NO. 3), dated August 2, 2012, with the signature of Assistant Chief Earl C. Paysinger at the bottom. I recognize Chief Paysinger's signature because he is my supervisor and I have seen it may times before.

3.     As with any written Department order, should an LAPD officer wilfully disobey OO No. 3, such action could constitute misconduct and could subject the officer to discipline.

4.     On August 2, 2012, I received an electronic mail message from Chief Paysinger that was also sent to each of the four Bureau Chiefs (Deputy Chiefs over one of four geographic bureaus) and area commanding officers (Captains over one of 21 geographic areas into which the City is divided) that attached OO No. 3 with instructions to ensure its distribution to all officers under their command.

5.     Chief Paysinger met with the Bureau Chiefs and me on August 7, 2012. During that meeting he discussed OO No. 3 and again directed the Bureau Chiefs to ensure the order was distributed to their subordinates.

6.     I met with the Bureau Gang Coordinators (Lieutenants who supervise officers in the Department's gang-related sections) on August 9, 2012. Among other things, we discussed OO No. 3 and I directed them to ensure compliance by the gang officers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed August 29, 2012.

_Matt Blake_
MATTHEW J. BLAKE

1

Exhibit 14
Page 109

**EXHIBIT A**

Exhibit 14
Page 110

## OFFICE OF OPERATIONS

OPERATIONS ORDER NO. 3                                August 2, 2012

**SUBJECT:**    MODIFICATION OF ENFORCEMENT OF FOUR PROVISIONS
                CONTAINED IN PERMANENT CIVIL GANG INJUNCTIONS

**PURPOSE:**    Currently there are 45 permanent Civil Gang
                Injunctions (CGIs) in effect within the City.  Each
CGI was designed to address the unique facts and problems caused
by the targeted criminal street gang.  As a result, the gang
provisions contained in the CGIs were necessarily varied and
different.  This Order establishes protocols to ensure that CGIs
are implemented uniformly, equitably, and in accordance with
changes in the law.

**PROCEDURE:**  Recent appellate court decisions have found some
                aspects of the enforcement of certain CGI provisions
to be unconstitutional.  Violations of the following CGI
provisions must not be used as reasonable suspicion or probable
cause to detain or arrest an enjoined gang member:

    *   The "Obey Curfew" provision;
    *   The "Stay Away from Alcohol" provision;
    *   The "Stay Away from Drugs" provision; and,
    *   The "Obey All Laws" provision.

**Exceptions:** The "Stay Away from Alcohol" provision may be
enforced only when a properly served gang member is in physical
possession of an alcoholic beverage in public.  The "Stay Away
from Drugs" provision may be enforced only when a properly
served gang member is in physical possession of either a
controlled substance without a valid medical prescription or
marijuana without a physician's recommendation.

Officers must use violations of other CGI provisions and/or
existing laws as reasonable suspicion or probable cause to detain
or arrest an enjoined gang member.

Any questions regarding this Order should be directed to
Gang Support Section, Gang and Narcotics Division,
at (213) 486-6050.

EARL C. PAYSINGER, Assistant Chief
Director, Office of Operations

DISTRIBUTION "A"

Exhibit 14
Page 111

1  Olu K. Orange, Esq. [S.B. #213653]
   ORANGE LAW OFFICES
2  3435 Wilshire Blvd., Suite 2900
   Los Angeles, California 90010
3  Telephone: (213) 736-9900
   Facsimile: (213) 417-8800
4  Email: oluorange@att.net

5  Dan Stormer, Esq. [S.B. #101967]
   Anne Richardson, Esq. [S.B. #151541]
6  Cindy Pánuco, Esq. [S.B. #266921]
   HADSELL, STORMER
7      RICHARDSON & RENICK, LLP
   128 North Fair Oaks Avenue
8  Pasadena, California 91103-3645
   Telephone: (626) 585-9600
9  Facsimile: (626) 577-7079
   Email: dstormer@hadsellstormer.com
10         aricardson@hadsellstormer.com
           cpanuco@hadsellstormer.com
11

12  Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15
    CHRISTIAN RODRIGUEZ, ALBERTO          Case No.: CV11-01135 DMG (JEMx)
16  CAZAREZ, individually and as class
    representatives                       [Assigned to the Honorable Dolly M.
17                                         Gee – Courtroom 7]
                         Plaintiffs,
18        vs.                             PLAINTIFFS' FIRST AMENDED
19                                        NOTICE OF THE DEPOSITION OF
    CITY OF LOS ANGELES, CARMEN           CHARLES BECK
20  TRUTANICH, CHARLES BECK,
    ALLAN NADIR, ANGEL GOMEZ              Date:      September 20, 2013
21  AND DOES 1 THROUGH 10.                Time:      9:00 a.m.
22                                        Place:     Hadsell Stormer, et al.
                         Defendants.                 128 N. Fair Oaks Ave.
23                                                   Pasadena, CA 91103
24
25
26                                        Complaint Filed:   February 7, 2011
                                          Discovery Cut-Off: By Code
27                                        Motion Cut-Off:    By Code
                                          Trial Date:        None set
28

                                          1

                                          PLTFS' FIRST AMEND NTC OF THE DEPO OF CHARLES BECK

Exhibit 15
Page 112

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that pursuant to Rule 30 of the Federal Rules of

3  Civil Procedure, plaintiffs will take the deposition of CHARLES BECK on

4  September 20, 2013.  Said deposition shall commence 9:00 a.m. at Hadsell Stormer

5  Richardson & Renick LLP, 128 N. Fair Oaks Avenue, Pasadena, California, 91103.

6       **PLEASE TAKE FURTHER NOTICE** that said deposition will be taken

7  upon oral examination by stenographic means before a notary public, or some other

8  officer authorized by law to administer oaths.  Plaintiffs reserve the right to record

9  said deposition by videotape.  If the deposition is not completed on September 20,

10  2013, it will be continued day to day thereafter, until completed, or at some mutually

11  agreeable date within a reasonable period of time.

12

13  Dated:  August 30, 2013       Respectfully Submitted,

14

15              ORANGE LAW OFFICES

16              HADSELL STORMER

17                RICHARDSON & RENICK, LLP

18

19              By:_____

20                Dan Stormer

21                Attorneys for Plaintiffs

22

23

24

25

26

27

28

PLTFS' FIRST AMEND NTC OF THE DEPO OF CHARLES BECK

Exhibit 15
Page 113

1

## PROOF OF SERVICE

2        I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair
3   Oaks Avenue, Pasadena, California 91103.

4        On August 30, 2013, I served the foregoing document described as:
**PLAINTIFFS' FIRST AMENDED NOTICE OF THE DEPOSITION OF**
5   **CHARLES BECK** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

6

| | |
|---|---|
| Rena M. Shahandeh, Esq.<br>Cory Brente, Esq.<br>Bruce Monroe, Esq.<br>Los Angeles City Attorneys' Office<br>200 N. Main Street, 6th Fl., City Hall East<br>Los Angeles, California 90012-4119 | Attorneys for Defendants |

10  <u>XX</u>   **BY MAIL**

11        <u>XX</u>   I deposited such envelope in the mail at Pasadena, California.  The envelope
12   was mailed with postage thereon fully prepaid.

13        ____  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal
14   service on the same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business.  I am aware that on motion of the party served, service is
15   presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

16        Executed on August 30, 2013, at Pasadena, California.

17  <u>XX</u>   (Federal)   I declare that I am employed in the office of a member of the bar of
18                         this Court at whose direction the serve was made.

19

20
                                        _____
21                                      Tami Galindo
                                        Declarant
22

23

24

25

26

27

28

Exhibit 15
Page 114

1    Olu K. Orange, Esq. [S.B. #213653]
     ORANGE LAW OFFICES
2    3435 Wilshire Blvd., Suite 2900
     Los Angeles, California 90010
3    Telephone: (213) 736-9900
     Facsimile: (213) 417-8800
4    Email: oluorange@att.net

5    Dan Stormer, Esq. [S.B. #101967]
     Anne Richardson, Esq. [S.B. #151541]
6    Cindy Panuco, Esq. [S.B. #266921]
     HADSELL, STORMER
7        RICHARDSON & RENICK, LLP
8    128 North Fair Oaks Avenue
     Pasadena, California 91103-3645
9    Telephone: (626) 585-9600
     Facsimile: (626) 577-7079
10   Email: dstormer@hadsellstormer.com
        arichardson@hadsellstormer.com
11      cpanuco@hadsellstormer.com

12   Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15   | CHRISTIAN RODRIGUEZ, ALBERTO | Case No.: CV11-01135 DMG (JEMx) |
16   | CAZAREZ, individually and as class | |
     | representatives | [Assigned to the Honorable Dolly M. |
17   | | Gee – Courtroom 7] |
18   |              *Plaintiffs,* | |
     |     vs. | **PLAINTIFFS' FIRST AMENDED** |
19   | | **NOTICE OF THE DEPOSITION OF** |
20   | CITY OF LOS ANGELES, CARMEN | **CARMEN TRUTANICH** |
     | TRUTANICH, CHARLES BECK, | |
21   | ALLAN NADIR, ANGEL GOMEZ | |
     | AND DOES 1 THROUGH 10. | Date:       September 19, 2013 |
22   | | Time:       9:00 a.m. |
23   |              *Defendants.* | Place:      Hadsell Stormer, et al. |
     | | 128 N. Fair Oaks Ave. |
24   | | Pasadena, CA 91103 |
25   | | |
26   | | Complaint Filed:  February 7, 2011 |
     | | Discovery Cut-Off: By Code |
27   | | Motion Cut-Off:   By Code |
28   | | Trial Date:       None set |

1

PLTFS' FIRST AMEND NTC OF THE DEPO OF CARMEN TRUTANICH

Exhibit 16
Page 115

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to Rule 30 of the Federal Rules of Civil Procedure, plaintiffs will take the deposition of CARMEN TRUTANICH on September 19, 2013.  Said deposition shall commence 9:00 a.m. at Hadsell Stormer Richardson & Renick LLP, 128 N. Fair Oaks Avenue, Pasadena, California, 91103.

**PLEASE TAKE FURTHER NOTICE** that said deposition will be taken upon oral examination by stenographic means before a notary public, or some other officer authorized by law to administer oaths.  Plaintiffs reserve the right to record said deposition by videotape.  If the deposition is not completed on September 19, 2013, it will be continued day to day thereafter, until completed, or at some mutually agreeable date within a reasonable period of time.

Dated:  August 30, 2013

Respectfully submitted,

ORANGE LAW OFFICES

HADSELL STORMER
    RICHARDSON & RENICK, LLP

By: _____
    Dan Stormer
    Attorneys for Plaintiffs

2

PLTFS' FIRST AMEND NTC OF THE DEPO OF CARMEN TRUTANICH

Exhibit 16
Page 116

## PROOF OF SERVICE

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks Avenue, Pasadena, California 91103.

On August 30, 2013, I served the foregoing document described as: **PLAINTIFFS' FIRST AMENDED NOTICE OF THE DEPOSITION OF CARMEN TRUTANICH** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

| | |
|---|---|
| Rena M. Shahandeh, Esq.<br>Cory Brente, Esq.<br>Bruce Monroe, Esq.<br>Los Angeles City Attorneys' Office<br>200 N. Main Street, 6th Fl., City Hall East<br>Los Angeles, California 90012-4119 | Attorneys for Defendants |

<u>XX</u>   **BY MAIL**

<u>XX</u>  I deposited such envelope in the mail at Pasadena, California.  The envelope was mailed with postage thereon fully prepaid.

____ I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

Executed on August 30, 2013, at Pasadena, California.

<u>XX</u>    (Federal)    I declare that I am employed in the office of a member of the bar of this Court at whose direction the serve was made.

_____
Tami Galindo
Declarant

Exhibit 16
Page 117

1  Olu K. Orange, Esq., SBN: 213653
2  ORANGE LAW OFFICES
   3435 Wilshire Blvd., Suite 2900
3  Los Angeles, California 90010
4  Tel: (213) 736-9900 / Fax: (213) 417-8800
   Email: oluorange@att.net
5
6  Dan Stormer, Esq., SBN: 101967
   Anne Richardson, Esq., SBN: 151541
7  Cindy Pánuco, Esq., SBN: 266921
8  HADSELL, STORMER,
        RICHARDSON & RENICK, LLP
9  128 North Fair Oaks Avenue
10 Pasadena, California 91103-3645
   Tel: (626) 585-9600; Fax: (626) 577-7079
11 Emails: dstormer@hadsellstormer.com;
12 arichardson@hadsellstormer.com; cpanuco@hadsellstormer.com
13 *Attorneys for Plaintiffs*
14
15              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16

| | |
|---|---|
| 17 CHRISTIAN RODRIGUEZ, ALBERTO CAZAREZ, individually and as class representatives | Case No.: CV11-01135 DMG (JEMx) |
| 18 | |
| 19 *Plaintiffs,* | **PLAINTIFF CHRISTIAN RODRIGUEZ'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CHARLES BECK, SET ONE** |
| 20 vs. | |
| 21 | |
| 22 CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLES BECK, ALLAN NADIR, ANGEL GOMEZ AND DOES 1 THROUGH 10. | Complaint Filed:  February 7, 2011 |
| 23 | Trial Date:  April 28, 2015 |
| 24 | |
| 25 *Defendants.* | |

26 PROPOUNDING PARTY:    Plaintiff Christian Rodriguez
27 RESPONDING PARTY:     Defendant Charles Beck
28 SET NUMBER:           One (Nos. 1-22)

                              1

PLTF'S REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFT BECK, SET ONE

Exhibit 17
Page 118

1      **PLEASE TAKE NOTICE** that, pursuant Rule 34 of the Federal Rules of

2  Civil Procedure, Defendant Charles Beck is hereby requested to produce for

3  inspection and copying the documents described below by no later than thirty days

4  following the service of this request, at the offices of Hadsell Stormer Richardson &

5  Renick, LLP located at 128 North Fair Oaks Avenue, Pasadena, California 91103,

6  unless a different time has been ordered by the Court, or applies per rule.

**I.**

**DEFINITIONS AND INSTRUCTIONS**

9  **A.    Definitions**

10     1.    As used herein, the word "ACTION" refers to this lawsuit entitled

11  *Rodriguez v. City of Los Angeles et al.,* Case No.: CV11-01135 DMG (JEMx).

12     2.    The term "DOCUMENT" shall include all things defined in Federal

13  Rule of Evidence 1001, and Federal Rule of Civil Procedure 34, and includes,

14  without limitation, all written, recorded, transcribed, punched, taped (including

15  computer tapes), filmed, photographed, videotaped, tape-recorded, printed or other

16  matter, of every kind and description, however produced or reproduced, and however

17  preserved, including information contained on computer disk, CD-ROM, computer

18  hard drive, server, microfiche, film, videotape, audiotape or otherwise, including but

19  not limited to the original and any copy and all drafts, of any letter, memorandum,

20  telegram, report, manual, bulletin, study, record, statement, message, hand written

21  note, calendar, diary, working paper, sketch, computer tape, data sheet, data card,

22  tape recording, or any other written, printed or recorded matter, books, letters,

23  pamphlets, correspondence, memoranda, reports, manuals, training bulletins, Special

24  Orders, crime reports, preliminary investigation reports, investigation reports, arrest

25  reports, evidence reports, equipment reports, vehicle reports, sergeant's reports,

26  sergeant's daily reports, station commander's reports, supervisor's reports, watch

27  commander's reports, lieutenant's reports, use of force reports, follow-up reports,

28  Daily Work Sheet reports, Daily Field Activities Reports, employee injury reports,

2

PLTF'S REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFT BECK, SET ONE

Exhibit 17
Page 119

telephone calls, radio transmissions, surveillance video, surveillance audio, mobile audio-video unit recordings, personnel complaint investigations, citizen complaint investigations, chronologies, logs, notes, drafts of any written document, minutes of meetings, interview tapes and transcriptions, California Tort Claim investigations and all other physically preserved documentary information, regardless of the medium of preservation, however produced or reproduced, from whatever source obtained, in the defendant's possession or control, or subject to its control, or to which it has access. "DOCUMENT" shall also include originals and all non-identical copies. Copies which differ by reason of notations or electronic encodings thereon are considered "nonidentical" copies.

3.    The term "YOU," "YOUR," "YOURS" and/or "CHIEF OF POLICE" means defendant CHARLES BECK and includes the LOS ANGELES POLICE DEPARTMENT and its agents and employees.

4.    The term "CITY" or "CITY OF LOS ANGELES" means defendant City of Los Angeles and includes the LOS ANGELES CITY ATTORNEY'S OFFICE, the LOS ANGELES POLICE DEPARTMENT and any and all councils, commissions, committees, departments, officials, agents, employees and servants of defendant CITY OF LOS ANGELES.

5.    As used herein, the term "PLAINTIFFS" refers to Plaintiffs Christian Rodriguez and Alberto Cazarez and others similarly situated.

6.    "PERSON" includes a natural person, firm, association, organization, partnership, business, trust, corporation, entity or public entity.

7.    When used to refer to PERSONS, the term "IDENTIFY" and/or "IDENTITY" means the first and last name, date of birth, rank and assignment, home and business ADDRESS, and home and business telephone numbers of such PERSON.

8.    When used to refer to DOCUMENT, the term "IDENTIFY" and/or "IDENTITY" means the title of the DOCUMENT, a description of the contents of

3

PLTF'S REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFT BECK, SET ONE

Exhibit 17
Page 120

1  the DOCUMENT, the number of pages of the DOCUMENT, and the IDENTITY of

2  each person who has possession of the original and any copy of the DOCUMENT.

3       9.    The terms "REGARDING" or "REGARD" with respect to any given

4  subject matter means, without limitation, anything that, in whole or in part, analyzes,

5  comments upon comprises, concerns, constitutes, contains, describes, discusses,

6  embodies, evidences, explains, identifies, mentions, reflects, refers to, relates to,

7  responds to, states, summarizes, or is in any way relevant to the particular subject

8  matter identified.

9       10.    "THE INJUNCTIONS" means and includes only gang injunctions from

10  the following Los Angeles Superior Court cases: BC397522; BC332713; BC305434;

11  BC313309; BC319166; BC326016; BC287137; BC335749; LC020525; BC267153;

12  BC358881; SC056980; BC359945; NC030080; BC330087; BC359944; BC282629;

13  LC048292; BC311766; BC351990; BC298646; BC349468; BC319981; SC060375;

14  SC057282; and BC353596.

15  **B.**    **Instructions**

16       1.    <u>Documents withheld.</u>

17       If any DOCUMENT is withheld under a claim of privilege or other protection,

18  so as to aid the Court and the parties hereto to determine the validity of the claim of

19  privilege or other protection, please provide the following information with respect to

20  any such DOCUMENT:

21           a.    The identity of the person(s) who prepared the DOCUMENT,

22               who signed it, and over whose name it was sent or issued;

23           b.    The identity of the person(s) to whom the DOCUMENT was

24               directed;

25           c.    The nature and substance of the DOCUMENT with sufficient

26               particularity to enable the Court and parties hereto to identify the

27               DOCUMENT;

28           d.    The date of the DOCUMENT;

4

Exhibit 17
Page 121

e.  The identity of the person(s) who has possession of, custody of, or control over the DOCUMENT and each copy thereof;

f.  The identity of each person to whom copies of the DOCUMENT were furnished;

g.  The number of pages;

h.  The basis on which any privilege or other protection is claimed, and a statement as to why the privilege is applicable as well as the information required by Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973); and

i.  Whether any non-privileged or non-protected matter is included in the DOCUMENT.

2.  Undue Burden.

If YOU claim that any request calls for withholding of DOCUMENTS, things or evidence, or poses an undue burden, prompt notice should be given to PLAINTIFFS as to the reason for that claim. PLAINTIFFS request the opportunity to review any such difficulty with the defendants to facilitate prompt production of available materials and a practicable and timely plan for production of producible materials.

3.  Partial Production.

Whenever YOU object to a particular request, or portion thereof, YOU must produce all DOCUMENTS called for which are not subject to that objection. Similarly, wherever a DOCUMENT is not produced in full, please state with particularity the reason or reasons it is not being produced in full, and describe, to the best of its knowledge, information and belief and with as much particularity as possible, those portions of the DOCUMENT that are not produced.

4.  Orderly Response.

Wherever it is reasonably practicable, please produce DOCUMENTS in such a manner as will facilitate their identification with the particular request or category of

5

PLTF'S REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFT BECK, SET ONE

Exhibit 17
Page 122

1    requests to which they are responsive.

2        5.    Construction of "and" and "or".

3        As used herein, the words "and" and "or" shall be construed both

4    conjunctively and disjunctively, and each shall include the other wherever such dual

5    construction will serve to bring within the scope of these demands any DOCUMENT

6    which would otherwise not be brought within their scope.

7        6.    Construction of the Singular and Plural Forms.

8        As used herein, the singular form shall include the plural and vice versa

9    wherever such dual construction will serve to bring within the scope of these

10   demands any Document which would otherwise not be brought within their scope.

11       7.    When answering this demand for production, provide any and all

12   DOCUMENTS, things and/or evidence which is/are in YOUR control, within YOUR

13   dominion, or available to YOU, regardless of whether these documents are in YOUR

14   possession or are possessed by YOUR agents, servants, employees, attorneys,

15   independent contractors, representatives, or others from whom YOU are capable of

16   deriving information, documents and/or materials.

17                            **II.**

18                   **REQUESTS FOR PRODUCTION**

19   **REQUEST NO. 1:**

20       YOUR current curriculum vitae and/or resume.

21   **REQUEST NO. 2:**

22       The complete contents of any file maintained by YOU regarding

23   PLAINTIFFS.

24   **REQUEST NO. 3:**

25       Every DOCUMENT responsive to the October 30, 2013 Order of United

26   States Magistrate Judge McDermott, that YOU produce all documents that set forth

27   the reasons why YOU did not instruct the LOS ANGELES POLICE DEPARTMENT

28   to stop enforcing the curfew provisions of THE INJUNCTIONS.

                              6

PLTF'S REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFT BECK, SET ONE

Exhibit 17
Page 123

1 | **REQUEST NO. 4:**

2 |       Every DOCUMENT responsive to the October 30, 2013 Order of United

3 | States Magistrate Judge McDermott, that YOU produce all documents that set forth

4 | the reasons that the CITY did not instruct the LOS ANGELES POLICE

5 | DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS.

6 | **REQUEST NO. 5:**

7 |       Every DOCUMENT responsive to the October 30, 2013 Order of United

8 | States Magistrate Judge McDermott, that YOU produce all "relevant non-privileged

9 | emails regarding *Colonia Chiques* and the gang injunction curfews to or from

10 | [YOU]."

11 | **REQUEST NO. 6:**

12 |       Every DOCUMENT in YOUR possession, REGARDING YOUR authority to

13 | forbid YOUR officers from enforcing the curfew provisions of THE INJUNCTIONS,

14 | from October 15, 2007 to the present.

15 | **REQUEST NO. 7:**

16 |       Every DOCUMENT generated, maintained or received by YOU on and

17 | between October 15, 2007 through the date of your response to this request, relating

18 | to policies, procedures, and/or practices REGARDING how the CITY OF LOS

19 | ANGELES identifies, determines, and/or selects which PERSONS are subject to

20 | THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served

21 | with THE INJUNCTIONS.

22 | **REQUEST NO. 8:**

23 |       Every DOCUMENT generated, maintained or received by the CITY OF LOS

24 | ANGELES on and between October 15, 2007 through the date of your response to

25 | this request, relating to policies, procedures, and/or practices regarding how the

26 | CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS

27 | are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS

28 | shall be served with an INJUNCTION.

7

Exhibit 17
Page 124

**REQUEST NO. 9:**

Every DOCUMENT generated, maintained or received by YOUR office on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTION.

**REQUEST NO. 10:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

**REQUEST NO. 11:**

Every DOCUMENT REGARDING Plaintiff Alberto Cazarez.

**REQUEST NO. 12:**

Every DOCUMENT REGARDING Plaintiff Christian Rodriguez.

**REQUEST NO. 13:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Anne Tremblay about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

**REQUEST NO. 14:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the Mayor of the CITY about policies, procedures, and/or practices regarding the enforcement of the curfew

8

1  provisions of THE INJUNCTIONS by the CITY.

2  **REQUEST NO. 15:**

3       Every DOCUMENT generated, maintained or received by YOU on and

4  between October 15, 2007 through the date of your response to this request,

5  regarding and/or relating to COMMUNICATIONS with defendant Carmen Trutanich

6  about policies, procedures, and/or practices regarding the enforcement of the curfew

7  provisions of THE INJUNCTIONS by the CITY.

8  **REQUEST NO. 16:**

9       Every DOCUMENT generated, maintained or received by YOU on and

10  between October 15, 2007 through the date of your response to this request,

11  regarding and/or relating to COMMUNICATIONS with Assistant Chief Earl

12  Paysinger about policies, procedures, and/or practices regarding the enforcement of

13  the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

14  **REQUEST NO. 17:**

15       Every DOCUMENT generated, maintained or received by YOU on and

16  between October 15, 2007 through the date of your response to this request,

17  regarding and/or relating to COMMUNICATIONS with William J. Hart about

18  policies, procedures, and/or practices regarding the enforcement of the curfew

19  provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

20  **REQUEST NO. 18:**

21       Every DOCUMENT generated, maintained or received by YOU on and

22  between October 15, 2007 through the date of your response to this request,

23  regarding and/or relating to COMMUNICATIONS with any person in the LOS

24  ANGELES POLICE DEPARTMENT about policies, procedures, and/or practices

25  regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the

26  CITY.

27  ///

28  ///

9

PLTF'S REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFT BECK, SET ONE

Exhibit 17
Page 126

**REQUEST NO. 19:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Assistant Chief Earl Paysinger REGARDING Operations Order No.3 dated August 2, 2012, and which subject line reads: Modification of Enforcement of Four Provisions Contained in Permanent Gang Injunctions.

**REQUEST NO. 20:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in the LOS ANGELES POLICE DEPARTMENT REGARDING Operations Order No.3 dated August 2, 2012, and which subject line reads: Modification of Enforcement of Four Provisions Contained in Permanent Gang Injunctions.

**REQUEST NO. 21:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS to any person.

/ / /

/ / /

/ / /

10

PLTF'S REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFT BECK, SET ONE

Exhibit 17
Page 127

**REQUEST NO. 22:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, REGARDING the CITY'S policies and procedures for informing YOU when a lawsuit has been filed which personally names YOU.

DATE: June 30, 2014

Respectfully Submitted,

HADSELL STORMER

RICHARDSON & RENICK, LLP

By: _____

Cindy Pánuco
Attorney for the Plaintiffs

11

Exhibit 17
Page 128

**PROOF OF SERVICE**

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 128 N . Fair Oaks Avenue, Pasadena, California 91103.

On June 30, 2014, I served the foregoing document described as: **PLAINTIFF CHRISTIAN RODRIGUEZ'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CHARLES BECK, SET ONE** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

| | |
|---|---|
| Rena M. Shahandeh, Esq.<br>Cory Brente, Esq.<br>Bruce Monroe, Esq.<br>Los Angeles City Attorneys' Office<br>200 N. Main Street, 6th Fl., City Hall East<br>Los Angeles, CA 90012-4119<br>Telephone: (213) 878-7047<br>Facsimile: (213) 978-8787 | **Attorneys for Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLES BECK, and ANGEL GOMEZ** |

__XX__    **BY PERSONAL SERVICE**

__XX__ I delivered such envelope by hand to the addressees listed above.

Executed on June 30, 2014, at Pasadena, California.

__XX__    (Federal)    I declare that I am employed in the office of a member of the bar of this Court at whose direction the serve was made.

_____
David Hannah
Declarant

1

Exhibit 17
Page 129

1

**PROOF OF SERVICE**

2      I am employed in the county of Los Angeles, State of California.  I am over the
age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks
3   Avenue, Pasadena, California 91103.

4      On June 30, 2014, I served the foregoing document described as:  **PLAINTIFF
CHRISTIAN RODRIGUEZ'S REQUEST FOR PRODUCTION OF DOCUMENTS**
5   **TO DEFENDANT CHARLES BECK, SET ONE** on the interested parties in this cause
by placing true and correct copies thereof in envelopes addressed as follows:
6

| 7<br>8<br>9 | Janine Jeffery, Esq.<br>REILY & JEFFERY<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>Telephone: (818) 350-6282<br>Facsimile: (818) 350-6283 | **Attorneys for Defendant ALLAN<br>NADIR** |
|---|---|---|

10  <u>XX</u>   **BY MAIL**

11      <u>XX</u>  I deposited such envelope in the mail at Pasadena, California.  The envelope
12  was mailed with postage thereon fully prepaid.

13      ____  I am readily familiar with the firm's practice of collection and processing
correspondence for mailing.  Under that practice it would be deposited with U.S. postal
14  service on the same day with postage thereon fully prepaid at Pasadena, California in the
ordinary course of business.  I am aware that on motion of the party served, service is
15  presumed invalid if postal cancellation date or postage meter date is more than one day
after date of deposit for mailing this affidavit.
16

17      Executed on June 30, 2014, at Pasadena, California.

18  <u>XX</u>     (Federal)    I declare that I am employed in the office of a member of the bar of
this Court at whose direction the serve was made.

19

20      _____

21      Jessica Valdenegro
Declarant

22

23

24

25

26

27

28

Exhibit 17
Page 130

1 | **MICHAEL N. FEUER**, City Attorney - SBN 111529x
**THOMAS H. PETERS**, Chief Assistant City Attorney - SBN 163388
2 | **CORY M. BRENTE**, Assistant City Attorney – SBN 115453
**RENA M. SHAHANDEH**, Deputy City Attorney - SBN 198072
3 | 200 North Main Street
City Hall East, 6th Floor
4 | Los Angeles, CA 90012
Telephone: (213) 978-7047
5 | Facsimile: (213) 978-8785
E-mail: rena.shahandeh@lacity.org
6 |
Attorneys for Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH,
7 | CHARLES BECK AND ANGEL GOMEZ

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11

12 | CHRISTIAN RODRIGUEZ, | **CASE NO. CV11-01135 DMG (JEMx)**
ALBERTO CAZAREZ, individually | *Assigned to Honorable Dolly M. Gee*
13 | and as class representatives

14 | Plaintiff, | **DEFENDANT CHARLES BECK'S**
**RESPONSES TO PLAINTIFF**
15 | vs. | **CHRISTIAN RODRIGUEZ'S**
**REQUEST FOR PRODUCTION**
16 | CITY OF LOS ANGELES, CARMEN | **OF DOCUMENTS**
TRUTANICH, CHARLES BECK, | **SET NUMBER ONE**
17 | ALLAN NADIR, ANGEL GOMEZ
AND DOES 1 THROUGH 10.
18 |
Defendants.
19

20

21 | **PROPOUNDING PARTY:    PLAINTIFF, CHRISTIAN RODRIGUEZ**

22 | **RESPONDING PARTY:    DEFENDANT, CHARLES BECK**

23 | **SET NUMBER:    ONE**

24

25 | <u>INTRODUCTORY NOTE AND GENERAL OBJECTIONS</u>

26 |       These responses are made solely for the purpose of this action. These

27 | responses are based upon a diligent investigation by Responding Party and upon

28 | such information available as of the date on which these responses are made.

1

Exhibit 18
Page 131

1   Responding Party reserves the right to conduct further investigation and discovery
2   and to offer at trial subsequently discovered evidence.  Responding Party makes no
3   incidental or implied admission regarding the contents of any document referred to
4   in these responses.
5       Responding Party objects to the definitions of "YOU," "YOUR," "YOURS,"
6   and "CHIEF OF POLICE" to the extent they include the Los Angeles Police
7   Department, its agents and employees.  The definition is overbroad, and in
8   conjunction with the requests for production, is unduly burdensome, oppressive and
9   expensive in that it calls for documents from several thousand employees.
10  However, in the interests of providing substantive responses to the requests,
11  Responding Party will interpret the terms "YOU," "YOUR," "YOURS" and
12  "CHIEF OF POLICE" to refer to Responding Party.  Likewise, requests for
13  production will be interpreted as requests for documents currently in the possession,
14  custody and control of Responding Party.
15      This preliminary statement is incorporated into each of the responses set forth
16  below.
17      Responding Party, CHARLES BECK, hereby responds to Plaintiffs' Request
18  as follows:

### RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

YOUR current curriculum vitae and/or resume.

**RESPONSE TO REQUEST NO. 1:**

Responding Party will comply with this request.  See Exhibit 1, attached.

**REQUEST NO. 2:**

The complete contents of any file maintained by YOU regarding
PLAINTIFFS.

2

Exhibit 18
Page 132

1   **RESPONSE TO REQUEST NO. 2:**

2         Objection; to the extent the request refers to files concerning this lawsuit, it

3   calls for documents that are subject to attorney-client and attorney work product

4   privileges.  To the extent the request calls for files that reflect ongoing investigations

5   of criminal conduct, it calls for privileged official information.  Responding Party

6   will not produce any privileged documents.  Subject to the foregoing objections,

7   after a diligent inquiry, Responding Party is unable to locate any responsive, non-

8   privileged files in his possession.  However, non-privileged documents regarding

9   Plaintiffs that are in the possession of LAPD have been produced in discovery

10  responses from the City of Los Angeles and will not be reproduced herein.

11  **REQUEST NO. 3:**

12        Every DOCUMENT responsive to the October 30, 2013 Order of United

13  States Magistrate Judge McDermott, that YOU produce all documents that set forth

14  the reasons why YOU did not instruct the LOS ANGELES POLICE

15  DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS.

16

17  **RESPONSE TO REQUEST NO. 3:**

18        Objection; this request misstates the Memorandum Opinion and Order re:

19  Motion for Protective Order issued October 30, 2013.  Further, it assumes facts not

20  in evidence, and to the extent it calls for confidential communications between

21  Responding Party and counsel, calls for documents that are protected by attorney-

22  client privilege.  However, subject to and without waiving these objections, after a

23  diligent inquiry, Responding Party is unable to locate any responsive, non-privileged

24  documents in his possession.

25

26  **REQUEST NO. 4:**

27        Every DOCUMENT responsive to the October 30, 2013 Order of United

28  States Magistrate Judge McDermott, that YOU produce all documents that set forth

3

Exhibit 18
Page 133

1  the reasons that the CITY did not instruct the LOS ANGELES POLICE

2  DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS.

3

4  **RESPONSE TO REQUEST NO. 4:**

5      Objection; this request misstates the Memorandum Opinion and Order re:

6  Motion for Protective Order issued October 30, 2013.  Further, it assumes facts not

7  in evidence, and to the extent it calls for confidential communications between

8  Responding Party and counsel, calls for documents that are protected by attorney-

9  client privilege.  However, subject to and without waiving these objections, after a

10  diligent inquiry, Responding Party is unable to locate any responsive, non-privileged

11  documents in his possession.

12

13  **REQUEST NO. 5:**

14      Every DOCUMENT responsive to the October 30, 2013 Order of United

15  States Magistrate Judge McDermott, that YOU produce all "relevant non-privileged

16  emails regarding *Colonia Chiques* and the gang injunction curfews to or from

17  [YOU]."

18  **RESPONSE TO REQUEST NO. 5:**

19      Objection; this request misstates the Memorandum Opinion and Order re:

20  Motion for Protective Order issued October 30, 2013.  Further, it assumes facts not

21  in evidence, and to the extent it calls for confidential communications between

22  Responding Party and counsel, calls for documents that are protected by attorney-

23  client privilege.  However, subject to and without waiving these objections, after a

24  diligent inquiry, Responding Party is unable to locate any responsive, non-privileged

25  documents in his possession.

26

27  **REQUEST NO. 6:**

28      Every DOCUMENT in YOUR possession, REGARDING YOUR authority to

4

Exhibit 18
Page 134

1  forbid YOUR officers from enforcing the curfew provisions of THE

2  INJUNCTIONS, from October 15, 2007 to the present.

3

4  **RESPONSE TO REQUEST NO. 6:**

5      Objection; vague, ambiguous and unintelligible.  Responding Party is unable

6  to comply with this request without clarification.

7

8  **REQUEST NO. 7:**

9      Every DOCUMENT generated, maintained or received by YOU on and

10  between October 15, 2007 through the date of your response to this request, relating

11  to policies, procedures, and/or practices REGARDING how the CITY OF LOS

12  ANGELES identifies, determines, and/or selects which PERSONS are subject to

13  THE INJUNCTIONS, including, but not limited to, which PERSONS shall be

14  served with THE INJUNCTIONS.

15

16  **RESPONSE TO REQUEST NO. 7:**

17      Objection; vague, ambiguous, overbroad, and unduly burdensome, oppressive

18  and expensive.  Further, to the extent it calls for confidential communications

19  between Responding Party and counsel, this request seeks documents protected by

20  attorney-client privilege.  However, subject to and without waiving these objections,

21  after a diligent inquiry, Responding Party is unable to locate any responsive, non-

22  privileged documents in his possession.

23  **REQUEST NO. 8:**

24      Every DOCUMENT generated, maintained or received by the CITY OF LOS

25  ANGELES on and between October 15, 2007 through the date of your response to

26  this request, relating to policies, procedures, and/or practices regarding how the

27  CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS

28  are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS

Exhibit 18
Page 135

1  shall be served with an INJUNCTIONS.

2

3  **RESPONSE TO REQUEST NO. 8:**

4  Objection; this request seeks documents that are in the possession, custody

5  and control of the City of Los Angeles rather than Responding Party. Responding

6  Party will not comply with this request.

7

8  **REQUEST NO. 9:**

9  Every DOCUMENT generated, maintained or received by YOUR office on

10  and between October 15, 2007 through the date of your response to this request,

11  relating to policies, procedures, and/or practices regarding how the CITY OF LOS

12  ANGELES identifies, determines, and/or selects which PERSONS are subject to

13  THE INJUNCTIONS, including, but not limited to, which PERSONS shall be

14  served with an INJUNCTIONS.

15  **RESPONSE TO REQUEST NO. 9:**

16  Objection; vague, ambiguous, overbroad, and unduly burdensome, oppressive

17  and expensive. Further, to the extent it calls for confidential communications

18  between Responding Party and counsel, this request seeks documents protected by

19  attorney-client privilege. However, subject to and without waiving these objections,

20  after a diligent inquiry, Responding Party is unable to locate any responsive, non-

21  privileged documents in his possession.

22

23  **REQUEST NO. 10:**

24  Every DOCUMENT generated, maintained or received by YOU on and

25  between October 15, 2007 through the date of your response to this request,

26  regarding and/or relating to policies, procedures, and/or practices regarding the

27  enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF

28  LOS ANGELES.

6

Exhibit 18
Page 136

1  **RESPONSE TO REQUEST NO. 10:**

2      Objection; vague, ambiguous, overbroad, and unduly burdensome, oppressive

3  and expensive.  Further, to the extent it calls for confidential communications

4  between Responding Party and counsel, this request seeks documents that are

5  protected by attorney-client privilege.  However, subject to and without waiving

6  these objections, after a diligent inquiry, Responding Party is unable to locate any

7  responsive, non-privileged documents in his possession.

8

9  **REQUEST NO. 11:**

10      Every DOCUMENT REGARDING Plaintiff Alberto Cazarez.

11

12  **RESPONSE TO REQUEST NO. 11:**

13      Objection; to the extent the request calls for confidential communications

14  between Responding Party and his counsel, it calls for documents protected by

15  attorney-client privilege.  To the extent the request calls for documents that reflect

16  ongoing investigations of criminal conduct, it calls for privileged official

17  information.  Responding Party will not produce any privileged documents.  Subject

18  to the foregoing objections, after a diligent inquiry, Responding Party is unable to

19  locate any responsive, non-privileged documents in his possession.  However, non-

20  privileged documents regarding Plaintiffs that are in the possession of LAPD have

21  been produced in discovery responses from the City of Los Angeles and will not be

22  reproduced herein.

23  **REQUEST NO. 12:**

24      Every DOCUMENT REGARDING Plaintiff Christian Rodriguez.

25

26  **RESPONSE TO REQUEST NO. 12:**

27      Objection; to the extent the request calls for confidential communications

28  between Responding Party and his counsel, it calls for documents that are protected

Exhibit 18
Page 137

by attorney-client privilege.  To the extent the request calls for documents that reflect ongoing investigations of criminal conduct, it calls for privileged official information.  Responding Party will not produce any privileged documents.  Subject to the foregoing objections, after a diligent inquiry, Responding Party is unable to locate any responsive, non-privileged documents in his possession.  However, non-privileged documents regarding Plaintiffs that are in the possession of LAPD have been produced in discovery responses from the City of Los Angeles and will not be reproduced herein.

**REQUEST NO. 13:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Anne Tremblay about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

**RESPONSE TO REQUEST NO. 13:**

Objection; this request calls for documents that contain privileged attorney-client communications.  Responding Party will not produce any such privileged documents.  However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive, non-privileged documents in his possession.

**REQUEST NO. 14:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the Mayor of the CITY about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY.

Exhibit 18
Page 138

**RESPONSE TO REQUEST NO. 14:**

Objection; vague and ambiguous.  However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive documents in his possession.

**REQUEST NO. 15:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, relating and/or relating to COMMUNICATIONS with defendant Carmen Trutanich about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY.

**RESPONSE TO REQUEST NO. 15:**

Objection; this request calls for documents that contain privileged attorney-client communications.  Responding Party will not produce any such privileged documents.  However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive, non-privileged documents in his possession.

**REQUEST NO. 16:**

Every DOCUMENT generated, maintained or received by the YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Assistant Chief Earl Paysinger about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

**RESPONSE TO REQUEST NO. 16:**

Objection; vague and ambiguous.  However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any

9

Exhibit 18
Page 139

responsive documents in his possession.

**REQUEST NO. 17:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with William J. Hart about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

**RESPONSE TO REQUEST NO. 17:**

Objection; vague and ambiguous. However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive documents in his possession.

**REQUEST NO. 18:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in the LOS ANGELES POLICE DEPARTMENT about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY.

**RESPONSE TO REQUEST NO. 18:**

Objection; vague and ambiguous. However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive documents in his possession.

**REQUEST NO. 19:**

Every DOCUMENT generated, maintained or received by YOU on and

10

Exhibit 18
Page 140

between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Assistant Chief Earl Paysinger REGARDING Operations Order No. 3 dated August 2, 2012, and which subject line reads: Modification of Enforcement of Four Provisions Contained in Permanent Gang Injunctions.

**RESPONSE TO REQUEST NO. 19:**

Objection; vague and ambiguous. However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive documents in his possession.

**REQUEST NO. 20:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in the LOS ANGELES POLICE DEPARTMENT REGARDING Operations Order No. 3 dated August 2, 2012, and which subject line reads: Modification of Enforcement of Four Provisions Contained in Permanent Gang Injunctions.

**RESPONSE TO REQUEST NO. 20:**

Objection; vague and ambiguous. However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive documents in his possession.

**REQUEST NO. 21:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the

11

Exhibit 18
Page 141

1  curfew provisions of THE INJUNCTIONS to any person.

2

3  **RESPONSE TO REQUEST NO. 21:**

4      Objection; vague and ambiguous.  However, subject to and without waiving

5  these objections, after a diligent inquiry, Responding Party is unable to locate any

6  responsive documents in his possession.

7

8  **REQUEST NO. 22:**

9      Every DOCUMENT generated, maintained or received by YOU on and

10  between October 15, 2007 through the date of your response to this request,

11  REGARDING the CITY'S policies and procedures for informing YOU when a

12  lawsuit has been filed which personally names YOU.

13

14  **RESPONSE TO REQUEST NO. 22:**

15      Objection; there is no good cause for this request, as it is immaterial to any

16  issue in this case and unlikely to lead to the discovery of relevant and admissible

17  evidence.  Responding Party will not comply with this request.

18  Dated: August 13, 2014   Respectfully submitted,

19

20          **MICHAEL N. FEUER,** City Attorney

21          **THOMAS H. PETERS,** Chief Assistant City Attorney
        **CORY M. BRENTE,** Assistant City Attorney

22

23          By: _____

24             **RENA M. SHAHANDEH,** Deputy City Attorney

25          *Attorneys for Defendants* CITY OF LOS ANGELES,
        CARMEN TRUTANICH, CHARLES BECK and

26          ANGEL GOMEZ

27

28

Exhibit 18
Page 142

# LOS ANGELES POLICE DEPARMENT



Charlie Beck serves as the Chief of Police for the second largest city in the United States, managing approximately 10,000 sworn and 3,000 civilian employees, encompassing an area of 473 square miles, a population of approximately 3.8 million people, and an annual budget where salaries exceed one billion dollars.

By promoting his predecessor's successful reengineering and reform effort, Chief Beck continues to evolve and refine those strategies to further the Department's position as the most effective and progressive law enforcement agency in the nation.



Chief Beck's law enforcement roots run deep with three generations of the Becks woven into the history of the Los Angeles Police Department. Chief Beck's father, George Beck, retired from the Los Angeles Police Department as a Deputy Chief; his sister, Megan, retired at the rank of Detective; his two children are Los Angeles Police Officers.

Chief Beck was appointed to the Los Angeles Police Department in March 1977 after serving two years in the Los Angeles Police Reserve Corps. Chief Beck steadily rose through the ranks of the Department and was assigned as the Chief of Detectives, Detective Bureau, prior to his appointment as the 56th Chief of Police of the Los Angeles Police Department.

"COPS COUNT. CHARACTER COUNTS."



"DO THE RIGHT THING AND YOU CAN BE THE DIFFERENCE."

Exhibit - 1 - Page - 13

Exhibit 18
Page 143

# Los Angeles Police Deparment



Chief Charlie Beck was appointed Chief of the Los Angeles Police Department in November 2009. Chief Beck oversees the third largest police department in the United States, managing 10,000 sworn officers and 3,000 civilian employees, encompassing an area of 473 square miles, a population of approximately 3.8 million people, and an annual budget that exceeds one billion dollars. Having facilitated his predecessor's successful reengineering and reform effort, Chief Beck continues to evolve and refine those strategies to further the Department's ascendancy to the pinnacle of 21st Century Policing. Major components of this endeavor include the mitigation of crime, the reduction of gang violence, the containment of terrorism, and the continuation of the reforms that brought the Department into compliance with the Consent Decree.

Chief Beck was born in Long Beach, California, in 1953. He was educated locally and attended California State University at Long Beach, where he graduated with a Baccalaureate Degree in Occupational Studies-Vocational Arts. Chief Beck was appointed to the Los Angeles Police Department in March 1977 after serving two years with the Los Angeles Police Reserve Corps. In June 1984, he was promoted to Sergeant, to Lieutenant in April 1993, to Captain in July 1999, and Commander in April 2005. In August 2006, he achieved the rank of Deputy Chief, the same rank his father, a retired Los Angeles Police Officer, had attained.

As an officer, Chief Beck's patrol assignments have included Rampart, Southeast, Pacific and Hollywood Areas. As a sergeant, his assignments included Harbor and Southwest Patrol, South Bureau C.R.A.S.H. and Internal Affairs Division. Upon being promoted to captain, he was initially assigned to Southeast Division followed by terms as the Commanding Officer of Juvenile Division, Central Area and finally Rampart Area. As a Commander, he was the Assistant to the Director, Office of Operations. Upon his promotion to Deputy Chief, he assumed command of Operations-South Bureau. Chief Beck went on to become Chief of Detectives, where he implemented innovative, far ranging and visionary changes to the Detective Bureau.

Chief Beck is renowned for his ability to forge traditional policing methods, community outreach programs, tempered with the input of diverse stakeholders to form enduring crime abatement programs. During Chief Beck's tenure as Central Area's Commanding Officer he formulated the original Safer Cities Initiative. This program brought together a coalition of City Department, Council Offices, homeless advocacy groups, and service providers to provide shelter and mitigate crime perpetrated against the homeless. This phalanx of governmental and private agencies became a model of efficiency and has been replicated nationally.

Exhibit - 1 - Page - 14

Exhibit 18
Page 144

# Los Angeles Police Deparment

Chief Beck was also charged with reforming the beleaguered Rampart Area in the aftermath of the Rafael Perez scandal. Chief Beck utilized inspirational leadership fostering change from the roots of Department and up, ensuring all changes are evolutionary and withstand the test of time. Effecting change from the bottom to the top of the chain of command ensures a long lasting institutional change.

Chief Beck also built community and racial harmony through the elusive goal of transparency and effective constitutional policing. The techniques Chief Beck employed are well-documented in the Blue Ribbon Rampart Review Panel's report to the Police Commission entitled, Rampart Reconsidered: the Search for Real Reform Seven Years Later. The Panel reviewed the lessons learned and missed in the aftermath of the Rampart crisis and recommended that the department follow the community policing leadership model used by Chief Beck and his team in his successful turnaround of the Rampart Area.

While the Commanding Officer of Rampart Area, Chief Beck was also able to form an alliance of community and political groups to reclaim MacArthur Park for the citizens of Los Angeles. This effort involved the support and funding from a diverse group of public and private entities. This included the City Attorney, the Mayor's Office, the Local Council Office, the United States Forest Department, the Department of Recreation and Parks, the Central American Resource Center, multiple businesses and the general public. Stakeholders shared the goal of eliminated crime within the park boundaries and reclaiming it for recreation. Initially, public safety was restored and then a "buy-in" for officers assigned to Rampart was created. Public and private funds enable the purchase of a closed circuit television system. The park was then revitalized through tree trimming, lawns reseeded, lights repaired, and facilities enhanced. Soon crime was reduced to historic lows and families returned to the park in droves. The project was the essence of community policing, received national recognition, and was awarded the Webber Safety Award for Community Policing.

Another change enacted by Chief Beck was the melding of Gang Operations Support Division and Narcotics Division into Gang and Narcotics Division. This new Division facilitates, the efficient targeting and dismantling of narcotics trafficking and violence by gangs and effectively undermines the gang's ability to perpetuate as an ongoing criminal enterprise. By bringing the expertise of both gang and narcotics detectives together, their investigative efforts are expanded in a synergetic effort directed at targeting the gang's infrastructure and ability to profit from illicit narcotics and firearms sales, resulting in reduced gang violence.

Chief Beck is a past Director and President of the Los Angeles Police Relief Association. He competes regularly in local motocross events. He is also a past Police and Fire Motocross National Champion and has won numerous medals in state, national and international competitions. Chief Beck is married with three children and two grandchildren. Chief Beck's children are also Los Angeles Police Officers.

Exhibit - 1 - Page - 15

Exhibit 18
Page 145



Chief Charlie Beck was appointed Chief of the Los Angeles Police Department in November 2009. Chief Beck oversees the third largest police department in the United States, managing 10,000 sworn officers and 3,000 civilian employees, encompassing an area of 473 square miles, a population of approximately 3.8 million people, and an annual budget that exceeds one billion dollars. Having facilitated his predecessor's successful reengineering and reform effort, Chief Beck continues to evolve and refine those strategies to further the Department's ascendancy to the pinnacle of 21st Century Policing. Major components of this endeavor include the mitigation of crime, the reduction of gang violence, the containment of terrorism, and the continuation of the reforms that brought the Department into compliance with the Consent Decree.

Chief Beck was born in Long Beach, California, in 1953. He was educated locally and attended California State University at Long Beach, where he graduated with a Baccalaureate Degree in Occupational Studies-Vocational Arts. Chief Beck was appointed to the Los Angeles Police Department in March 1977 after serving two years with the Los Angeles Police Reserve Corps. In June 1984, he was promoted to Sergeant, to Lieutenant in April 1993, to Captain in July 1999, and Commander in April 2005. In August 2006, he achieved the rank of Deputy Chief, the same rank his father, a retired Los Angeles Police Officer, had attained.

As an officer, Chief Beck's patrol assignments have included Rampart, Southeast, Pacific and Hollywood Areas. As a sergeant, his assignments included Harbor and Southwest Patrol, South Bureau C.R.A.S.H. and Internal Affairs Division. Upon being promoted to captain, he was initially assigned to Southeast Division followed by terms as the Commanding Officer of Juvenile Division, Central Area and finally Rampart Area. As a Commander, he was the Assistant to the Director, Office of Operations. Upon his promotion to Deputy Chief, he assumed command of Operations-South Bureau. Chief Beck went on to become Chief of Detectives, where he implemented innovative, far ranging and visionary changes to the Detective Bureau.

Chief Beck is renowned for his ability to forge traditional policing methods, community outreach programs, tempered with the input of diverse stakeholders to form enduring crime abatement programs. During Chief Beck's tenure as Central Area's Commanding Officer he formulated the original Safer Cities Initiative. This program brought together a coalition of City Department, Council Offices, homeless advocacy groups, and service providers to provide shelter and mitigate crime perpetrated against the homeless. This phalanx of governmental and private agencies became a model of efficiency and has been replicated nationally.

Chief Beck was also charged with reforming the beleaguered Rampart Area in the aftermath of the Rafael Perez scandal. Chief Beck utilized inspirational leadership fostering change from the roots of Department and up, ensuring all changes are evolutionary and withstand the test of time. Effecting change from the bottom to the top of the chain of command ensures a long lasting institutional change. Chief Beck also built community and racial harmony through the elusive goal of transparency and effective constitutional policing. The techniques Chief Beck employed

Exhibit - 1 - Page - 16

Exhibit 18
Page 146

are well-documented in the Blue Ribbon Rampart Review Panel's report to the Police Commission entitled, *Rampart Reconsidered: the Search for Real Reform Seven Years Later*. The Panel reviewed the lessons learned and missed in the aftermath of the Rampart crisis and recommended that the department follow the community policing leadership model used by Chief Beck and his team in his successful turnaround of the Rampart Area.

While the Commanding Officer of Rampart Area, Chief Beck was also able to form an alliance of community and political groups to reclaim MacArthur Park for the citizens of Los Angeles. This effort involved the support and funding from a diverse group of public and private entities. This included the City Attorney, the Mayor's Office, the Local Council Office, the United States Forest Department, the Department of Recreation and Parks, the Central American Resource Center, multiple businesses and the general public. Stakeholders shared the goal of eliminated crime within the park boundaries and reclaiming it for recreation. Initially, public safety was restored and then a "buy-in" for officers assigned to Rampart was created. Public and private funds enable the purchase of a closed circuit television system. The park was then revitalized through tree trimming, lawns reseeded, lights repaired, and facilities enhanced. Soon crime was reduced to historic lows and families returned to the park in droves. The project was the essence of community policing, received national recognition, and was awarded the Webber Safety Award for Community Policing.

Another change enacted by Chief Beck was the melding of Gang Operations Support Division and Narcotics Division into Gang and Narcotics Division. This new Division facilitates, the efficient targeting and dismantling of narcotics trafficking and violence by gangs and effectively undermines the gang's ability to perpetuate as an ongoing criminal enterprise. By bringing the expertise of both gang and narcotics detectives together, their investigative efforts are expanded in a synergetic effort directed at targeting the gang's infrastructure and ability to profit from illicit narcotics and firearms sales, resulting in reduced gang violence.

Chief Beck is a Director and past president of the Los Angeles Police Relief Association. He competes regularly in local motocross events. He is also a past Police and Fire Motocross National Champion and has won numerous medals in state, national and international competitions. Chief Beck is married with three children. Two of Chief Beck's children are also Los Angeles Police Officers.

Exhibit - 1 - Page - 17

Exhibit 18
Page 147

# LOS ANGELES POLICE DEPARMENT



Charlie Beck serves as the Chief of Police for the second largest city in the United States, managing approximately 10,000 sworn and 3,000 civilian employees, encompassing an area of 473 square miles, a population of approximately 3.8 million people, and an annual budget where salaries exceed one billion dollars.

"COPS COUNT, CHARACTER COUNTS."



"DO THE RIGHT THING AND YOU CAN BE THE DIFFERENCE."

Exhibit - 1 - Page - 18

Exhibit 18
Page 148

## PROOF OF SERVICE

I, MARGARIT AVESYAN, declare as follows:
At the time of service I was over 18 years of age and not a party to this action.
My business address is 200 N. Main Street, 600 City Hall East, Los Angeles, CA 90012, which is the County, City and State where this mailing occurred.

On August 13, 2014 I served the document(s) described as:

**DEFENDANT CHARLES BECK'S RESPONSES TO PLAINTIFF CHRISTIAN RODRIGUEZ'S REQUEST FOR PRODUCTION OF DOCUMENTS  SET NUMBER ONE**

on all interested parties in this action:

**Plaintiffs' Counsel**

**Olu K. Orange, Esq.**
**ORANGE LAW OFFICES**
**3435 Wilshire Boulevard, Suite 2900**
**Los Angeles, California 90010**
**(213) 736-9900 &  (213) 417-8800 Fax**

**Co-Counsel**

**Cindy Panuco, Esq.**
**Dan Stormer, Esq.**
**Anne Richardson, Esq.**
**HADSELL  STORMER  RICHARDSON**
**& RENICK  LLP**
**128 North Fair Oaks Avenue, Suite 204**
**Pasadena, California 91103-3645**
**(626) 585-9600 & (626) 577-7079 Fax**

**Atty. For Defenant  Allan Nadir**

**Janine K. Jeffery, Esq.**
**REILY & JEFFERY, INC.**
**19839 Nordhoff Street**
**Northridge, CA 91324**
**(818) 350-6282**
**(818) 350-6283 Fax**
**jjeffery@reilyjeffery.com**

I served a true copy of the document(s) above by:

[  ] Personally delivering it to the person(s) indicated below in the manner provided in FRCivP 5(b).

[ x ] Depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the address(es) above.

Executed on August 13, 2014, at Los Angeles, California.

19

Exhibit 18
Page 149

1    [  ]  I hereby certify that I am a member of the Bar of the United States District
Court, Central District of California.

2

3    **[X]**  I hereby certify that I am employed in the office of a member of the Bar of
this Court at whose direction the service was made.

4    **[X]**  I hereby certify under the penalty of perjury that the foregoing is true and
correct.

5

6

7                                    MARGARIT AVESYAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    20

Exhibit 18
Page 150

1  Olu K. Orange, Esq. , SBN: 213653
2  ORANGE LAW OFFICES
3  3435 Wilshire Blvd., Suite 2900
   Los Angeles,  California 90010
4  Tel: (213) 736-9900 / Fax: (213) 417-8800
   Email: oluorange@att.net
5
6  Dan Stormer, Esq., SBN: 101967
   Anne Richardson, Esq., SBN: 151541
7  Cindy Pánuco, Esq., SBN: 266921
8  HADSELL STORMER
         RICHARDSON & RENICK, LLP
9  128 North Fair Oaks Avenue
10 Pasadena, California 91103-3645
   Tel: (626) 585-9600; Fax: (626) 577-7079
11 Emails: dstormer@hadsellstormer.com;
12 arichardson@hadsellstormer.com; cpanuco@hadsellstormer.com

13 *Attorneys for Plaintiffs*

14
15              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16

| 17 | CHRISTIAN RODRIGUEZ, ALBERTO CAZAREZ, individually and as class representatives | Case No.: CV11-01135 DMG (JEMx) |
|---|---|---|
| 18 | | |
| 19 | *Plaintiffs,* | **PLAINTIFF CHRISTIAN RODRIGUEZ'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CARMEN TRUTANICH, SET ONE** |
| 20 | vs. | |
| 21 | | |
| 22 | CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLES BECK, ALLAN NADIR, ANGEL GOMEZ AND DOES 1 THROUGH 10. | |
| 23 | | Complaint Filed:   February 7, 2011 |
| 24 | | Trial Date:         April 28, 2015 |
| 25 | *Defendants.* | |

26 PROPOUNDING PARTY:    Plaintiff Christian Rodriguez
27 RESPONDING PARTY:     Defendant Carmen Trutanich
28 SET NUMBER:           One (Nos. 1-20)

                                    1

PLTF'S REQUEST FOR PRODUCTION
OF DOCS TO DEFT TRUTANICH, SET ONE

Exhibit 19
Page 151

1     **PLEASE TAKE NOTICE** that, pursuant Rule 34 of the Federal Rules of

2 Civil Procedure, Defendant Carmen Trutanich is hereby requested to produce for

3 inspection and copying the documents described below by no later than thirty days

4 following the service of this request, at the offices of Hadsell Stormer Richardson &

5 Renick, LLP located at 128 North Fair Oaks Avenue, Pasadena, California 91103,

6 unless a different time has been ordered by the Court, or applies per rule.

## I.

## DEFINITIONS AND INSTRUCTIONS

**A.**    **Definitions**

10    1.    As used herein, the word "ACTION" refers to this lawsuit entitled

11 *Rodriguez v. City of Los Angeles et al.,* Case No.: CV11-01135 DMG (JEMx).

12    2.    The term "DOCUMENT" shall include all things defined in Federal

13 Rule of Evidence 1001, and Federal Rule of Civil Procedure 34, and includes,

14 without limitation, all written, recorded, transcribed, punched, taped (including

15 computer tapes), filmed, photographed, videotaped, tape-recorded, printed or other

16 matter, of every kind and description, however produced or reproduced, and however

17 preserved, including information contained on computer disk, CD-ROM, computer

18 hard drive, server, microfiche, film, videotape, audiotape or otherwise, including but

19 not limited to the original and any copy and all drafts, of any letter, memorandum,

20 telegram, report, manual, bulletin, study, record, statement, message, hand written

21 note, calendar, diary, working paper, sketch, computer tape, data sheet, data card,

22 tape recording, or any other written, printed or recorded matter, books, letters,

23 pamphlets, correspondence, memoranda, reports, manuals, training bulletins, Special

24 Orders, crime reports, preliminary investigation reports, investigation reports, arrest

25 reports, evidence reports, equipment reports, vehicle reports, sergeant's reports,

26 sergeant's daily reports, station commander's reports, supervisor's reports, watch

27 commander's reports, lieutenant's reports, use of force reports, follow-up reports,

28 Daily Work Sheet reports, Daily Field Activities Reports, employee injury reports,

2

1   telephone calls, radio transmissions, surveillance video, surveillance audio, mobile

2   audio-video unit recordings, personnel complaint investigations, citizen complaint

3   investigations, chronologies, logs, notes, drafts of any written document, minutes of

4   meetings, interview tapes and transcriptions, California Tort Claim investigations and

5   all other physically preserved documentary information, regardless of the medium of

6   preservation, however produced or reproduced, from whatever source obtained, in

7   the defendant's possession or control, or subject to its control, or to which it has

8   access. "DOCUMENT" shall also include originals and all non-identical copies.

9   Copies which differ by reason of notations or electronic encodings thereon are

10  considered "nonidentical" copies.

11       3.    The term "YOU," "YOUR," "YOURS" and/or "CITY ATTORNEY"

12  means defendant CARMEN TRUTANICH and includes the LOS ANGELES CITY

13  ATTORNEY'S OFFICE and its agents and employees.

14       4.    The term "CITY" or ""CITY OF LOS ANGELES" means defendant

15  City of Los Angeles and includes the LOS ANGELES CITY ATTORNEY'S

16  OFFICE, the LOS ANGELES POLICE DEPARTMENT and all of its agents and

17  employees.

18       5.    As used herein, the term "PLAINTIFFS" refers to Plaintiffs Christian

19  Rodriguez and Alberto Cazarez and others similarly situated.

20       6.    "PERSON" includes a natural person, firm, association, organization,

21  partnership, business, trust, corporation, entity or public entity.

22       7.    When used to refer to PERSONS, the term "IDENTIFY" and/or

23  "IDENTITY" means the first and last name, date of birth, rank and assignment, home

24  and business ADDRESS, and home and business telephone numbers of such

25  PERSON.

26       8.    When used to refer to DOCUMENT, the term "IDENTIFY" and/or

27  "IDENTITY" means the title of the DOCUMENT, a description of the contents of

28  the DOCUMENT, the number of pages of the DOCUMENT, and the IDENTITY of

3

PLTF'S REQUEST FOR PRODUCTION
OF DOCS TO DEFT TRUTANICH, SET ONE

Exhibit 19
Page 153

1   each person who has possession of the original and any copy of the DOCUMENT.

2        9.    The terms "REGARDING" or "REGARD" with respect to any given

3   subject matter means, without limitation, anything that, in whole or in part, analyzes,

4   comments upon  comprises, concerns, constitutes, contains, describes, discusses,

5   embodies, evidences, explains, identifies, mentions, reflects, refers to, relates to,

6   responds to, states, summarizes, or is in any way relevant to the particular subject

7   matter identified.

8        10.   "THE INJUNCTIONS" means and includes only gang injunctions from

9   the following Los Angeles Superior Court cases: BC397522; BC332713; BC305434;

10   BC313309; BC319166; BC326016; BC287137; BC335749; LC020525; BC267153;

11   BC358881; SC056980; BC359945; NC030080; BC330087; BC359944; BC282629;

12   LC048292; BC311766; BC351990; BC298646; BC349468; BC319981; SC060375;

13   SC057282; and BC353596.

14   **B.**    **Instructions**

15        1.    <u>Documents withheld.</u>

16       If any DOCUMENT is withheld under a claim of privilege or other protection,

17   so as to aid the Court and the parties hereto to determine the validity of the claim of

18   privilege or other protection, please provide the following information with respect to

19   any such DOCUMENT:

20            a.    The identity of the person(s) who prepared the DOCUMENT,

21                  who signed it, and over whose name it was sent or issued;

22            b.    The identity of the person(s) to whom the DOCUMENT was

23                  directed;

24            c.    The nature and substance of the DOCUMENT with sufficient

25                  particularity to enable the Court and parties hereto to identify the

26                  DOCUMENT;

27            d.    The date of the DOCUMENT;

28

4

1    e.    The identity of the person(s) who has possession of, custody of, or

2    control over the DOCUMENT and each copy thereof;

3    f.    The identity of each person to whom copies of the DOCUMENT

4    were furnished;

5    g.    The number of pages;

6    h.    The basis on which any privilege or other protection is claimed,

7    and a statement as to why the privilege is applicable as well as the

8    information required by Vaughn v. Rosen, 484 F.2d 820 (D.C.

9    Cir. 1973); and

10    i.    Whether any non-privileged or non-protected matter is included

11    in the DOCUMENT.

12    2.    Undue Burden.

13    If YOU claim that any request calls for withholding of DOCUMENTS, things

14    or evidence, or poses an undue burden, prompt notice should be given to

15    PLAINTIFFS as to the reason for that claim. PLAINTIFFS request the opportunity to

16    review any such difficulty with the defendants to facilitate prompt production of

17    available materials and a practicable and timely plan for production of producible

18    materials.

19    3.    Partial Production.

20    Whenever YOU object to a particular request, or portion thereof, YOU must

21    produce all DOCUMENTS called for which are not subject to that objection.

22    Similarly, wherever a DOCUMENT is not produced in full, please state with

23    particularity the reason or reasons it is not being produced in full, and describe, to the

24    best of its knowledge, information and belief and with as much particularity as

25    possible, those portions of the DOCUMENT that are not produced.

26    4.    Orderly Response.

27    Wherever it is reasonably practicable, please produce DOCUMENTS in such a

28    manner as will facilitate their identification with the particular request or category of

5

PLTF'S REQUEST FOR PRODUCTION
OF DOCS TO DEFT TRUTANICH, SET ONE

Exhibit 19
Page 155

1    requests to which they are responsive.

2         5.   Construction of "and" and "or".

3         As used herein, the words "and" and "or" shall be construed both

4    conjunctively and disjunctively, and each shall include the other wherever such dual

5    construction will serve to bring within the scope of these demands any DOCUMENT

6    which would otherwise not be brought within their scope.

7         6.   Construction of the Singular and Plural Forms.

8         As used herein, the singular form shall include the plural and vice versa

9    wherever such dual construction will serve to bring within the scope of these

10   demands any Document which would otherwise not be brought within their scope.

11        7.   When answering this demand for production, provide any and all

12   DOCUMENTS, things and/or evidence which is/are in YOUR control, within YOUR

13   dominion, or available to YOU, regardless of whether these documents are in YOUR

14   possession or are possessed by YOUR agents, servants, employees, attorneys,

15   independent contractors, representatives, or others from whom YOU are capable of

16   deriving information, documents and/or materials.

17                              **II.**

18                   **REQUESTS FOR PRODUCTION**

19   **REQUEST NO. 1:**

20        YOUR current curriculum vitae and/or resume.

21   **REQUEST NO. 2:**

22        The complete contents of any file maintained by YOU regarding

23   PLAINTIFFS.

24   **REQUEST NO. 3:**

25        Every DOCUMENT responsive to the October 30, 2013 Order of United

26   States Magistrate Judge McDermott, that YOU produce all documents which set

27   forth the reasons YOU did not instruct the LOS ANGELES POLICE

28   DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS.

6

PLTF'S REQUEST FOR PRODUCTION
OF DOCS TO DEFT TRUTANICH, SET ONE

Exhibit 19
Page 156

**REQUEST NO. 4:**

Every DOCUMENT responsive to the October 30, 2013 Order of United States Magistrate Judge McDermott, that YOU produce all documents which set forth the reasons YOUR office did not instruct the LOS ANGELES POLICE DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS.

**REQUEST NO. 5:**

Every DOCUMENT responsive to the October 30, 2013 Order of United States Magistrate Judge McDermott, that YOU produce all "relevant non-privileged emails regarding *Colonia Chiques* and the gang injunction curfews to or from [YOU]."

**REQUEST NO. 6:**

Every DOCUMENT generated, maintained or received by YOU REGARDING this lawsuit.

**REQUEST NO. 7:**

Every DOCUMENT generated, maintained or received by YOU REGARDING how YOU are informed when a lawsuit has been filed which personally names YOU as a defendant.

**REQUEST NO. 8:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTION.

**REQUEST NO. 9:**

Every DOCUMENT generated, maintained or received by the CITY OF LOS ANGELES on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the

7

PLTF'S REQUEST FOR PRODUCTION
OF DOCS TO DEFT TRUTANICH, SET ONE

Exhibit 19
Page 157

1  CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS

2  are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS

3  shall be served with an INJUNCTION.

4  **REQUEST NO. 10:**

5      Every DOCUMENT generated, maintained or received by YOUR office on

6  and between October 15, 2007 through the date of your response to this request,

7  relating to policies, procedures, and/or practices regarding how the CITY OF LOS

8  ANGELES identifies, determines, and/or selects which PERSONS are subject to

9  THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served

10 with an INJUNCTION.

11 **REQUEST NO. 11:**

12     Every DOCUMENT generated, maintained or received by YOU on and

13 between October 15, 2007 through the date of your response to this request,

14 regarding and/or relating to policies, procedures, and/or practices regarding the

15 enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS

16 ANGELES.

17 **REQUEST NO. 12:**

18     Every DOCUMENT REGARDING Plaintiff Alberto Cazarez.

19 **REQUEST NO. 13:**

20     Every DOCUMENT REGARDING Plaintiff Christian Rodriguez.

21 **REQUEST NO. 14:**

22     Every DOCUMENT generated, maintained or received by YOU on and

23 between October 15, 2007 through the date of your response to this request,

24 regarding and/or relating to COMMUNICATIONS with Anne Tremblay about

25 policies, procedures, and/or practices regarding the enforcement of the curfew

26 provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

27 ///

28 ///

8

PLTF'S REQUEST FOR PRODUCTION
OF DOCS TO DEFT TRUTANICH, SET ONE

Exhibit 19
Page 158

**REQUEST NO. 15:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the mayor of the CITY about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY.

**REQUEST NO. 16:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the Chief Charles Beck about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY.

**REQUEST NO. 17:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in YOUR office about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY.

**REQUEST NO. 18:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with any person in the LOS ANGELES POLICE DEPARTMENT about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY.

///

///

///

9

PLTF'S REQUEST FOR PRODUCTION
OF DOCS TO DEFT TRUTANICH, SET ONE

Exhibit 19
Page 159

**REQUEST NO. 19:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS to Anne Tremblay.

**REQUEST NO. 20:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS to any person.

DATED: June 30, 2014

Respectfully Submitted,

HADSELL STORMER

RICHARDSON & RENICK, LLP

By: _____

Cindy Pánuco
Attorney for the Plaintiffs

10

PLTF'S REQUEST FOR PRODUCTION
OF DOCS TO DEFT TRUTANICH, SET ONE

Exhibit 19
Page 160

1

**PROOF OF SERVICE**

2      I am employed in the county of Los Angeles, State of California.  I am over the
age of 18 and not a party to the within action; my business address is 128 N . Fair Oaks
3  Avenue, Pasadena, California  91103.

4      On June 30, 2014, I served the foregoing document described as: **PLAINTIFF
CHRISTIAN RODRIGUEZ'S REQUEST FOR PRODUCTION OF DOCUMENTS
5  TO DEFENDANT CARMEN TRUTANICH, SET ONE** on the interested parties in
this cause by placing true and correct copies thereof in envelopes addressed as follows:

6

7  | Rena M. Shahandeh, Esq. | **Attorneys for Defendants CITY** |
| Cory Brente, Esq. | **OF LOS ANGELES, CARMEN** |
| Bruce Monroe, Esq. | **TRUTANICH, CHARLES BECK,** |
| Los Angeles City Attorneys' Office | **and ANGEL GOMEZ** |
| 200 N. Main Street, 6th Fl., City Hall East | |
| Los Angeles, CA 90012-4119 | |
| Telephone: (213) 878-7047 | |
| Facsimile: (213) 978-8787 | |

12  __XX__        **BY PERSONAL SERVICE**

13        __XX__ I delivered such envelope by hand to the addressees listed above.

14

15        Executed on June 30, 2014, at Pasadena, California.

16  __XX__    (Federal)    I declare that I am employed in the office of a member of the bar of
this Court at whose direction the serve was made.

17

18        _____
David Hannah
19        Declarant

20

21

22

23

24

25

26

27

28

1

Exhibit 19
Page 161

## PROOF OF SERVICE

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks Avenue, Pasadena, California 91103.

On June 30, 2014, I served the foregoing document described as: **PLAINTIFF CHRISTIAN RODRIGUEZ'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CARMEN TRUTANICH, SET ONE** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

| | |
|---|---|
| Janine Jeffery, Esq.<br>REILY & JEFFERY<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>Telephone: (818) 350-6282<br>Facsimile: (818) 350-6283 | **Attorneys for Defendant ALLAN NADIR** |

<u>XX</u>   **BY MAIL**

<u>XX</u>   I deposited such envelope in the mail at Pasadena, California.  The envelope was mailed with postage thereon fully prepaid.

____   I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

Executed on June 30, 2014, at Pasadena, California.

<u>XX</u>   (Federal)   I declare that I am employed in the office of a member of the bar of this Court at whose direction the serve was made.

Jessica Valdenegro
Declarant

Exhibit 19
Page 162

1   **MICHAEL N. FEUER**, City Attorney - SBN 111529x
    **THOMAS H. PETERS,** Chief Assistant City Attorney - SBN 163388
2   **CORY M. BRENTE**, Assistant City Attorney – SBN 115453
    **RENA M. SHAHANDEH**, Deputy City Attorney - SBN 198072
3   200 North Main Street
    City Hall East, 6th Floor
4   Los Angeles, CA 90012
    Telephone: (213) 978-7047
5   Facsimile: (213) 978-8785
    E-mail: rena.shahandeh@lacity.org
6
    Attorneys for Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH,
7   CHARLES BECK AND ANGEL GOMEZ

8

9               UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12   CHRISTIAN RODRIGUEZ,         **CASE NO. CV11-01135 DMG (JEMx)**
    ALBERTO CAZAREZ, individually   *Assigned to Honorable Dolly M. Gee*
13   and as class representatives

14           Plaintiff,         **DEFENDANT CARMEN**
                      **TRUTANICH'S RESPONSES**
15       vs.                **TO PLAINTIFF CHRISTIAN**
                      **RODRIGUEZ'S REQUEST**
16   CITY OF LOS ANGELES, CARMEN   **FOR PRODUCTION**
    TRUTANICH, CHARLES BECK,     **OF DOCUMENTS**
17   ALLAN NADIR, ANGEL GOMEZ     **SET NUMBER ONE**
    AND DOES 1 THROUGH 10.
18
           Defendants.
19

20

21   **PROPOUNDING PARTY:**     **PLAINTIFF, CHRISTIAN RODRIGUEZ**

22   **RESPONDING PARTY:**      **DEFENDANT, CARMEN TRUTANICH**

23   **SET NUMBER:**            **ONE**

24

25           INTRODUCTORY NOTE AND GENERAL OBJECTIONS

26       These responses are made solely for the purpose of this action. These

27 responses are based upon a diligent investigation by Responding Party and upon

28 such information available as of the date on which these responses are made.

1

Exhibit 20
Page 163

Responding Party reserves the right to conduct further investigation and discovery and to offer at trial subsequently discovered evidence. Responding Party makes no incidental or implied admission regarding the contents of any document referred to in these responses.

Responding Party objects to the definitions of "YOU," "YOUR," "YOURS," and "CITY ATTORNEY" to the extent they include the Los Angeles City Attorney's Office, its agents and employees. The definition is overbroad, and in conjunction with the requests for production, calls for documents that are not in the possession, custody or control of Responding Party because Responding Party is no longer in office as the City Attorney for the City of Los Angeles. The definition also causes the requests to call for documents reflecting attorney-client communications and attorney work product. However, in the interests of providing substantive responses to the requests, Responding Party will interpret the terms "YOU," "YOUR," "YOURS" and "CITY ATTORNEY" to refer to Responding Party. Likewise, requests for production will be interpreted as requests for documents currently in the possession, custody and control of Responding Party.

This preliminary statement is incorporated into each of the responses set forth below.

Responding Party, CARMEN TRUTANICH, hereby responds to Plaintiffs' Request as follows:

## **RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:**

YOUR current curriculum vitae and/or resume.

**RESPONSE TO REQUEST NO. 1:**

Responding Party will comply with this request. See Exhibit 1, attached.

**REQUEST NO. 2:**

The complete contents of any file maintained by YOU regarding

2

Exhibit 20
Page 164

1  PLAINTIFFS.

2  **RESPONSE TO REQUEST NO. 2:**

3      Objection; to the extent the request refers to files concerning this lawsuit, it

4  calls for documents that are subject to attorney-client and attorney work product

5  privileges.  To the extent the request calls for files that reflect ongoing investigations

6  of criminal conduct, it calls for privileged official information.  Responding Party

7  will not produce any privileged documents.  Subject to the foregoing objections,

8  after a diligent inquiry, Responding Party is unable to locate any responsive, non-

9  privileged documents in his possession.  However, non-privileged documents

10  regarding Plaintiffs that are in the possession of the City Attorney's Office have

11  been produced in discovery responses from the City of Los Angeles and will not be

12  reproduced herein.

13

14  **REQUEST NO. 3:**

15      Every DOCUMENT responsive to the October 30, 2013 Order of United

16  States Magistrate Judge McDermott, that YOU produce all documents which set

17  forth the reasons YOU did not instruct the LOS ANGELES POLICE

18  DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS.

19  **RESPONSE TO REQUEST NO. 3:**

20      Objection; this request misstates the Memorandum Opinion and Order re:

21  Motion for Protective Order issued October 30, 2013.  Further, it assumes facts not

22  in evidence, and calls for confidential attorney-client communications and attorney

23  work product.  However, subject to and without waiving these objections, after a

24  diligent inquiry, Responding Party is unable to locate any responsive, non-privileged

25  documents in his possession.

26  **REQUEST NO. 4:**

27      Every DOCUMENT responsive to the October 30, 2013 Order of United

28  States Magistrate Judge McDermott, that YOU produce all documents which set

3

Exhibit 20
Page 165

forth the reasons YOUR office did not instruct the LOS ANGELES POLICE
DEPARTMENT to stop enforcing the curfew provisions of THE INJUNCTIONS.

**RESPONSE TO REQUEST NO. 4:**

   Objection; this request misstates the Memorandum Opinion and Order re:
Motion for Protective Order issued October 30, 2013.  Further, it assumes facts not
in evidence, and calls for confidential attorney-client communications and attorney
work product.  However, subject to and without waiving these objections, after a
diligent inquiry, Responding Party is unable to locate any responsive, non-privileged
documents in his possession.

**REQUEST NO. 5:**

   Every DOCUMENT responsive to the October 30, 2013 Order of United
States Magistrate Judge McDermott, that YOU produce all "relevant non-privileged
emails regarding *Colonia Chiques* and the gang injunction curfews to or from
[YOU]."

**RESPONSE TO REQUEST NO. 5:**

   Objection; this request misstates the Memorandum Opinion and Order re:
Motion for Protective Order issued October 30, 2013.  Further, it assumes facts not
in evidence, and calls for confidential attorney-client communications and attorney
work product.  However, subject to and without waiving these objections, after a
diligent inquiry, Responding Party is unable to locate any responsive, non-privileged
documents in his possession.


**REQUEST NO. 6:**

   Every DOCUMENT generated, maintained or received by YOU
REGARDING this lawsuit.

**RESPONSE TO REQUEST NO. 6:**

   Objection; this request seeks privileged attorney-client communications and
attorney work product.  Responding Party will not comply with this request.

4

Exhibit 20
Page 166

**REQUEST NO. 7:**

Every DOCUMENT generated, maintained or received by YOU REGARDING how YOU are informed when a lawsuit has been filed which personally names YOU as a defendant.

**RESPONSE TO REQUEST NO. 7:**

Objection; there is no good cause for this request, as it is immaterial to any issue in this case and unlikely to lead to the discovery of relevant and admissible evidence.  Responding Party will not comply with this request.

**REQUEST NO. 8:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS shall be served with an INJUNCTIONS.

**RESPONSE TO REQUEST NO. 8:**

Objection; vague, ambiguous, overbroad, and unduly burdensome, oppressive and expensive.  Further, this request seeks documents reflecting privileged attorney-client communications and attorney work product.  Subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive, non-privileged documents in his possession.

**REQUEST NO. 9:**

Every DOCUMENT generated, maintained or received by the CITY OF LOS ANGELES on and between October 15, 2007 through the date of your response to this request, relating to policies, procedures, and/or practices regarding how the CITY OF LOS ANGELES identifies, determines, and/or selects which PERSONS are subject to THE INJUNCTIONS, including, but not limited to, which PERSONS

5

Exhibit 20
Page 167

1   shall be served with an INJUNCTION.

2   **RESPONSE TO REQUEST NO. 9:**

3           Objection; this request seeks documents that are in the possession, custody

4   and control of the City of Los Angeles rather than Responding Party.  Responding

5   Party will not comply with this request.

6

7   **REQUEST NO. 10:**

8           Every DOCUMENT generated, maintained or received by YOUR office on

9   and between October 15, 2007 through the date of your response to this request,

10  relating to policies, procedures, and/or practices regarding how the CITY OF LOS

11  ANGELES identifies, determines, and/or selects which PERSONS are subject to

12  THE INJUNCTIONS, including, but not limited to, which PERSONS shall be

    served with an INJUNCTION.

13  **RESPONSE TO REQUEST NO. 10:**

14          Objection; vague, ambiguous and overbroad.  Further, this request seeks

15  documents that are in the possession, custody and control of the City of Los Angeles

16  rather than Responding Party.  Responding Party will not comply with this request.

17

18  **REQUEST NO. 11:**

19          Every DOCUMENT generated, maintained or received by YOU on and

20  between October 15, 2007 through the date of your response to this request,

21  regarding and/or relating to policies, procedures, and/or practices regarding the

22  enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF

23  LOS ANGELES.

24  **RESPONSE TO REQUEST NO. 11:**

25          Objection; vague, ambiguous and overbroad.  Further, this request seeks

26  documents reflecting privileged attorney-client communications and attorney work

27  product.  However, subject to and without waiving these objections, after a diligent

28  inquiry, Responding Party is unable to locate any responsive, non-privileged

6

Exhibit 20
Page 168

1  documents in his possession.

2

3  **REQUEST NO. 12:**

4      Every DOCUMENT REGARDING Plaintiff Alberto Cazarez.

5  **RESPONSE TO REQUEST NO. 12:**

6      Objection; to the extent the request refers to documents concerning this

7  lawsuit, it calls for documents that are subject to attorney-client and attorney work

8  product privileges.  To the extent the request calls for documents that reflect

9  ongoing investigations of criminal conduct, it calls for privileged official

10 information.  Responding Party will not produce any privileged documents.  Subject

11 to the foregoing objections, after a diligent inquiry, Responding Party is unable to

12 locate any responsive, non-privileged documents in his possession.  However, non-

13 privileged documents regarding Plaintiff Cazarez that are in the possession of the

14 City Attorney's Office have been produced in discovery responses from the City of

15 Los Angeles and will not be reproduced herein.

16 **REQUEST NO. 13:**

17     Every DOCUMENT REGARDING Plaintiff Christian Rodriguez.

18 **RESPONSE TO REQUEST NO. 13:**

19     Objection; to the extent the request refers to documents concerning this

20 lawsuit, it calls for documents that are subject to attorney-client and attorney work

21 product privileges.  To the extent the request calls for documents that reflect

22 ongoing investigations of criminal conduct, it calls for privileged official

23 information.  Responding Party will not produce any privileged documents.  Subject

24 to the foregoing objections, after a diligent inquiry, Responding Party is unable to

25 locate any responsive, non-privileged documents in his possession.  However, non-

26 privileged documents regarding Plaintiff Rodriguez that are in the possession of the

27 City Attorney's Office have been produced in discovery responses from the City of

28 Los Angeles and will not be reproduced herein.

7

Exhibit 20
Page 169

**REQUEST NO. 14:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with Anne Tremblay about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY OF LOS ANGELES.

**RESPONSE TO REQUEST NO. 14:**

Objection; vague and ambiguous.  Further, this request seeks documents reflecting privileged attorney-client communications and attorney work product. Responding Party will not produce privileged documents.  However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive, non-privileged documents in his possession.

**REQUEST NO. 15:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the mayor of the CITY about policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the CITY.

**RESPONSE TO REQUEST NO. 15:**

Objection; vague and ambiguous.  Further, this request seeks documents reflecting privileged attorney-client communications and attorney work product. Responding Party will not produce privileged documents.  However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive, non-privileged documents in his possession.

**REQUEST NO. 16:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to COMMUNICATIONS with the Chief Charles Beck

8

Exhibit 20
Page 170

1  about policies, procedures, and/or practices regarding the enforcement of the curfew

2  provisions of THE INJUNCTIONS by the CITY.

3  **RESPONSE TO REQUEST NO. 16:**

4       Objection; vague and ambiguous.  Further, this request seeks documents

5  reflecting privileged attorney-client communications and attorney work product.

6  Responding Party will not produce privileged documents.  However, subject to and

7  without waiving these objections, after a diligent inquiry, Responding Party is

8  unable to locate any responsive, non-privileged documents in his possession.

9

10  **REQUEST NO. 17:**

11       Every DOCUMENT generated, maintained or received by YOU on and

12  between October 15, 2007 through the date of your response to this request,

13  regarding and/or relating to COMMUNICATIONS with any person in YOUR office

14  about policies, procedures, and/or practices regarding the enforcement of the curfew

15  provisions of THE INJUNCTIONS by the CITY.

    **RESPONSE TO REQUEST NO. 17:**

16       Objection; vague and ambiguous.  Further, this request seeks documents

17  reflecting privileged attorney-client communications and attorney work product.

18  Responding Party will not produce privileged documents.  However, subject to and

19  without waiving these objections, after a diligent inquiry, Responding Party is

20  unable to locate any responsive, non-privileged documents in his possession.

21

22  **REQUEST NO. 18:**

23       Every DOCUMENT generated, maintained or received by YOU on and

24  between October 15, 2007 through the date of your response to this request,

25  regarding and/or relating to COMMUNICATIONS with any person in the LOS

26  ANGELES POLICE DEPARTMENT about policies, procedures, and/or practices

27  regarding the enforcement of the curfew provisions of THE INJUNCTIONS by the

28  CITY.

9

Exhibit 20
Page 171

**RESPONSE TO REQUEST NO. 18:**

Objection; vague and ambiguous. Further, this request seeks documents reflecting privileged attorney-client communications and attorney work product. Responding Party will not produce any privileged documents. However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive, non-privileged documents in his possession.

**REQUEST NO. 19:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS to Anne Tremblay.

**RESPONSE TO REQUEST NO. 19:**

Objection; vague and ambiguous. Further, this request seeks documents reflecting privileged attorney-client communications and attorney work product. Responding Party will not produce any privileged documents. However, subject to and without waiving these objections, after a diligent inquiry, Responding Party is unable to locate any responsive, non-privileged documents in his possession.

**REQUEST NO. 20:**

Every DOCUMENT generated, maintained or received by YOU on and between October 15, 2007 through the date of your response to this request, regarding and/or relating to whether YOU delegated any authority to formulate the CITY's policies, procedures, and/or practices regarding the enforcement of the curfew provisions of THE INJUNCTIONS to any person.

**RESPONSE TO REQUEST NO. 20:**

Objection; vague and ambiguous. Further, this request seeks documents

10

Exhibit 20
Page 172

1  reflecting privileged attorney-client communications and attorney work product.

2  Responding Party will not produce any privileged documents.  However, subject to

3  and without waiving these objections, after a diligent inquiry, Responding Party is

4  unable to locate any responsive, non-privileged documents in his possession.

5

6  Dated: August 13, 2014    Respectfully submitted,

7

8  **MICHAEL N. FEUER**, City Attorney
   **THOMAS H. PETERS,** Chief Assistant City Attorney

9  **CORY M. BRENTE**, Assistant City Attorney

10  By: _____

11      **RENA M. SHAHANDEH**, Deputy City Attorney

12

13  *Attorneys for Defendants* CITY OF LOS ANGELES,
    CARMEN TRUTANICH, CHARLES BECK and

14  ANGEL GOMEZ

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

Exhibit 20
Page 173

## Tucker Ellis LLP



**CARMEN A. TRUTANICH**
*Counsel*

515 South Flower Street
Forty-Second Floor
Los Angeles, California 90071
213.430.3003 (direct dial)
213.430.3409 (fax)
*carmen.trutanich@tuckerellis.com*

**PRACTICE AREAS**
Business Litigation
Environmental and Renewable
Energy
Oil and Gas
Public Law
Real Estate
White Collar Criminal Defense &
Corporate Investigations

**BAR ADMISSIONS**
California (1978)

**EDUCATION**
South Bay University College of
Law (J.D., 1978)
The University of Southern
California (M.B.A., 1974)
The University of Southern
California (B.S., 1973)

**CARMEN "NUCH" TRUTANICH** has a career encompassing more than 35 years of service dedicated to both the public and private sectors. He offers Tucker Ellis clients a unique blend of legal skills and experience in the areas of governmental regulations, land use and environmental law, business litigation, and white collar criminal defense.

To date, Nuch has tried more than 100 jury trials in addition to hundreds of court trials in his primary areas of focus. He tried and won the first environmental felony jury trial in California. During his tenure as the elected Los Angeles City Attorney from 2009 to 2013, the city experienced an unprecedented 92% success rate in civil matters brought to trial, saving taxpayers over $400 million. In addition, Nuch improved and streamlined the city's workers' compensation process, and established a reserve deputy city attorney program which served as a nationwide model for prosecutorial programs. He effectively partnered with the Los Angeles Police Department to reduce the city's crime rate to levels as low as those recorded in the 1950s.

Nuch began his legal career as a deputy district attorney in Los Angeles County where he was assigned to handle hardcore gang cases before being selected for the county's new environmental crimes/OSHA divisions. While there, he was lead trial counsel for the Los Angeles County OSHA/Environmental Crimes Strike Force. He is experienced in defending and prosecuting cases for companies charged with OSHA violations, including those involving asbestos exposure and a workplace death resulting from the cleaning of a large lube oil storage tank.

As City Attorney of Los Angeles, Nuch handled all airline and OSHA violations and compliance for Los Angeles International Airport, and was responsible for OSHA compliance and supervision for the Port of Los Angeles and the Los Angeles Department of Water and Power. All told, Nuch handled the compliance responsibility for a total of 100,000 employees across these three Los Angeles entities. His capabilities include compliance advice and assistance with respect to specific industry standards and general duty requirements; reporting and recordkeeping requirements; developing required safety plans, manuals and training; defending enforcement actions; and conducting investigations under the auspices of attorney-client privilege. Nuch tried the very first environmental crime in California, and has lectured up and down the state as well as overseas.

From 1988 to 2009, Nuch worked in private practice, where he managed two successful private law firms.

Nuch has been active in civic affairs and youth sports programs in the community of San Pedro, California, where he has served on a number of boards and commissions over the years. He possesses a life credential to teach college level courses, and he has taught in business schools at the community college level for over 20 years.

A life-long runner, Nuch has completed more than two dozen marathons and numerous triathlons. He has been married to his wife Noreen for 36 years, with whom he has four children: Kristin, a deputy district attorney; Nicholas, an assistant United States Attorney; Kimberly, a special education teacher in San Marcos; and Caitlin, an elementary schoolteacher in Long Beach. In addition, Nuch and Noreen have four grandchildren.

Exhibit - 1 - Page - 12

Exhibit 20
Page 174

**CARMEN A. TRUTANICH**
*continued*

2

### CIVIC & PROFESSIONAL INVOLVEMENT
- City Attorney, Los Angeles (2009-2013)
- Deputy District Attorney, Los Angeles County (1988)

### PUBLICATIONS
- Published the first set of judicially approved jury instructions for environmental criminal prosecutions

### AWARDS & PROFESSIONAL RECOGNITION
- National Most Innovative Prosecutor Award, Association of Prosecuting Attorneys (2011)
- Prosecutor of the Year, California Narcotics Officers Association (2011-2012)
- Courage Award, Los Angeles Police Protective League (2010)
- Person of the Year Award, Metropolitan News (2009)
- Martindale-Hubbell Law Directory, AV® Preeminent® rated attorney
- California Super Lawyers® (2005, 2007-2009)

Exhibit - 1 - Page - 13

Exhibit 20
Page 175

**PROOF OF SERVICE**

I, MARGARIT AVESYAN, declare as follows:
    At the time of service I was over 18 years of age and not a party to this action. My business address is 200 N. Main Street, 600 City Hall East, Los Angeles, CA 90012, which is the County, City and State where this mailing occurred.

On August 13, 2014 I served the document(s) described as:

**DEFENDANT CARMEN TRUTANICH'S RESPONSES TO PLAINTIFF CHRISTIAN RODRIGUEZ'S REQUEST FOR PRODUCTION OF DOCUMENTS SET NUMBER ONE**

on all interested parties in this action:

**Plaintiffs' Counsel**

**Olu K. Orange, Esq.**
**ORANGE LAW OFFICES**
**3435 Wilshire Boulevard, Suite 2900**
**Los Angeles, California 90010**
**(213) 736-9900 &  (213) 417-8800 Fax**

**Co-Counsel**

**Cindy Panuco, Esq.**
**Dan Stormer, Esq.**
**Anne Richardson, Esq.**
**HADSELL  STORMER  RICHARDSON & RENICK  LLP**
**128 North Fair Oaks Avenue, Suite 204**
**Pasadena, California 91103-3645**
**(626) 585-9600 & (626) 577-7079 Fax**

**Atty. For Defendant  Allan Nadir**

**Janine K. Jeffery, Esq.**
**REILY & JEFFERY, INC.**
**19839 Nordhoff Street**
**Northridge, CA 91324**
**(818) 350-6282**
**(818) 350-6283 Fax**
**jjeffery@reilyjeffery.com**

I served a true copy of the document(s) above by:

    [  ] Personally delivering it to the person(s) indicated below in the manner provided in FRCivP 5(b).

    [ x ] Depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the address(es) above.

    Executed on August 13, 2014, at Los Angeles, California.

14

Exhibit 20
Page 176

[ ]  I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

[X]  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X]  I hereby certify under the penalty of perjury that the foregoing is true and correct.

MARGARIT AVESYAN

15

Exhibit 20
Page 177

Olu K. Orange, Esq., SBN: 213653
ORANGE LAW OFFICES
3435 Wilshire Blvd., Suite 2900
Los Angeles, California 90010
Tel: (213) 736-9900 / Fax: (213) 417-8800
Email: oluorange@att.net

Dan Stormer, Esq., SBN: 101967
Anne Richardson, Esq., SBN: 151541
Cindy Pánuco, Esq., SBN: 266921
HADSELL STORMER
        RICHARDSON & RENICK, LLP
128 North Fair Oaks Avenue
Pasadena, California 91103-3645
Tel: (626) 585-9600; Fax: (626) 577-7079
Emails: dstormer@hadsellstormer.com;
arichardson@hadsellstormer.com; cpanuco@hadsellstormer.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN RODRIGUEZ, ALBERTO CAZAREZ, individually and as class representatives<br><br>                    *Plaintiffs,*<br>        vs.<br><br>CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLES BECK, ALLAN NADIR, ANGEL GOMEZ AND DOES 1 THROUGH 10.<br><br>                    *Defendants.* | Case No.: CV11-01135 DMG (JEMx)<br><br>**PLAINTIFF CHRISTIAN RODRIGUEZ'S FIRST SET OF WRITTEN INTERROGATORIES TO DEFENDANT CITY OF LOS ANGELES**<br><br>Complaint Filed:    February 7, 2011<br>Trial Date:              April 28, 2015 |

PROPOUNDING PARTY:      Plaintiff Christian Rodriguez
RESPONDING PARTY:        Defendant City of Los Angeles
SET NUMBER:                     One (Nos. 1-3)

1

PLTF'S FIRST SET OF ROGS TO
DEFT CITY OF LOS ANGELES

Exhibit 21
Page 178

1      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

2  Christian Rodriguez hereby propounds the following First Set of Interrogatories to

3  Defendant City of Los Angeles.

4      Pursuant to the provisions of Rule 33(b), the party upon whom this request is

5  served must serve its answers and any objections within 30 days after service of these

6  interrogatories.

7                **DEFINITIONS AND INSTRUCTIONS**

8     1.    The term "YOU," "YOUR," or "YOURS" means defendant CITY OF

9  LOS ANGELES and includes any and all councils, commissions, committees,

10  departments, officials, agents, employees and servants of defendant CITY OF LOS

11  ANGELES.

12     2.    "PERSON" includes a natural person, firm, association, organization,

13  partnership, business, trust, corporation, entity or public entity.

14     3.    When used to refer to PERSONS, the term "IDENTIFY" and/or

15  "IDENTITY" means the first and last name, date of birth, rank and assignment, home

16  and business ADDRESS, and home and business telephone numbers of such

17  PERSON.

18     4.    When used to refer to DOCUMENT, the term "IDENTIFY" and/or

19  "IDENTITY" means the title of the DOCUMENT, a description of the contents of

20  the DOCUMENT, the number of pages of the DOCUMENT, and the IDENTITY of

21  each person who has possession of the original and any copy of the DOCUMENT.

22     5.    "THE INJUNCTIONS" means and includes only gang injunctions from

23  the following Los Angeles Superior Court cases: BC397522; BC332713; BC305434;

24  BC313309; BC319166; BC326016; BC287137; BC335749; LC020525; BC267153;

25  BC358881; SC056980; BC359945; NC030080; BC330087; BC359944; BC282629;

26  LC048292; BC311766; BC351990; BC298646; BC349468; BC319981; SC060375;

27  SC057282; BC353596.

28  ///

2

_____

PLTF'S FIRST SET OF ROGS TO
DEFT CITY OF LOS ANGELES

Exhibit 21
Page 179

6.    If these Interrogatories cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have regarding the portion to which YOU have not responded.

7.    Unless otherwise specified, the relevant time period is from October 15, 2007, up to and including the date upon which YOU respond.

8.    YOUR responses to these interrogatories shall reflect the cumulative and collective knowledge of THE CITY, including its servants, agents, employees, and attorneys and all persons acting on its or their behalf or under its control.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please set forth 1) the number of total arrests made by THE CITY based only on violations of curfew provisions contained in THE INJUNCTIONS between October 15, 2007, through the date of your response to this interrogatory, and 2) IDENTIFY each of the arrested persons.

**INTERROGATORY NO. 2:**

Please IDENTIFY the DOCUMENTS and/or sources from which THE CITY determined the number of arrests YOU set forth in response to Interrogatory No. 1.

**INTERROGATORY NO. 3:**

Please explain how THE CITY calculated the number of arrests identified in response to Interrogatory No. 1.

DATED: June 30, 2014

Respectfully Submitted,
HADSELL STORMER

RICHARDSON & RENICK, LLP

By: _____
Cindy Pánuco
Attorney for the Plaintiffs

3

PLTF'S FIRST SET OF ROGS TO
DEFT CITY OF LOS ANGELES

Exhibit 21
Page 180

1

**PROOF OF SERVICE**

2      I am employed in the county of Los Angeles, State of California.  I am over the
3  age of 18 and not a party to the within action; my business address is 128 N . Fair Oaks
   Avenue, Pasadena, California  91103.

4      On June 30, 2014, I served the foregoing document described as: **PLAINTIFF
   CHRISTIAN RODRIGUEZ'S FIRST SET OF WRITTEN INTERROGATORIES
5  TO DEFENDANT CITY OF LOS ANGELES** on the interested parties in this cause by
   placing true and correct copies thereof in envelopes addressed as follows:
6

| | |
|---|---|
| Rena M. Shahandeh, Esq.<br>Cory Brente, Esq.<br>Bruce Monroe, Esq.<br>Los Angeles City Attorneys' Office<br>200 N. Main Street, 6th Fl., City Hall East<br>Los Angeles, CA 90012-4119<br>Telephone: (213) 878-7047<br>Facsimile: (213) 978-8787 | **Attorneys for Defendants CITY<br>OF LOS ANGELES, CARMEN<br>TRUTANICH, CHARLES BECK,<br>and ANGEL GOMEZ** |

12  __XX__      **BY PERSONAL SERVICE**

13      __XX__ I delivered such envelope by hand to the addressees listed above.

14

15      Executed on June 30, 2014, at Pasadena, California.

16  XX    (Federal)    I declare that I am employed in the office of a member of the bar of
        this Court at whose direction the serve was made.

17

18

19                                          David Hannah
                                           Declarant

20

21

22

23

24

25

26

27

28

1

Exhibit 21
Page 181

**PROOF OF SERVICE**

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks Avenue, Pasadena, California 91103.

On June 30, 2014, I served the foregoing document described as: **PLAINTIFF CHRISTIAN RODRIGUEZ'S FIRST SET OF WRITTEN INTERROGATORIES TO DEFENDANT CITY OF LOS ANGELES** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

| | |
|---|---|
| Janine Jeffery, Esq.<br>REILY & JEFFERY<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>Telephone: (818) 350-6282<br>Facsimile: (818) 350-6283 | **Attorneys for Defendant ALLAN NADIR** |

<u>XX</u>   **BY MAIL**

<u>XX</u> I deposited such envelope in the mail at Pasadena, California. The envelope was mailed with postage thereon fully prepaid.

____ I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

Executed on June 30, 2014, at Pasadena, California.

<u>XX</u>   (Federal)   I declare that I am employed in the office of a member of the bar of this Court at whose direction the serve was made.



_____
Jessica Valdenegro
Declarant

Exhibit 21
Page 182

1  **MICHAEL N. FEUER**, City Attorney - SBN 111529x
   **THOMAS H. PETERS,** Chief Assistant City Attorney - SBN 163388
2  **CORY M. BRENTE**, Assistant City Attorney – SBN 115453
   **RENA M. SHAHANDEH**, Deputy City Attorney - SBN 198072
3  200 North Main Street
   City Hall East, 6th Floor
4  Los Angeles, CA  90012
   Telephone:  (213) 978-7047
5  Facsimile: (213) 978-8785
   E-mail: rena.shahandeh@lacity.org
6
   Attorneys for Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH,
7  CHARLES BECK AND ANGEL GOMEZ

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  CHRISTIAN RODRIGUEZ,                    **CASE NO. CV11-01135 DMG (JEMx)**
    ALBERTO CAZAREZ, individually          *Assigned to Honorable Dolly M. Gee*
13  and as class representatives

14              Plaintiff,                  **DEFENDANT CITY OF LOS
                                            ANGELES' RESPONSES TO**
15      vs.                                 **PLAINTIFF CHRISTIAN
                                            RODRIGUEZ'S FIRST**
16  CITY OF LOS ANGELES, CARMEN            **SET OF WRITTEN**
    TRUTANICH, CHARLES BECK,               **INTERROGATORIES**
17  ALLAN NADIR, ANGEL GOMEZ
    AND DOES 1 THROUGH 10.
18
                Defendants.
19

20

21  **PROPOUNDING PARTY:     PLAINTIFF, CHRISTIAN RODRIGUEZ**

22  **RESPONDING PARTY:      DEFENDANT, CITY OF LOS ANGELES**

23  **SET NUMBER:            ONE**

24

25                       INTRODUCTORY NOTE

26      These responses are made solely for the purpose of this action.   These

27  responses are based upon a diligent investigation by Responding Party and upon

28  such information available as of the date on which these responses are made.  These

                                    1

Exhibit 22
Page 183

responses are made without prejudice to Defendant's rights to conduct further investigation and discovery and to offer at trial subsequently discovered evidence. Defendant makes no incidental or implied admission regarding the contents of any document referred to in these responses. This preliminary statement is incorporated into each of the responses set forth below.

Responding Party, CITY OF LOS ANGELES, hereby responds to Plaintiffs' Request as follows:

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Please set forth 1) the number of total arrests made by THE CITY based only on violations of curfew provisions contained in THE INJUNCTIONS between October 15, 2007, through the date of your response to this interrogatory, and 2) IDENTIFY each of the arrested persons.

### RESPONSE TO INTERROGATORY NO. 1:

Objection; this interrogatory is compound, irrelevant and not reasonably calculated to lead to the discovery of relevant and admissible evidence. The Court has denied Plaintiff's request to certify a class of persons arrested for violating curfew provisions, and the Requesting Party's individual claims do not relate to arrest for curfew alone or to arrests of third parties for violating curfew provisions. Further, this request seeks in part an analysis of data from arrest reports that already is in the possession of Plaintiff, and invades attorney work product. There is no good cause for this interrogatory, and Responding Party will not comply.

### INTERROGATORY NO. 2:

Please IDENTIFY the DOCUMENTS and/or sources from which THE CITY determined the number of arrests YOU set forth in response to Interrogatory No. 1.

2

Exhibit 22
Page 184

1   **RESPONSE TO INTERROGATORY NO. 2:**

2       Objection; vague and ambiguous.   Subject to and without waiving these

3   objections, this interrogatory is not applicable in light of the objections to

4   Interrogatory No. 1.

5

6   **INTERROGATORY NO. 3:**

7       Please explain how THE CITY calculated the number of arrests identified in

    response to interrogatory No. 1.

8

9   **RESPONSE TO INTERROGATORY NO. 3:**

10      This interrogatory is not applicable in light of the objections to Interrogatory

11  No. 1.

12

13  Dated: August 13, 2014   Respectfully submitted,

14

15          **MICHAEL N. FEUER,** City Attorney
    **THOMAS H. PETERS,** Chief Assistant City Attorney

16          **CORY M. BRENTE,** Assistant City Attorney

17

18  By: _____
            **RENA M. SHAHANDEH,** Deputy City Attorney

19          *Attorneys for Defendants* CITY OF LOS ANGELES,
    CARMEN TRUTANICH, CHARLES BECK and

20          ANGEL GOMEZ

21

22

23

24

25

26

27

28

3

Exhibit 22
Page 185

**PROOF OF SERVICE**

I, MARGARIT AVESYAN, declare as follows:

At the time of service I was over 18 years of age and not a party to this action. My business address is 200 N. Main Street, 600 City Hall East, Los Angeles, CA 90012, which is the County, City and State where this mailing occurred.

On August 13, 2014 I served the document(s) described as:

**DEFENDANT CITY OF LOS ANGELES' RESPONSES TO PLAINTIFF CHRISTIAN RODRIGUEZ'S FIRST SET OF WRITTEN INTERROGATORIES**

on all interested parties in this action:

**Plaintiffs' Counsel**

**Olu K. Orange, Esq.**
**ORANGE LAW OFFICES**
**3435 Wilshire Boulevard, Suite 2900**
**Los Angeles, California 90010**
**(213) 736-9900 & (213) 417-8800 Fax**

**Co-Counsel**

**Cindy Panuco, Esq.**
**Dan Stormer, Esq.**
**Anne Richardson, Esq.**
**HADSELL STORMER RICHARDSON & RENICK LLP**
**128 North Fair Oaks Avenue, Suite 204**
**Pasadena, California 91103-3645**
**(626) 585-9600 & (626) 577-7079 Fax**

**Atty. For Defendant Allan Nadir**

**Janine K. Jeffery, Esq.**
**REILY & JEFFERY, INC.**
**19839 Nordhoff Street**
**Northridge, CA 91324**
**(818) 350-6282**
**(818) 350-6283 Fax**
**jjeffery@reilyjeffery.com**

I served a true copy of the document(s) above by:

[ ] Personally delivering it to the person(s) indicated below in the manner provided in FRCivP 5(b).

[ x ] Depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the address(es) above.

Executed on August 13, 2014, at Los Angeles, California.

4

Exhibit 22
Page 186

[ ] I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

[X] I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] I hereby certify under the penalty of perjury that the foregoing is true and correct.

MARGARIT AVESYAN

5

Exhibit 22
Page 187

Olu K. Orange, Esq., SBN: 213653
ORANGE LAW OFFICES
3435 Wilshire Blvd., Suite 2900
Los Angeles, California 90010
Tel: (213) 736-9900 / Fax: (213) 417-8800
Email: oluorange@att.net

Dan Stormer, Esq., SBN: 101967
Anne Richardson, Esq., SBN: 151541
Cindy Pánuco, Esq., SBN: 266921
Mohammad Tajsar, Esq., SBN: 280152
HADSELL STORMER
     RICHARDSON & RENICK, LLP
128 North Fair Oaks Avenue
Pasadena, California 91103-3645
Tel: (626) 585-9600; Fax: (626) 577-7079
Emails: dstormer@hadsellstormer.com
     arichardson@hadsellstormer.com
     cpanuco@hadsellstormer.com
     mtajsar@hadsellstormer.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN RODRIGUEZ, ALBERTO CAZAREZ, individually and as class representatives<br><br>*Plaintiffs,*<br><br>vs.<br><br>CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLES BECK, ALLAN NADIR, ANGEL GOMEZ AND DOES 1 THROUGH 10.<br><br>*Defendants.* | Case No.: CV11-01135 DMG (JEMx)<br><br>**PLAINTIFF CHRISTIAN RODRIGUEZ'S FIRST SET OF INTERROGATORIES TO DEFENDANT CHARLES BECK**<br><br>Complaint Filed:  February 7, 2011<br>Discovery Cut-Off:  October 17, 2014<br>Motion Cut-Off:  October 24, 2014<br>Trial Date:  April 28, 2015 |

PLTF'S FIRST SET OF ROGS TO
DEFT CHARLES BECK

1

Exhibit 23
Page 188

1  PROPOUNDING PARTY:       Plaintiff Christian Rodriguez

2  RESPONDING PARTY:        Defendant Charles Beck

3  SET NUMBER:              One (Nos. 1-6)

4

5      **PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 33 of the Federal

6  Rules of Civil Procedure, Plaintiff Christian Rodriguez hereby propounds the

7  following First Set of Interrogatories to Defendant Charles Beck.

8      Pursuant to the provisions of Rule 33(b), the party upon whom this request is

9  served must serve its answers and any objections within 30 days after service of these

10  interrogatories to the offices of Hadsell Stormer Richardson & Renick, LLP located

11  at 128 North Fair Oaks Avenue, Pasadena, California 91103, unless a different time

12  has been ordered by the Court, or applies per rule.

13                    **GENERAL INSTRUCTIONS**

14      All interrogatories shall be deemed to be addressed to each of the above-

15  named defendants, and each defendant's responses thereto shall reflect the

16  cumulative and collective knowledge of that defendant, including defendant's

17  businesses, servants, agents, employees, and attorneys and all persons acting on its or

18  their behalf or under his, her, or their control.

19      Unless otherwise specified, the information requested in each interrogatory

20  relates to the time period from January 1, 2007, to the date of your responses to these

21  interrogatories. However, if the Request seeks materials concerning an event which

22  occurred prior to that date, the Request shall be deemed to cover a period beginning

23  with the time of the identified event.

24                        **DEFINITIONS**

25      1.    The term "YOU," "YOUR," or "YOURS" means defendant CITY OF

26  LOS ANGELES and CHARLES BECK and includes any and all councils,

27  commissions, committees, departments, officials, agents, employees and servants of

28  defendant CITY OF LOS ANGELES.

---

PLTF'S FIRST SET OF ROGS TO
DEFT CHARLES BECK                    2

Exhibit 23
Page 189

2.     "CITY" or "CITY OF LOS ANGELES" means defendant City of Los Angeles and includes the LOS ANGELES CITY ATTORNEY'S OFFICE, the LOS ANGELES POLICE DEPARTMENT and any and all councils, commissions, committees, departments, officials, agents, employees and servants of defendant CITY OF LOS ANGELES.

3.     As used herein, the term "PLAINTIFFS" refers to Plaintiffs Christian Rodriguez and Alberto Cazarez and others similarly situated.

4.     The term "DOCUMENT" shall include all things defined in Federal Rule of Evidence 1001, and Federal Rule of Civil Procedure 34, and includes, without limitation, all written, recorded, transcribed, punched, taped (including computer tapes), filmed, photographed, videotaped, tape-recorded, printed or other matter, of every kind and description, however produced or reproduced, and however preserved, including information contained on computer disk, CD-ROM, computer hard drive, server, microfiche, film, videotape, audiotape or otherwise, including but not limited to the original and any copy and all drafts, of any letter, memorandum, telegram, report, manual, bulletin, study, record, statement, message, hand written note, calendar, diary, working paper, sketch, computer tape, data sheet, data card, tape recording, or any other written, printed or recorded matter, books, letters, pamphlets, correspondence, memoranda, reports, manuals, training bulletins, Special Orders, crime reports, preliminary investigation reports, investigation reports, arrest reports, evidence reports, equipment reports, vehicle reports, sergeant's reports, sergeant's daily reports, station commander's reports, supervisor's reports, watch commander's reports, lieutenant's reports, use of force reports, follow-up reports, Daily Work Sheet reports, Daily Field Activities Reports, employee injury reports, telephone calls, radio transmissions, surveillance video, surveillance audio, mobile audio-video unit recordings, personnel complaint investigations, citizen complaint investigations, chronologies, logs, notes, drafts of any written document, minutes of meetings, interview tapes and transcriptions, California Tort Claim investigations and

1  all other physically preserved documentary information, regardless of the medium of

2  preservation, however produced or reproduced, from whatever source obtained, in

3  the defendant's possession or control, or subject to its control, or to which it has

4  access. "DOCUMENT" shall also include originals and all non-identical copies.

5  Copies which differ by reason of notations or electronic encodings thereon are

6  considered "nonidentical" copies.

7       5.    "PERSON" includes a natural person, firm, association, organization,

8  partnership, business, trust, corporation, entity or public entity.

9       6.    When used to refer to PERSONS, the term "IDENTIFY" and/or

10  "IDENTITY" means the first and last name (if YOU do not know the person's full

11  name provide as much of the name and any other identifying characteristics as

12  possible), date of birth, rank and assignment, home and business ADDRESS, and

13  home and business telephone numbers of such PERSON.

14       7.    When used to refer to DOCUMENT, the term "IDENTIFY" and/or

15  "IDENTITY" means to provide a copy of that DOCUMENT or make it available for

16  inspection, provide a description of the location where the DOCUMENT was found

17  and to indicate to which interrogatory it is responsive. Alternatively, YOU may state

18  the production number, the author, the title of the DOCUMENT, a description of the

19  contents of the DOCUMENT, the number of pages of the DOCUMENT, and the

20  IDENTITY of each person who has possession of the original and any copy of the

21  DOCUMENT.

22       8.    "THE INJUNCTIONS" means and includes only gang injunctions from

23  the following Los Angeles Superior Court cases: BC397522; BC332713; BC305434;

24  BC313309; BC319166; BC326016; BC287137; BC335749; LC020525; BC267153;

25  BC358881; SC056980; BC359945; NC030080; BC330087; BC359944; BC282629;

26  LC048292; BC311766; BC351990; BC298646; BC349468; BC319981; SC060375;

27  SC057282; BC353596.

28  ///

PLTF'S FIRST SET OF ROGS TO          4
DEFT CHARLES BECK

Exhibit 23
Page 191

1    9.    If these Interrogatories cannot be responded to in full, YOU shall
2    respond to the extent possible, specify the reason for YOUR inability to respond to
3    the remainder, and state whatever information or knowledge YOU have regarding the
4    portion to which YOU have not responded.

5    10.    Unless otherwise specified, the relevant time period is from October 15,
6    2007, up to and including the date upon which YOU respond.

7    11.    YOUR responses to these interrogatories shall reflect the cumulative
8    and collective knowledge of THE CITY, including its servants, agents, employees,
9    and attorneys and all persons acting on its or their behalf or under its control.

10    **INTERROGATORIES**

11    **INTERROGATORY NO. 1:**

12    Identify the date and manner in which YOU learned of the *People ex rel.*
13    *Totten v. Colinia Chiques*,156 Cal. App. 4th 31 (2007) decision.

14    **INTERROGATORY NO. 2:**

15    Identify the policies that have changed as a result of the *Colinia Chiques*
16    decision.

17    **INTERROGATORY NO. 3:**

18    Identify the actions YOU have undertaken to ensure that the *Colinia Chiques*
19    decision was followed.

20    **INTERROGATORY NO. 4:**

21    Identify the instructions that have YOU asked subordinates to follow as a
22    result of the *Colinia Chiques* decision.

23    **INTERROGATORY NO. 5:**

24    Identify all communications YOU have had concerning the ramifications of
25    *Colinia Chiques* on department policy.

26    ///
27    ///
28    ///

PLTF'S FIRST SET OF ROGS TO            5
DEFT CHARLES BECK

Exhibit 23
Page 192

1    **INTERROGATORY NO. 6:**

2          Identify all training that occurred to instruct officers and others in the

3    department as to proper procedure after the *Colinia Chiques* decision.

4

5

6    DATED: September 4, 2014          Respectfully Submitted,

7                                     HADSELL STORMER

8                                     RICHARDSON & RENICK, LLP

9

10                                    By: _____

11                                        Mohammad Tajsar
                                          Attorney for the Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____
PLTF'S FIRST SET OF ROGS TO          6
DEFT CHARLES BECK

Exhibit 23
Page 193

1

## PROOF OF SERVICE

2
3

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks Avenue, Pasadena, California 91103.

4
5
6

On September 4, 2014, I served the foregoing document described as: **PLAINTIFF CHRISTIAN RODRIGUEZ'S FIRST SET OF INTERROGATORIES TO DEFENDANT CHARLES BECK** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

| | |
|---|---|
| Rena M. Shahandeh, Esq.<br>Cory Brente, Esq.<br>Bruce Monroe, Esq.<br>Los Angeles City Attorneys' Office<br>200 N. Main Street, 6th Fl., City Hall East<br>Los Angeles, CA 90012-4119<br>Telephone: (213) 878-7047<br>Facsimile: (213) 978-8787 | **Attorneys for Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH, and CHARLES BECK** |
| Janine Jeffery, Esq.<br>REILY & JEFFERY<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>Telephone: (818) 350-6282<br>Facsimile: (818) 350-6283 | **Attorneys for Defendant ALLAN NADIR** |
| Kevin E. Gilbert, Esq.<br>Kevin P. McLaughlin, Esq.<br>Lillian K. Yoo, Esq.<br>MEYERS NAVE RIBACK SILVER & WILSON<br>555 12th Street, Suite 1500<br>Oakland, CA 94607<br>Telephone: (510) 808-2000<br>Facsimile: (510) 444-1108 | **Attorneys for Defendant ANGEL GOMEZ** |

7
8
9
10
11
12
13
14
15
16
17
18
19
20

21  <u>XX</u>      **BY PERSONAL SERVICE**

22      <u>XX</u> I delivered such envelope by hand to the addressees listed above.

23      Executed on September 4, 2014, at Pasadena, California.

24  XX   (Federal)   I declare that I am employed in the office of a member of the bar of this Court at whose direction the serve was made.

25
26
27      _____
Mohammad Tajsar
28      Declarant

1

Exhibit 23
Page 194

Olu K. Orange, Esq., SBN: 213653
ORANGE LAW OFFICES
3435 Wilshire Blvd., Suite 2900
Los Angeles, California 90010
Tel: (213) 736-9900 / Fax: (213) 417-8800
Email: oluorange@att.net

Dan Stormer, Esq., SBN: 101967
Anne Richardson, Esq., SBN: 151541
Cindy Pánuco, Esq., SBN: 266921
Mohammad Tajsar, Esq., SBN: 280152
HADSELL STORMER
        RICHARDSON & RENICK, LLP
128 North Fair Oaks Avenue
Pasadena, California 91103-3645
Tel: (626) 585-9600; Fax: (626) 577-7079
Emails: dstormer@hadsellstormer.com
        arichardson@hadsellstormer.com
        cpanuco@hadsellstormer.com
        mtajsar@hadsellstormer.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTIAN RODRIGUEZ, ALBERTO CAZAREZ, individually and as class representatives | Case No.: CV11-01135 DMG (JEMx) |
| *Plaintiffs,* | **PLAINTIFF CHRISTIAN RODRIGUEZ'S FIRST SET OF INTERROGATORIES TO DEFENDANT CARMEN TRUTANICH** |
| vs. | |
| CITY OF LOS ANGELES, CARMEN TRUTANICH, CHARLES BECK, ALLAN NADIR, ANGEL GOMEZ AND DOES 1 THROUGH 10. | Complaint Filed: February 7, 2011<br>Discovery Cut-Off: October 17, 2014<br>Motion Cut-Off: October 24, 2014<br>Trial Date: April 28, 2015 |
| *Defendants.* | |

PLTF'S FIRST SET OF ROGS TO
DEFT CARMEN TRUTANICH

1

Exhibit 24
Page 195

PROPOUNDING PARTY:     Plaintiff Christian Rodriguez

RESPONDING PARTY:      Defendant Carmen Trutanich

SET NUMBER:            One (Nos. 1-6)

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Christian Rodriguez hereby propounds the following First Set of Interrogatories to Defendant Carmen Trutanich.

Pursuant to the provisions of Rule 33(b), the party upon whom this request is served must serve its answers and any objections within 30 days after service of these interrogatories to the offices of Hadsell Stormer Richardson & Renick, LLP located at 128 North Fair Oaks Avenue, Pasadena, California 91103, unless a different time has been ordered by the Court, or applies per rule.

## GENERAL INSTRUCTIONS

All interrogatories shall be deemed to be addressed to each of the above-named defendants, and each defendant's responses thereto shall reflect the cumulative and collective knowledge of that defendant, including defendant's businesses, servants, agents, employees, and attorneys and all persons acting on its or their behalf or under his, her, or their control.

Unless otherwise specified, the information requested in each interrogatory relates to the time period from January 1, 2007, to the date of your responses to these interrogatories. However, if the Request seeks materials concerning an event which occurred prior to that date, the Request shall be deemed to cover a period beginning with the time of the identified event.

## DEFINITIONS

1.  "YOU," "YOUR," or "YOURS" means defendant CITY OF LOS ANGELES and CARMEN TRUTANICH and includes any and all councils, commissions, committees, departments, officials, agents, employees and servants of defendant CITY OF LOS ANGELES.

PLTF'S FIRST SET OF ROGS TO
DEFT CARMEN TRUTANICH                2

Exhibit 24
Page 196

2.     "CITY" or "CITY OF LOS ANGELES" means defendant City of Los Angeles and includes the LOS ANGELES CITY ATTORNEY'S OFFICE, the LOS ANGELES POLICE DEPARTMENT and any and all councils, commissions, committees, departments, officials, agents, employees and servants of defendant CITY OF LOS ANGELES.

3.     As used herein, the term "PLAINTIFFS" refers to Plaintiffs Christian Rodriguez and Alberto Cazarez and others similarly situated.

4.     The term "DOCUMENT" shall include all things defined in Federal Rule of Evidence 1001, and Federal Rule of Civil Procedure 34, and includes, without limitation, all written, recorded, transcribed, punched, taped (including computer tapes), filmed, photographed, videotaped, tape-recorded, printed or other matter, of every kind and description, however produced or reproduced, and however preserved, including information contained on computer disk, CD-ROM, computer hard drive, server, microfiche, film, videotape, audiotape or otherwise, including but not limited to the original and any copy and all drafts, of any letter, memorandum, telegram, report, manual, bulletin, study, record, statement, message, hand written note, calendar, diary, working paper, sketch, computer tape, data sheet, data card, tape recording, or any other written, printed or recorded matter, books, letters, pamphlets, correspondence, memoranda, reports, manuals, training bulletins, Special Orders, crime reports, preliminary investigation reports, investigation reports, arrest reports, evidence reports, equipment reports, vehicle reports, sergeant's reports, sergeant's daily reports, station commander's reports, supervisor's reports, watch commander's reports, lieutenant's reports, use of force reports, follow-up reports, Daily Work Sheet reports, Daily Field Activities Reports, employee injury reports, telephone calls, radio transmissions, surveillance video, surveillance audio, mobile audio-video unit recordings, personnel complaint investigations, citizen complaint investigations, chronologies, logs, notes, drafts of any written document, minutes of meetings, interview tapes and transcriptions, California Tort Claim investigations and

1  all other physically preserved documentary information, regardless of the medium of

2  preservation, however produced or reproduced, from whatever source obtained, in

3  the defendant's possession or control, or subject to its control, or to which it has

4  access. "DOCUMENT" shall also include originals and all non-identical copies.

5  Copies which differ by reason of notations or electronic encodings thereon are

6  considered "nonidentical" copies.

7      5.    "PERSON" includes a natural person, firm, association, organization,

8  partnership, business, trust, corporation, entity or public entity.

9      6.    When used to refer to PERSONS, the term "IDENTIFY" and/or

10  "IDENTITY" means the first and last name (if YOU do not know the person's full

11  name provide as much of the name and any other identifying characteristics as

12  possible), date of birth, rank and assignment, home and business ADDRESS, and

13  home and business telephone numbers of such PERSON.

14      7.    When used to refer to DOCUMENT, the term "IDENTIFY" and/or

15  "IDENTITY" means to provide a copy of that DOCUMENT or make it available for

16  inspection, provide a description of the location where the DOCUMENT was found

17  and to indicate to which interrogatory it is responsive. Alternatively, YOU may state

18  the production number, the author, the title of the DOCUMENT, a description of the

19  contents of the DOCUMENT, the number of pages of the DOCUMENT, and the

20  IDENTITY of each person who has possession of the original and any copy of the

21  DOCUMENT.

22      8.    "THE INJUNCTIONS" means and includes only gang injunctions from

23  the following Los Angeles Superior Court cases: BC397522; BC332713; BC305434;

24  BC313309; BC319166; BC326016; BC287137; BC335749; LC020525; BC267153;

25  BC358881; SC056980; BC359945; NC030080; BC330087; BC359944; BC282629;

26  LC048292; BC311766; BC351990; BC298646; BC349468; BC319981; SC060375;

27  SC057282; BC353596.

28  ///

---

PLTF'S FIRST SET OF ROGS TO
DEFT CARMEN TRUTANICH                4

Exhibit 24
Page 198

9.    If these Interrogatories cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have regarding the portion to which YOU have not responded.

10.    Unless otherwise specified, the relevant time period is from October 15, 2007, up to and including the date upon which YOU respond.

11.    YOUR responses to these interrogatories shall reflect the cumulative and collective knowledge of THE CITY, including its servants, agents, employees, and attorneys and all persons acting on its or their behalf or under its control.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify the date and manner in which YOU learned of the *People ex rel. Totten v. Colinia Chiques*, 156 Cal. App. 4th 31 (2007) decision.

**INTERROGATORY NO. 2:**

Identify the policies that have changed as a result of the *Colinia Chiques* decision.

**INTERROGATORY NO. 3:**

Identify the actions YOU have undertaken to ensure that the *Colinia Chiques* decision was followed .

**INTERROGATORY NO. 4:**

Identify the instructions that have YOU asked subordinates to follow as a result of the *Colinia Chiques* decision.

**INTERROGATORY NO. 5:**

Identify all communications YOU have had concerning the ramifications of *Colinia Chiques* on department policy.

///

///

///

PLTF'S FIRST SET OF ROGS TO
DEFT CARMEN TRUTANICH                    5

Exhibit 24
Page 199

**INTERROGATORY NO. 6:**

Identify all training that occurred to instruct officers and others in the department as to proper procedure after the *Colinia Chiques* decision.

DATED: September 4, 2014

Respectfully Submitted,

HADSELL STORMER

RICHARDSON & RENICK, LLP

By: _____

Mohammad Tajsar
Attorney for the Plaintiffs

PLTF'S FIRST SET OF ROGS TO
DEFT CARMEN TRUTANICH

6

Exhibit 24
Page 200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 128 N . Fair Oaks Avenue, Pasadena, California  91103.

On September 4, 2014, I served the foregoing document described as: **PLAINTIFF CHRISTIAN RODRIGUEZ'S FIRST SET OF INTERROGATORIES TO DEFENDANT CARMEN TRUTANICH** on the interested parties in this cause by placing true and correct copies thereof in envelopes addressed as follows:

| | |
|---|---|
| Rena M. Shahandeh, Esq.<br>Cory Brente, Esq.<br>Bruce Monroe, Esq.<br>Los Angeles City Attorneys' Office<br>200 N. Main Street, 6th Fl., City Hall East<br>Los Angeles, CA 90012-4119<br>Telephone: (213) 878-7047<br>Facsimile: (213) 978-8787 | **Attorneys for Defendants CITY OF LOS ANGELES, CARMEN TRUTANICH, and CHARLES BECK** |
| Janine Jeffery, Esq.<br>REILY & JEFFERY<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>Telephone: (818) 350-6282<br>Facsimile: (818) 350-6283 | **Attorneys for Defendant ALLAN NADIR** |
| Kevin E. Gilbert, Esq.<br>Kevin P. McLaughlin, Esq.<br>Lillian K. Yoo, Esq.<br>MEYERS NAVE RIBACK SILVER & WILSON<br>555 12th Street, Suite 1500<br>Oakland, CA 94607<br>Telephone: (510) 808-2000<br>Facsimile: (510) 444-1108 | **Attorneys for Defendant ANGEL GOMEZ** |

 XX      **BY PERSONAL SERVICE**

 XX  I delivered such envelope by hand to the addressees listed above.

Executed on September 4, 2014, at Pasadena, California.

XX    (Federal)    I declare that I am employed in the office of a member of the bar of this Court at whose direction the serve was made.

_____
Mohammad Tajsar
Declarant

1

Exhibit 24
Page 201

Case 2:11-cv-01135-DMG-PJW    Document 167-3    Filed 09/30/14    Page 195 of 225
Page ID #:3393
Case 2:11-cv-01135-DMG -JEM   Document 21    Filed 08/22/11   Page 1 of 17   Page ID #:135

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Christian Rodriguez, et al., | ) | CASE NO. CV 11-1135-DMG(JEMx) |
| Plaintiff, | ) | **SCHEDULING AND CASE** |
| | ) | **MANAGEMENT ORDER FOR** |
| v. | ) | **JURY TRIAL** |
| | ) | |
| City of Los Angeles et al., | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLEASE READ THIS ORDER CAREFULLY.  IT DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

**SEE THE LAST PAGE OF THIS ORDER FOR THE SCHEDULED DATES.**

**The term "Counsel," as used in this Order, includes parties appearing _in propria persona_.**

The Court has scheduled the dates set forth on the last page of this Order after review of the parties' Joint Rule 26(f) Report.  The dates and requirements set forth in this Order are firm.  The Court is unlikely to grant continuances, even if stipulated by the parties, unless the parties establish good cause through a proper showing.

1

Exhibit 25
Page 202

1  **I.    JOINDER OF PARTIES/AMENDMENT OF PLEADINGS**

2      All motions to add parties or to amend the pleadings must be noticed to be

3  **heard** on or before the specified deadline in the attached schedule.  All unserved

4  parties will be dismissed at the time of the pretrial conference pursuant to Local

5  Rule 16-8.1.

6  **II.   DISCOVERY AND DISCOVERY CUT-OFF**

7      **A.    Non-Expert Discovery**

8      All non-expert discovery shall be completed by the non-expert discovery

9  cut-off date.  **THIS IS NOT THE DATE BY WHICH DISCOVERY**

10 **REQUESTS OR DISCOVERY MOTIONS MUST BE FILED AND SERVED;**

11 **IT IS THE DATE BY WHICH ALL DISCOVERY, INCLUDING ALL**

12 **HEARINGS ON ANY RELATED MOTIONS, IS TO BE COMPLETED.**  In

13 an effort to provide further guidance to the parties, the Court notes the following:

14     1.    Depositions.  All depositions shall be scheduled to commence

15 sufficiently in advance of the discovery cut-off date to permit their completion and

16 to permit the deposing party enough time to bring any discovery motions

17 concerning the deposition prior to the cut-off date.  Given the requirements of

18 notice and "meet and confer," that means that in most cases a planned motion to

19 compel would have to be discussed with opposing counsel approximately six

20 weeks before the cut-off.

21     2.    Written Discovery.  All interrogatories, requests for production of

22 documents, and requests for admissions shall be served sufficiently in advance of

23 the discovery cutoff date to permit the discovering party enough time to challenge

24 (via motion practice) responses deemed to be deficient.

25     3.    Discovery Motions.  Whenever possible, the Court expects the parties

26 to resolve discovery problems among themselves in a courteous, reasonable, and

27 professional manner.  If they do so, resort to the Court for guidance in discovery is

28 seldom necessary.  Any motion challenging the adequacy of responses to discovery

2

Exhibit 25
Page 203

Case 2:11-cv-01135-DMG-PJW    Document 167-3    Filed 09/30/14    Page 197 of 225
Page ID #:3395
Case 2:11-cv-01135-DMG -JEM    Document 21    Filed 08/22/11    Page 3 of 17    Page ID #:137

1  must be filed, served and calendared sufficiently in advance of the discovery cut-

2  off date to permit the responses to be obtained before that date, if the motion is

3  granted.

4  **B.    Expert Discovery**

5  All disclosures must be made in writing.  The parties should begin expert

6  discovery shortly after the initial designation of experts.  The final pretrial

7  conference and trial dates will not be continued merely because expert discovery is

8  not completed.  Failure to comply with these or any other orders concerning expert

9  discovery may result in the expert being excluded as a witness.

10  **III.    MOTIONS AND MOTION CUT-OFF**

11  The Court has established a cut-off date for the filing and service of motions

12  for the Court's law and motion calendar.  Counsel should consult the Court's

13  Standing Order, provided at the commencement of this action, to determine the

14  Court's requirements concerning motions.  Counsel also may consult the Court's

15  website at www.cacd.uscourts.gov>Judges' Procedures and Schedules>Hon. Dolly

16  M. Gee  for further information regarding motion procedures.

17  **IV.    SETTLEMENT PROCEDURES**

18  A settlement procedure must be identified in every case pursuant to Local

19  Rule 16-15 *et seq*.  Counsel must complete a settlement conference no later than

20  four weeks prior to the final pretrial conference date.  Not to the exclusion of other

21  procedures, the following are available:

22      (1)    a settlement conference before the magistrate judge
23                 assigned to the case;

24      (2)    a settlement conference or mediation before
               an attorney selected from the Attorney
25                 Settlement Panel; or

26      (3)    the employment (at the parties' expense) of
               a private judge,  mediator, or arbitrator.

27

28  If a case is selected for the Mandatory ADR Program, the parties may

choose option (3) instead, but may <u>not</u> choose option (1).  The Court will consider

3

Exhibit 25
Page 204

Case 2:11-cv-01135-DMG-PJW    Document 167-3    Filed 09/30/14    Page 198 of 225
Page ID #:3396
Case 2:11-cv-01135-DMG -JEM   Document 21   Filed 08/22/11   Page 4 of 17   Page ID #:138

1  holding a settlement conference at the request of the parties in jury trial cases,

2  provided that (a) the parties are satisfied that the fact issues in the case will be tried

3  by a jury; (b) all significant pre-trial rulings which the Court must make have been

4  made; and (c) the parties desire Judge Gee  to conduct the conference,

5  understanding that if settlement fails, she will preside over trial of the case.

6      The parties must file a Status Report regarding settlement at the time they

7  lodge the proposed final pretrial conference order.   This Report shall not disclose

8  the parties' settlement positions, i.e. the terms of any offers or demands.  It shall

9  merely describe the efforts made by the parties to resolve the dispute informally,

10  i.e. the occasions and dates when the parties participated in mediation or settlement

11  conferences.  The Status Report shall also include the name of the Settlement

12  Officer who assisted the parties with their settlement conference.

13      No case will proceed to trial unless all parties, including the principals of all

14  corporate parties, have appeared personally at a settlement conference.

15  **V.**    **FINAL PRETRIAL CONFERENCE**

16      **A**.    A final pretrial conference date has been set pursuant to Rule 16 of the

17  Federal Rules of Civil Procedure and Local Rule 16-8.  Unless excused for good

18  cause, each party appearing in this action shall be represented at the final pretrial

19  conference by the attorney who is to serve as lead trial counsel.  Counsel should be

20  prepared to discuss streamlining the trial, including presentation of testimony by

21  deposition excerpts or summaries, time limits, stipulations as to undisputed facts,

22  and qualification of experts by admitted resumes.

23      **B.**    **Local Rule 16 Filings**

24      Carefully prepared memoranda of contentions of fact and law, witness lists,

25  joint exhibit list, and a proposed final pretrial conference order shall be submitted

26  in accordance with the Local Rules, and the format of the proposed final pretrial

27  conference order shall conform to the format set forth in Appendix A to the Local

28  Rules.  Failure of these documents to comply with these requirements may result in

4

Exhibit 25
Page 205

1  the final pretrial conference being taken off-calendar or continued, or in other

2  sanctions.

3      **C.**    **Joint Trial Witness Time Estimate Form**

4      The parties will prepare a Joint Trial Witness Time Estimate form in

5  substantially the format as the sample at "Attachment A" herein.

6      **D.**    **Pretrial Exhibit Stipulation**

7      The parties shall prepare a pretrial exhibit stipulation that shall

8  contain each party's numbered list of all trial exhibits, with objections, if any, to

9  each exhibit including the basis of the objection and the offering party's brief

10  response.  All exhibits to which there is no objection shall be deemed admitted.

11  The parties shall stipulate to the authenticity and foundation of exhibits whenever

12  possible, and the pretrial exhibit stipulation shall identify any exhibits to which

13  authenticity and/or foundation have not been stipulated and the specific reasons for

14  the parties' failure to stipulate.

15      The pretrial exhibit stipulation shall be substantially in the following form:

16                  **Pretrial Exhibit Stipulation**

17  **Plaintiff(s)'/Defendant(s)' Exhibits**

18  **Exhibit No.**    **Description**    **If Objection, State Grounds**    **Response to Objection**

19

20      The pretrial exhibit stipulation shall be filed at the same time counsel lodge the

21  proposed pretrial conference order.  Failure to comply with this paragraph could be

22  deemed to constitute a waiver of all objections.  **Do not submit** blanket or boilerplate

23  objections to the opposing  party's exhibits.  These will be disregarded and overruled.

24      **E.**    **Proposed Final Pretrial Conference Order**

25      In drafting the proposed final pretrial conference order, the Court expects

26  that the parties will attempt to agree on and set forth as many non-contested facts

27  as possible.  The Court will usually read the uncontested facts to the jury at the

28  start of trial.  A carefully drafted and comprehensively stated stipulation of facts

5

Exhibit 25
Page 206

Case 2:11-cv-01135-DMG-PJW    Document 167-3    Filed 09/30/14    Page 200 of 225
Page ID #:3398
Case 2:11-cv-01135-DMG -JEM   Document 21   Filed 08/22/11   Page 6 of 17   Page ID #:140

1  will reduce the length of trial and increase jury understanding of the case.

2        **F.**    **Agreed Statement of the Case**

3        The parties shall jointly prepare an objective, non-argumentative statement

4  of the case which the Court shall read to all prospective jurors at the beginning of

5  voir dire.  The statement usually should not be longer than one or two paragraphs.

6        **G.**    **Due Date**

7        The memoranda of contentions of fact and law, witness lists, joint exhibit

8  list, pretrial exhibit stipulation, joint trial witness time estimate form, and proposed

9  final pretrial conference order are due not later than twenty-one (21) days before

10  the final pretrial conference.

11        **H.**    **Other Documents**

12        Other documents to be filed in preparation for, and issues to be addressed at,

13  the final pretrial conference are discussed below.

14  **VI.**    **ADDITIONAL TRIAL PREPARATION**

15        **A.**    **Motions *In Limine***

16        All motions *in limine* must be filed at least twenty-one (21) days  before the

17  final pretrial conference, unless otherwise ordered by the Court.  Each motion

18  should be separately filed and numbered sequentially.  Counsel are to meet and

19  confer with opposing counsel to determine whether opposing counsel intends to

20  introduce the disputed evidence, and to attempt to reach an agreement that would

21  obviate the motion.  Opposition must be filed at least  fourteen (14) days before the

22  final pretrial conference.  The Court generally will rule on motions *in limine* at the

23  final pretrial conference.  Motions in *limine* should address specific issues (i.e., *not*

24  "to exclude all hearsay," etc.).  Motions *in limine* should not be disguised motions

25  for summary adjudication of issues.

26        The Court limits the number of *in limine* motions which a party or group of

27  affiliated parties may file to **four**, not including (1) any *in limine* motion which

28  seeks an exclusionary sanction under Rule 37(c)(1) of the Federal Rules of Civil

Exhibit 25
Page 207

Case 2:11-cv-01135-DMG-PJW    Document 167-3    Filed 09/30/14    Page 201 of 225
Page ID #:3399
Case 2:11-cv-01135-DMG -JEM   Document 21    Filed 08/22/11    Page 7 of 17    Page ID #:141

1    Procedure and (2) any *in limine* motion which invokes the Court's power under

2    Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow*

3    *Pharmaceuticals*, 509 U.S. 579, 597 (1993), to exclude or limit expert testimony.

4    Motions made on the latter two grounds shall prominently state the basis for the

5    motion in the title of the motion on the caption page.  Any party desiring to tender

6    any other *in limine* motions beyond those permitted above shall file an *ex parte*

7    application no later than **seven days** prior to the due date for such motions,

8    attaching the proposed motion and making a showing why it is imperative that the

9    issue be dealt with by a motion *in limine*.

10           **B.      Jury Instructions, Special Verdict Forms, *Voir Dire*, Jury**

11                   **Selection**

12           1.      Fourteen (14) days before the meeting of counsel required by Local

13    Rule 16-2, plaintiff shall serve plaintiff's proposed jury instructions and special

14    verdict forms, and defendant shall serve defendant's proposed jury instructions and

15    special verdict forms as to any affirmative defenses, counterclaims, etc.  Within ten

16    (10) days, each shall serve objections to the other's instructions and verdict forms.

17    **Before or at the Rule 16-2 meeting, counsel are ordered to meet and confer**

18    **and attempt to come to agreement on the proposed jury instructions and**

19    **verdict forms.**

20           2.      When the *Manual of Model Jury Instructions for the Ninth Circuit*

21    provides an applicable jury instruction, the parties should submit the most recent

22    version, modified and supplemented to fit the circumstances of this case.  Where

23    language appears in brackets, the appropriate language should be selected.  All

24    blanks should be completed.  Where California law applies, counsel should use the

25    current edition of *California Jury Instructions - Civil* ("CACI").  If neither of these

26    model instructions is applicable, counsel should consult the current edition of

27    O'Malley, et al., *Federal Jury Practice and Instructions*.  Each requested

28    instruction shall (a) cite the authority or source of the instruction, (b) be set forth in

Exhibit 25
Page 208

Case 2:11-cv-01135-DMG-PJW    Document 167-3    Filed 09/30/14    Page 202 of 225
Page ID #:3400
Case 2:11-cv-01135-DMG -JEM   Document 21    Filed 08/22/11   Page 8 of 17   Page ID #:142

1  full, (c) be on a separate page, (d) be numbered, (e) cover only one subject or

2  principle of law, and (f) not repeat principles of law contained in any other

3  requested instruction.

4      Counsel may submit alternatives to these instructions only if counsel has a

5  reasoned argument that they do not properly state the law or they are incomplete.

6      3.    At the time of filing the proposed final pretrial conference order,

7  counsel shall file with the Court a JOINT set of jury instructions on which there is

8  agreement.  All blanks in standard forms should be filled in.  The Court expects

9  counsel to agree on the substantial majority of jury instructions, particularly when

10  pattern or model instructions provide a statement of applicable law.  If one party

11  fails to comply with the provisions of this section, the other party must file a

12  unilateral set of jury instructions, unless that party wishes to waive jury trial.

13      4.    At the same time, each party shall file its proposed jury instructions

14  that are objected to by any other party.  Each disputed instruction must have

15  attached a short (one or two paragraph) statement, including points and authorities

16  in support of the instruction as well as a brief statement, including points and

17  authorities, in support of any objections.  A proposed alternative instruction must

18  be provided, if applicable.  If the Court believes that there are so many disputed

19  instructions that the trial would be unnecessarily interrupted in order for the Court

20  to resolve disputes, the Court may determine that the matter is not yet ready to be

21  tried, and may order counsel to continue to meet and confer until most of the

22  disputes are resolved.

23      5.    Counsel must provide the documents described in paragraphs 3 and 4

24  on a disk in Word or WordPerfect 9 (or above) format at the time they file their

25  proposed jury instructions.

26      6.    The Court will send copies of the instructions into the jury room for

27  the jury's use during deliberations.  Therefore, in addition to the copies described

28  above, the disk must contain a "clean" set of jury instructions, containing only the

8

Exhibit 25
Page 209

1  text of the instruction (one per page) with the caption "Instruction No. __" at the

2  top (eliminating titles, supporting authority, etc.).

3        7.      Counsel must provide an index of all instructions submitted, which

4  must include the following:

5                    a.  The number of the instruction;

6                    b.  The title of the instruction;

7                    c.  the source of the instruction and any relevant case citations;

8                    d.  The page number of the instruction.

9

10  For example:

11        Number            Title             Source            Page

12        1              Trademark - Defined    9th Cir.  15.3.2    7

13                        (15 U.S.C. § 1127)

14

15        8.    **FAILURE TO FOLLOW THE PRECEDING PROVISIONS OF**

16  **THIS SECTION WILL SUBJECT THE NON-COMPLYING PARTY**

17  **AND/OR ATTORNEY TO SANCTIONS AND WILL BE DEEMED TO**

18  **CONSTITUTE A WAIVER OF JURY TRIAL.**

19        9.      During the trial and before argument, the Court will meet with counsel

20  and settle the instructions, and counsel will have an opportunity to make a further

21  record concerning their objections.

22        10.    At the time of filing the proposed final pretrial conference order,

23  counsel should file a jointly prepared one or two paragraph statement of the case to

24  be read by the Court to the prospective panel of jurors before commencement of

25  *voir dire*.

26        11.    The Court will conduct the *voir dire*.  The Court provides a list of

27  basic questions, and may provide additional questions to jurors before *voir dire*.

28  (This is not a questionnaire to be completed by jurors.)  Counsel may, but are not

Exhibit 25
Page 210

1  required to, submit a list of proposed case-specific *voir dire* questions at the time

2  they file the proposed final pretrial conference order.

3        12.   Generally, the Court will select seven or eight jurors.  Each side will

4  have three peremptory challenges.  If fourteen jurors are seated in the box and all

5  six peremptories are exercised, the remaining eight jurors will constitute the jury

6  panel.  If fewer than six peremptories are exercised, the eight jurors in the lowest

7  numbered seats will be the jury.  The Court will not necessarily accept a stipulation

8  to a challenge for cause.  If one or more challenges for cause are accepted, and all

9  six peremptories are exercised, the Court may decide to proceed with six or seven

10  jurors.

11        **C.   Trial Exhibits**

12        1.   Counsel are to prepare their exhibits for presentation at the trial by

13  placing them in tabbed binders indexed by exhibit number with exhibit tags placed

14  consistently on the top or bottom right corner.  Counsel shall submit to the Court

15  an original and two copies of the binders.  The exhibits shall be in three-ring

16  binders labeled on the spine portion of the binder as to the volume number and

17  contain an index of each exhibit included in the volume.  Exhibits must be

18  numbered in accordance with Local Rule 16-6.

19        2.   The Court requires that the following be submitted to the courtroom

20  deputy clerk on the first day of trial:

21              a. One binder of original exhibits with the Court's exhibit tags,

22  yellow tags for plaintiff and blue tags for defendant, affixed to the front of the

23  exhibit on the upper or lower right-hand corner with the case number, case name,

24  and exhibit number placed on each tag.

25              b. One binder with a copy of each exhibit tabbed with numbers as

26  described above for use by the Court.

27              c. Three copies of joint exhibit list.

28              d. Three copies of witness lists in the order in which the witnesses

Exhibit 25
Page 211

1  expect to be called to testify.

2      3.    Where a significant number of exhibits will be admitted, the Court

3  encourages counsel, preferably by agreement, to consider ways in which testimony

4  about exhibits may be made intelligible to the jury while it is being presented.

5  Counsel may consider such devices as overhead projectors, jury notebooks for

6  admitted exhibits, or enlargements of important exhibits.  The Court has an Elmo

7  and other equipment available for use during trial.  Call the Courtroom Deputy

8  Clerk if you wish to visit when the Court is not in session to practice using the

9  equipment.  The Court does not permit exhibits to be "published" by passing them

10  up and down the jury box.  Exhibits may be displayed using the screen in the

11  courtroom, only if the process does not become too time-consuming.

12      **D.    Jury Trial**

13      On the first day of trial, court will commence at 8:30 a.m. and conclude at

14  approximately 4:00 p.m.  On the first day of trial counsel must appear at 8:30 a.m.

15  to discuss preliminary matters with the Court.  The jury panel will be called when

16  the Court is satisfied that the matter is ready for trial.  Jury selection usually takes

17  only a few hours.  Counsel should be prepared to proceed with opening statements

18  and witness examination immediately after jury selection.  After the first day of

19  trial, trial days are Tuesday through Friday from 9:00 a.m. to approximately 4:00

20  p.m. with two fifteen-minute breaks and a one-hour lunch break, unless otherwise

21  ordered by the Court.

22  **VII.   CONDUCT OF ATTORNEYS AND PARTIES**

23      **A.    Opening Statements, Examining Witnesses, and Summation**

24      1.    Counsel must use the lectern for opening statements, examination of

25  witnesses, and summation.

26      2.    Counsel must not consume time by writing out words, drawing charts

27  or diagrams, etc.  Counsel may do so in advance and explain that the item was

28  prepared earlier as ordered by the Court to save time.

Exhibit 25
Page 212

3.      The Court will honor (and may establish) reasonable time estimates for opening and closing arguments, examination of witnesses, etc.

**B.      Objections To Questions**

1.      Counsel must not use objections for the purpose of making a speech, recapitulating testimony, or attempting to guide the witness.

2.      When objecting, counsel must rise to state the objection and state only that counsel objects and the concise legal ground of objection.  If counsel wishes to argue an objection further, counsel must ask for permission to do so.

**C.      General Decorum**

1.      Counsel should not approach the witness box without specific permission.  Counsel should not question a witness at the witness stand.

2.      Counsel should rise when addressing the Court, and when the jury enters or leaves the courtroom.

3.      Any request for the re-reading of questions or answers shall be addressed to the Court.  Such requests should be limited.

4.      Counsel should not talk to jurors at all, and should not talk to co-counsel, opposing counsel, witnesses or clients where the conversation can be overheard by jurors.  Each counsel should admonish counsel's own clients and witnesses to avoid such conduct.

5.  Where a party has more than one lawyer, only one may conduct the direct or cross-examination of a particular witness, or make objections as to that witness.

**D.      Promptness of Counsel and Witnesses**

1.      The Court makes every effort to begin proceedings at the time set.  Promptness is expected from counsel and witnesses.  The Court will not delay the trial or inconvenience jurors except under extraordinary circumstances.

2.      If a witness was on the stand at a recess, counsel must have the witness back on the stand, ready to proceed, when the court session resumes.

3.      Counsel must notify the courtroom deputy clerk in advance if any

12

Exhibit 25
Page 213

Case 2:11-cv-01135-DMG-PJW   Document 167-3   Filed 09/30/14   Page 207 of 225
Page ID #:3405
Case 2:11-cv-01135-DMG -JEM   Document 21   Filed 08/22/11   Page 13 of 17   Page ID
#:147

1    witness should be accommodated based on a disability or for other reasons.

2         4.     Counsel should coordinate the scheduling of witnesses so that there is

3    no delay in the calling of witnesses to the stand.

4         5.     The Court attempts to cooperate with professional witnesses and will,

5    except in extraordinary circumstances, accommodate them by permitting them to

6    be called out of sequence.  Counsel must anticipate any such possibility and

7    discuss it with opposing counsel.  If there is an objection, counsel must confer with

8    the Court in advance.

9         **E.**     **Exhibits**

10         1.     Each counsel should maintain counsel's own list of exhibits and

11    should note when each has been admitted into evidence (if not already admitted

12    pursuant to the pretrial exhibit stipulation).

13         2.     Each counsel is responsible for any exhibits that counsel secures from

14    the courtroom deputy clerk and must return them before leaving the courtroom at

15    the end of the session.

16         3.     An exhibit not previously marked should, at the time of its first

17    mention, be accompanied by a request that the courtroom deputy clerk mark it for

18    identification.  To save time, counsel must show a new exhibit to opposing counsel

19    before it is mentioned in Court.

20         4.     Counsel are to advise the courtroom deputy clerk of any agreements

21    they have with respect to the proposed exhibits and as to those exhibits that may be

22    received so that no further motion to admit need be made.

23         5.     When referring to an exhibit, counsel should refer to its exhibit

24    number whenever possible.  Witnesses should be asked to do the same.

25         6.     If counsel wishes to question a witness in connection with graphic

26    aids, the material must be fully prepared before the court session starts.

27         **F.**     **Depositions**

28         1.     All depositions to be used at trial, either as evidence or for

Exhibit 25
Page 214

Case 2:11-cv-01135-DMG-PJW   Document 167-3   Filed 09/30/14   Page 208 of 225
Page ID #:3406
Case 2:11-cv-01135-DMG -JEM   Document 21   Filed 08/22/11   Page 14 of 17   Page ID
#:148

1  impeachment, must be lodged with the courtroom deputy clerk on the first day of

2  trial or such earlier date as the Court may order.  Counsel should verify with the

3  clerk that the relevant deposition is in the clerk's possession.

4      2.    In using depositions of an adverse party for impeachment, either one

5  of the following procedures may be adopted:

6          a.    If counsel wishes to read the questions and answers as alleged

7  impeachment and ask the witness no further questions on that subject, counsel shall

8  first state the page and line where the reading begins and the page and line where

9  the reading ends, and allow time for any objection.  Counsel may then read the

10  portions of the deposition into the record.

11          b.    If counsel wishes to ask the witness further questions on the

12  subject matter, the deposition shall be placed in front of the witness and the witness

13  is told to read silently the pages and lines involved.  Then counsel may either ask

14  the witness further questions on the matter and thereafter read the quotations, or

15  read the quotations and thereafter ask further questions.  Counsel should have an

16  extra copy of the deposition for this purpose.

17      3.    Where a witness is absent and the witness's testimony is offered by

18  deposition, counsel may (a) have a reader occupy the witness chair and read the

19  testimony of the witness while the examining lawyer asks the questions, or (b)

20  have counsel read both the questions and answers.

21      **G.    Advance Notice of Unusual or Difficult Issues**

22      If any counsel has reason to anticipate that a difficult question of law or

23  evidence will necessitate legal argument requiring research or briefing, counsel

24  must give the Court advance notice.  Counsel are directed to notify the courtroom

25  deputy clerk at the day's adjournment if an unexpected legal issue arises that could

26  not have been foreseen and addressed by a motion *in limine*.  See Fed. R. Evid.

27  103.  Counsel must also advise the clerk at the end of each trial day of any issues

28  that must be addressed outside the presence of the jury, so that there is no

Exhibit 25
Page 215

1  interruption of the trial.  The Court will not keep jurors waiting.

2          The Court appreciates counsel's anticipated cooperation and compliance

3  with this Order.

4          IT IS SO ORDERED.

5

6  DATED:        August 22, 2011        _____

7                                        DOLLY M. GEE
                                     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

Exhibit 25
Page 216

Case 2:11-cv-01135-DMG -JEM    Document 21    Filed 08/22/11    Page 16 of 17    Page ID
#:150

## JOINT TRIAL WITNESS TIME ESTIMATE FORM

## ATTACHMENT A

Case No. and Title: _____    Trial Date: _____

| No. | Witness | | |
|---|---|---|---|
| 1. | **[INSERT WITNESS NAME]** | | |
| | Direct Examiner: | [insert party name] | Direct Exam Time Est.: |   :   |
| | Cross Examiner: | [insert party name] | Cross Exam Time Est.: |   :   |
| | Brief Description of Testimony: | | |
| 2. | **[INSERT WITNESS NAME]** | | |
| | Direct Examiner: | [insert party name] | Direct Exam Time Est.: |   :   |
| | Cross Examiner: | [insert party name] | Cross Exam Time Est.: |   :   |
| | Brief Description of Testimony: | | |
| 3. | **[INSERT WITNESS NAME]** | | |
| | Direct Examiner: | [insert party name] | Direct Exam Time Est.: |   :   |
| | Cross Examiner: | [insert party name] | Cross Exam Time Est.: |   :   |
| | Brief Description of Testimony: | | |

(1) List witnesses (last name first); (2) For description, be extremely brief, e.g. "eyewitness to accident" or "expert on standard of care"; (3) Use estimates within fractions of an hour, rounded off to closest quarter of an hour, e.g., if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column, e.g. "Needs interpreter"; (5) Entries may be in handwriting if very neat and legible.

16

Exhibit 25
Page 217

Case 2:11-cv-01135-DMG-PJW   Document 167-3   Filed 09/30/14   Page 211 of 225
Page ID #:3409
Case 2:11-cv-01135-DMG -JEM   Document 21   Filed 08/22/11   Page 17 of 17   Page ID
#:151

Judge Dolly M. Gee

**SCHEDULE OF PRETRIAL & TRIAL DATES (JURY TRIAL)**

Case No.:   **CV 11-1135 DMG (JEMx)**        Title:   Christian Rodriguez, et al. v. City of Los Angeles, et al.

| MATTER | COURT ORDERED DATE | TIME |
|---|---|---|
| **TRIAL**     [ ] Court  [ x ] Jury<br>Duration Estimate: 7-15 days | 1-15-13<br>(Tuesday) | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE (FPTC)**<br>4 wks before trial | 12-18-12<br>(Tuesday) | 2:00 p.m. |

| MATTER | COURT ORDERED DATE |
|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | 10-31-11 |
| Non-Expert Discovery Cut-Off<br>(includes hearing of discovery motions) | 9-11-12 |
| Motion Cut-Off   (filing deadline) | 9-18-12 |
| Initial Expert Disclosure & Report Deadline | 10-16-12 |
| Rebuttal Expert Disclosure & Report Deadline | 11-13-12 |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | 11-27-12 |
| Settlement Conference Completion Date | 11-20-12 |
| Motions in Limine Filing Deadline | 11-27-12 |
| Opposition to Motion in Limine Filing Deadline | 12-4-12 |
| Class cert motion filing cut-off | 1-13-12 |
| Early Mediation deadline<br>Joint Report re results of early mediation due | 4-30-12<br>5-7-12 |
| Status Report re Settlement | 11-27-12 |
| Proposed Pretrial Conference Order | 11-27-12 |
| Contentions of Fact/Law | 11-27-12 |
| Pretrial Exhibit Stipulation | 11-27-12 |
| Joint Exhibit List | 11-27-12 |
| Witness Lists & Joint Trial Witness Time Estimate Form | 11-27-12 |
| Agreed Statement of the Case | 11-27-12 |
| Proposed Voir Dire Questions | 11-27-12 |
| Joint Statement of Jury Instructions &<br>Joint Statement of Disputed Instructions | 11-27-12 |
| Verdict Forms | 11-27-12 |

Exhibit 25
Page 218

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | |
|---|---|---|
| Case No. | CV 11-1135-DMG (JEMx) | Date   February  21, 2014 |
| Title | Christian Rodriguez, et al.  v. City of Los Angeles, et al. | |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| V.R. Vallery | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS)**

Pursuant to the mandate filed by the Ninth Circuit Court of Appeals on February 13, 2014, remanding the above entitled matter for further proceedings, this Court hereby sets the Final Pretrial Conference for *March 31, 2015 at 2:00 p.m.* and the Jury Trial date is set for *April 28, 2015 at 8:30 a.m. (est. 9 days).*

The Court issues an amended schedule of pretrial and trial dates attached hereto.  Except as otherwise amended therein, the parties shall comply with the Court's Scheduling and Case Management Order, filed on August 22, 2011 [Doc. # 21].  Counsel are reminded of their obligations and requirements to timely and fully comply with all orders.

IT IS SO ORDERED.

Exhibit 26
Page 219

Judge Dolly M. Gee
**AMENDED SCHEDULE OF PRETRIAL & TRIAL DATES (JURY TRIAL)**

Case No.: CV 11-1135-DMG (JEMx)    Title: Christian Rodriguez, et al. v. City of Los Angeles, et al.

| MATTER | COURT ORDERED DATE | TIME |
|---|---|---|
| **TRIAL**    [  ] Court   [ x ] Jury<br>Duration Estimate:  9 days | 4-28-15<br>(Tuesday) | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE (FPTC)**<br>4 wks before trial | 3-31-15<br>(Tuesday) | 2:00 p.m. |

| MATTER | COURT ORDERED DATE |
|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | N/A |
| Non-Expert Discovery Cut-Off<br>(includes hearing of discovery motions) | 10-17-14 |
| Motion Cut-Off   (filing deadline)<br>Dispositive motion hearing cut-off | 10-24-14<br>12-12-14 |
| Initial Expert Disclosure & Report Deadline | 1-27-15 |
| Rebuttal Expert Disclosure & Report Deadline | 2-24-15 |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | 3-10-15 |
| Settlement Conference Completion Date | 3-3-15 |
| Motions in Limine Filing Deadline | 3-10-15 |
| Opposition to Motion in Limine Filing Deadline | 3-17-15 |
| Joint Status Report re Settlement | 3-10-15 |
| Proposed Pretrial Conference Order | 3-10-15 |
| Contentions of Fact/Law | 3-10-15 |
| Pretrial Exhibit Stipulation | 3-10-15 |
| Joint Exhibit List | 3-10-15 |
| Witness Lists & Joint Trial Witness Time Estimate Form | 3-10-15 |
| Agreed Statement of the Case | 3-10-15 |
| Proposed Voir Dire Questions | 3-10-15 |
| Joint Statement of Jury Instructions &<br>Joint Statement of Disputed Instructions | 3-10-15 |
| Verdict Forms | 3-10-15 |

Exhibit 26
Page 220

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHRISTIAN RODRIGUEZ, ALBERTO          )
CAZAREZ, individually and as          )
class representatives,                )
                                      )
          Plaintiffs,                 )
                                      )
     vs.                              )    CASE NO.
                                      )    CV11-01135 DMG (JEMx)
CITY OF LOS ANGELES, CARMEN           )
TRUTANICH, CHARLES BECK,              )
ALLAN NADIR, ANGEL GOMEZ AND          )
DOES 1 THROUGH 10.                    )
                                      )
          Defendants.                 )
_____)

DEPOSITION OF

ANNE C. TREMBLAY

PASADENA, CALIFORNIA

SEPTEMBER 4, 2014

Reported by:
JULIA Y. GHEKIERE
CSR No. 12006/CLR
JOB: 14-31342


KARYN ABBOTT
& ASSOCIATES
COURT REPORTERS
70 S. Lake Avenue, 10th Floor
Pasadena, California 91101
Phone 213.749.1234 | 213.749.0644

Exhibit 27
Page 221

1           Did you ever have discussions once you became

2    supervisor with Mr. Thomas?

3           A    Yes.

4           Q    Okay.  With Mr. Carter?  And we're talking about

5    with relation to your responsibilities as supervisor of

6    the anti-Gang Unit or the gang division, or whatever it

7    was?

8           A    Yes, I had conversations with Mr. Thomas.  Yes,

9    I had conversations with Mr. Carter.

10          Q    And did you have discussions with Mr. Trutanich?

11          A    Not that I can specifically recall beyond that

12    day in his office.

13          Q    Okay.  And when you say not that you can

14    specifically recall, do you have some sort of vague

15    recollection or --

16          A    There may have been times that -- again, let me

17    put it this way.

18               In terms of time period, what time period are we

19    talking about so that I can be more precise?

20          Q    At any time period Trutanich was in office and

21    you were working in the anti-Gang Unit or the gang

22    division, or whatever it was called, at that particular

23    time?

24          A    Yes, I have recollections of discussing the work

25    of the unit in meetings that included Mr. Trutanich.

**KARYN ABBOTT & ASSOCIATES**                    80

Exhibit 27
Page 222

```
 1      Q    What sorts of meetings?

 2      A    Meetings regarding the planned filings of cases.

 3  There might have been meetings in preparation for

 4  meetings he was having with LAPD, or sometimes, if he was

 5  going to be interviewed by the press, in order to brief

 6  or prepare him on some issues related to the work of the

 7  Anti-Gang Section.

 8      Q    Like -- you described press -- earlier you were

 9  talking about press conferences where gang statistics

10  were released.

11           Are you talking about that?

12      A    No.

13      Q    Okay.  What type of press conferences, then?

14      A    Well, in this context I wouldn't -- I didn't

15  say "press conferences" --

16      Q    Oh...

17      A    -- because it was to prepare him for discussions

18  with the press.  It may not have been at a press

19  conference.  He may have been being interviewed by the

20  media, and I may have -- I had conversations with him

21  about subjects before he was interviewed by the media.

22      Q    Okay.  So you had conversations with him about

23  gang-related subjects before he had meetings with the

24  media?

25           MS. SHAHANDEH:  I'm going to object that that
```

**KARYN ABBOTT & ASSOCIATES**                          81

Exhibit 27
Page 223

```
 1   misstates her testimony.
 2            MR. STORMER:  Did that misstate your testimony?
 3            THE WITNESS:  Yes.
 4   BY MR. STORMER:
 5       Q    In what way?
 6       A    I had discussions with him about the work of the
 7   Anti-Gang Section, which at times was broader than
 8   specifically gang-related.
 9       Q    Okay.  So did you have -- if you could delineate
10   for me the difference between "broader"?  You used the
11   term -- because I'm confused now.
12       A    We did work within the section that included a
13   range of issues.  And I wouldn't say they were
14   always specifically gang-related.
15       Q    What are the other areas that you would have
16   conversations --
17       A    Graffiti.
18       Q    Okay.  So you had some conversations with
19   Mr. Trutanich about gang-related issues; is that correct?
20       A    My best recollection is that on occasion I had
21   conversations with him about gang-related issues.
22       Q    And on other occasions you had discussions with
23   him about graffiti issues?
24       A    Yes.
25       Q    Okay.  And when did those conversations start?
```

**KARYN ABBOTT & ASSOCIATES**                              82

Exhibit 27
Page 224

```
 1          THE WITNESS:  Well, my challenge with answering
 2   that question is it combines things so...
 3   BY MR. STORMER:
 4      Q    Combines what things?
 5      A    Not every injunction had the same curfew
 6   provision.  So you spoke of them all as one.
 7      Q    Okay.  What was it in the curfew provisions that
 8   you thought you needed to change in the Rollin 40s Crips?
 9      A    If I may refer to the declaration to read that
10   paragraph.
11      Q    You may.
12      A    My recollection is that we had discussions to
13   determine that the injunction that was about to be filed
14   in Rollin 40s had language that was consistent with
15   Colonia Chiques or it comported with what the Court said
16   in that case.
17      Q    Who's the "we," when you say "we had
18   discussions"?
19      A    To the best of my recollection, I had
20   discussions with Mr. Riordan, and I believe also with the
21   Deputy City Attorney, Max Shiner.
22      Q    And Max Shiner held what position?
23      A    He was a deputy city attorney in the unit.  And
24   I believe at that time he may have had a -- he was not an
25   assistant supervisor but had what was called a deputy in
```

**KARYN ABBOTT & ASSOCIATES**                    104

Exhibit 27
Page 225

1  as 20 to 30 people.

2      Q    Do you remember any of the higher ranking

3  officers that were there?

4      A    At that particular meeting I believe Commander

5  McCarthy may have been there from Gang and Narcotics

6  Division.  Or perhaps Captain Bill Hart from Gang and

7  Narcotics Division.  But I went to that meeting -- that

8  group of people more than once.  So it's hard to member

9  who was at any individual one.

10     Q    Okay.  And do you remember any other meetings

11  where this change of policy that police officers could

12  not serve without pre-approval in exigent circumstances?

13     A    I think the question misstates what I'm saying.

14  The change to no exigent circumstances --

15     Q    That's what I intended to ask you.

16     A    Okay.  That's not how I understood it.  So

17  that's why I got a little confused there.

18          The change that -- the change of the policy to

19  no exigent circumstances around that spring of 2011, I

20  believe I had conversations, whether I'll call them

21  formal meetings or not, with Mr. Martinez, who is part

22  of -- was either acting or actual assisting supervisor at

23  the time.  And I recall having a conversation or meeting

24  with Ms. Molidor about it and, I believe, also Mr. Carter

25  at some point, around that time.

Exhibit 27
Page 226

1    Q    Carter did not leave until 2013; is that

2  correct?

3    A    Mr. Carter left in 2013; correct, at the end of

4  Mr. Trutanich's term.

5    Q    And was there a case, an opinion coming down

6  from some higher court that caused you to change this

7  practice?

8        MS. SHAHANDEH:  I'm going to object.  I don't

9  think this is part of her declaration.  So I'm going to

10  object based on deliberative process.

11        MR. STORMER:  And direct her not to answer?

12        MS. SHAHANDEH:  And direct her not to answer.

13        Just to be clear, I'm going to direct her not to

14  answer anything about the reasons for policy -- this

15  policy change because this was not part of her testimony.

16  BY MR. STORMER:

17    Q    Looking at paragraph 11.

18    A    Of the declaration?

19    Q    Of your declaration where it says (reading):

20        Our office has no direct control over

21        LAPD or its officers.

22        What did you mean by that?

23        MS. JEFFERY:  Well, the sentence continues.  You

24  should read the whole sentence.

25        MR. STORMER:  I'm only looking at this part.

**KARYN ABBOTT & ASSOCIATES**        146

Exhibit 27
Page 227

```
 1   BY MR. STORMER:
 2      Q    And I'll ask if you recognize this document.
 3           MS. JEFFERY:  He's truly the poster child for
 4   gangs, huh?
 5   BY MR. STORMER:
 6      Q    And if it assists you in giving you time, it
 7   talks about several pages in about serving the removal
 8   petition?
 9      A    Yes, I see that where it talked about serving
10   the removal petition.
11      Q    And at what point did you start serving the
12   removal petition?
13      A    I began serving the removal petition with the
14   Rancho San Pedro injunction which was, again, during
15   Mr. Trutanich's administration.  That was the first
16   injunction where we attached the removal petition or it
17   included it in the -- what was served.
18           And then, at some point we also -- and I
19   can't -- I don't recall exactly when for any new service
20   on other injunctions, as well, on existing injunctions.
21      Q    I'm sorry, you started serving it with the
22   Rancho San Pedro injunction?  You started serving the
23   removal --
24      A    Petition.  As the petition existed, we started
25   actually serving it with service on the injunction.  I
```

**KARYN ABBOTT & ASSOCIATES**                                    152

Exhibit 27
Page 228

```
 1    don't recall whether, at the same time, that it was
 2    simultaneous that we also started serving the removal
 3    petition on any existing injunctions that -- prior to
 4    Rancho San Pedro.  That eventually became the policy.  I
 5    just can't recall whether it happened simultaneously.
 6         Q    Approximately when did it become the policy that
 7    you would serve the removal petition on existing
 8    injunctions?
 9         A    Sometime around or after the Rancho San Pedro
10    injunction was obtained and began to be served, but I
11    don't recall exactly when that was.
12         Q    Generally?
13         A    Again, Rancho San Pedro was during
14    Mr. Trutanich's administration.  But I can't recall
15    whether it was 2009 or 2010 that we sought and obtained
16    that injunction.
17         Q    Okay.  And sometime after that you began serving
18    the removal petition with existing injunctions even if
19    they were obtained prior to 2009 or 2010?
20         A    It may have been simultaneous or it may have
21    been after.  I don't recall.
22         Q    Okay.  And definitely wasn't before?
23         A    It was not before to my knowledge, no.
24         Q    Why did you begin serving the removal petition?
25              MS. SHAHANDEH:  I'm going to object that that's
```

**KARYN ABBOTT & ASSOCIATES**                                    153

Exhibit 27
Page 229

1   deliberative process.  If there was something in her

2   declaration about it, I might change my mind on that

3   but...

4           MR. STORMER:  So you're directing her not to

5   answer?

6           MS. SHAHANDEH:  Well, I'm going to take a look

7   at this petition before I direct her one way -- or the

8   declaration before I instruct her one way another.

9           MR. STORMER:  I would suggest that you look at

10  paragraph 16.

11          MS. SHAHANDEH:  Okay.  This doesn't -- I don't

12  think this goes into the reasoning why.

13          MR. STORMER:  So what you're saying is that you

14  can submit a declaration under penalty of perjury to the

15  court alleging a certain policy and then argue that we

16  can't inquire as to how that policy was created?

17          MS. SHAHANDEH:  I think, in general, that's

18  true, yes.

19          MR. STORMER:  Can you mark this one as well.

20          (Mr. Nadir joined the proceedings.)

21          I'm going to show you a document which we will

22  mark as Exhibit 8 and ask that you take a look at it.

23          (The aforementioned document was marked

24          Plaintiff's Exhibit No. 8 for

25          identification.)

**KARYN ABBOTT & ASSOCIATES**                    154

Exhibit 27
Page 230

```
 1   BY MR. STORMER:
 2        Q    Do you recognize this document?
 3        A    Again, it appears to be a PowerPoint training
 4   with regard to the service and enforcement of gang
 5   injunctions.
 6        Q    And in this one if we look in it, it has the, do
 7   not enforce being in presence of?
 8        A    Yes.
 9        Q    And can you tell us, approximately, when would
10   that have been after what point -- excuse me.
11        A    That would have been after the Reisig decision,
12   which was in the winter or spring of 2010.
13        Q    I'm going to show you a document which we'll
14   mark as Exhibit 9.
15             (The aforementioned document was marked
16             Plaintiff's Exhibit No. 9 for
17             identification.)
18   BY MR. STORMER:
19        Q    And I'll ask if you can recognize this document?
20        A    Yes.
21        Q    And what is this document?
22        A    It's -- again, appears to be a PowerPoint
23   training presentation with regard to the service and
24   enforcement of gang injunctions prepared by a member, at
25   least, given by a member of the unit, Greg Dorfman.
```

**KARYN ABBOTT & ASSOCIATES**                               155

Exhibit 27
Page 231

```
 1   STATE OF CALIFORNIA    ) ss

 2

 3        I, Julia Y. Ghekiere, CSR NO. 12006, do hearby

 4   declare:

 5

 6        That, prior to being examined, the witness named

 7   in the foregoing deposition was by me duly sworn;

 8

 9        That said deposition was taken down by me in

10   shorthand at the time and place therein named and

11   thereafter transcribed under my direction;

12

13        I further declare that I have no interest in the

14   event of the action.

15

16        I declare under penalty of perjury under the

17   laws of the State of California that the foregoing is

18   true and correct.

19

20        WITNESS my hand this 15th day of September,

21   2014.

22

23

24   _____
     JULIA Y. GHEKIERE, CSR 12006/CLR

25
```

**KARYN ABBOTT & ASSOCIATES**                                      257

Exhibit 27
Page 232